# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA ROVAI,<br><br>                  Plaintiff,<br><br>   v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br><br>                  Defendant. | Case No. 14-cv-01738-BAS-WVG<br><br>**OPINION AND ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO RULE 12(b)(1) [ECF No. 44]**<br><br>**AND**<br><br>**(2) DECLINING TO IMPOSE ANOTHER STAY UNDER THE PRIMARY JURISDICITON DOCTRINE** |

      This matter comes before the Court on Defendant Select Portfolio Servicing's ("SPS") Motion to Dismiss for Lack of Jurisdiction in response to Plaintiff's First Amended Complaint (the "FAC"). (ECF No. 44.) Plaintiff Adriana Rovai has opposed (ECF No. 47), and SPS has replied (ECF No. 49). For the reasons set forth below, the Court DENIES SPS's Motion to Dismiss at this time and sets a Rule 12(b)(6) briefing schedule. The Court further declines to impose another stay on Rovai's state law claims under the primary jurisdiction doctrine.

# I. BACKGROUND

## a. Factual Background

Plaintiff Adriana Rovai obtained a negative amortization home mortgage loan from First Magnus Financial Corporation for her primary California residence on or about November 10, 2005, with a principal amount of $524,000. (FAC ¶10.) The loan terms allowed Rovai to make monthly payments that were less than the fully amortizing amount of interest, with the interest not paid in a given month added to the outstanding loan balance. (*Id.* ¶¶6, 7, 10.) The loan passed to other owners and servicers, with Bank of America, N.A. ("BANA") owning or servicing Plaintiff's loan prior to its servicing by Defendant SPS, a Utah-based company. (*Id.* ¶¶4, 6, 32.) At the time SPS began servicing Rovai's mortgage loan in December 2011, Plaintiff alleges that her outstanding loan balance included $9,013.02 of interest she incurred in earlier years of her loan but did not pay. (*Id.* ¶¶11−12.)

In 2011, Rovai made loan payments to SPS totaling $2,698.20. (*Id.*) 26 U.S.C. § 6050H requires that a person who receives interest aggregating $600 or more for any calendar year on any mortgage must issue to the individual who paid the interest a statement identifying the amount of interest that individual paid during that year. (*Id.* ¶1.) Pursuant to this requirement, SPS sent Rovai a Form 1098 for tax year 2011 in February 2012, which reported $1,443.58 in mortgage interest paid, the amount of accrued interest on Rovai's loan in 2011, and $1,254.62 in principal paid. (*Id.* ¶13.) The form also reported a loan setup principal balance of $533,012.03. (*Id.* Ex. B.) Rovai alleges that because her loan's terms require payments to be credited to unpaid interest before principal, SPS should not have credited any payments to principal until all of her unpaid deferred interest was paid. (*Id.* ¶¶14−15.) She alleges that deferred interest does not lose its character as interest even when it is paid back at a later point or to a different mortgage servicer. (*Id.* ¶14.) Accordingly, she alleges that SPS's reporting was incorrect. (*Id.*)

Rovai further alleges that the Form 1098 she received for tax year 2012

similarly incorrectly calculated the mortgage interest she paid to SPS. (*Id*. ¶16.) Rovai's 2012 Form 1098 reports $18,021.12 of interest paid and $16,576.50 in principal paid. (*Id*. Ex. D.)

Plaintiff relied upon the incorrect information contained in the 2011 and 2012 Forms 1098 SPS sent her. (*Id*. ¶16.) As a result, she both (1) filed erroneous tax returns in those years insofar as her return claimed only the amount of mortgage interest stated on the Form 1098, and (2) received smaller tax deductions in at least the 2011 and 2012 tax years than she would have received if SPS had sent her Forms 1098 with proper information about her interest payments. (*Id*.)

Plaintiff noticed the discrepancy in SPS's Form 1098 reporting in late 2013. (*Id*. ¶21.) She reached out to SPS in April 2014 regarding its method of calculating reported interest, but SPS rejected Rovai's complaint and declined to change its reporting policy. (*Id*. ¶21.) Rovai alleges that the IRS exclusively relies on the amounts contained in a Form 1098 and rejects any attempts by taxpayers to claim a different amount of interest from that which appears on the taxpayer's Form 1098. (*Id*. ¶17.) Rovai alleges that due to SPS's conduct she has been unable to correctly state her taxes or obtain the full mortgage interest deduction to which she is entitled under applicable tax law. (*Id*. ¶26.)

### b. Procedural Background

On July 24, 2014, Plaintiff brought this prospective class action against Defendant SPS alleging a federal cause of action under 26 U.S.C. § 6050H and several causes of action under state law. (ECF No. 1). She seeks damages as well as injunctive and equitable relief. (*Id*.) Defendant filed a 12(b)(6) motion to dismiss Plaintiff's original complaint. (ECF No. 11.) In ruling on that motion, this Court found no express or implied private cause of action under 26 U.S.C. § 6050H and dismissed Plaintiff's corresponding federal claim with prejudice. (ECF No. 16.) The Court *sua sponte* stayed the case as to Plaintiff's remaining state law claims under the primary jurisdiction doctrine, pending a determination by the IRS about whether

mortgage lenders are required to report deferred interest on the Forms 1098 they issue. (*Id.*)

During the stay, the Ninth Circuit issued a decision in *Smith v. Bank of America, N.A.*, 679 Fed. App'x 549 (9th Cir. 2017), a case also concerning interest reporting under §6050H. The Ninth Circuit determined that *Smith* should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction on the ground that the complaint failed to show an injury-in-fact. *Id.* at 550. After *Smith*, this Court ordered the Plaintiff to show cause as to why the complaint should not be dismissed for lack of standing. (ECF No. 35.) Plaintiff conceded that her original complaint failed to satisfy *Smith*, but also argued she could amend her complaint to cure its standing deficiency. (ECF No. 36.) The Court dismissed the original complaint and permitted amendment. (ECF No. 38.) The present dispute concerns whether the FAC (ECF No. 39) now establishes Rovai's Article III standing.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if it fails to allege facts sufficient to establish subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Once a party has moved to dismiss for lack of subject matter jurisdiction, the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) challenge to jurisdiction may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, whereas in a factual challenge, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke jurisdiction. *Id.*

### B. Article III Standing

Those who seek to invoke the jurisdiction of the federal courts must satisfy the

1  threshold requirement of showing an actual case or controversy under Article III. *L.A.*
2  *v. Lyons*, 461 U.S. 95, 101 (1983).  To do so, a plaintiff must allege the irreducible
3  constitutional minimum of: (1) an injury in fact via "an invasion of a legally protected
4  interest which is (a) concrete and particularized, and (b) actual or imminent, not
5  conjectural or hypothetical"; (2) causation, *i.e.*, the injury is "fairly traceable to the
6  challenged action of the defendant"; and (3) redressability, *i.e.* it is "likely, as opposed
7  to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*
8  *v. Defs. of Wildlife*, 504 U.S. 555, 560−61 (1992) (internal citations and quotations
9  omitted).  "Each element of standing must be supported with the manner and degree
10 of evidence required at the successive stage of litigation." *Maya v. Centex Corp.*, 658
11 F.3d 1060, 1068 (9th Cir. 2011.)  At the pleading stage, a trial court must accept as
12 true all material allegations of the complaint and construe the complaint in favor of
13 the complaining party.  *Warth* v. *Seldin*, 422 U.S. 490, 501 (1975).  General factual
14 allegations of injury resulting from the defendant's conduct may suffice because the
15 trial court presumes that general allegations embrace those specific facts necessary to
16 support the claim.  *Lujan*, 504 U.S. at 561.  A failure to establish Article III standing
17 results in dismissal of the complaint for lack of subject matter jurisdiction.  *Steel Co.*
18 *v. Citizens for Better Envt.*, 523 U.S. 83, 94 (1998).

**III.   DISCUSSION**

Defendant SPS contends that this Court lacks subject matter jurisdiction to hear this action because Plaintiff lacks Article III standing.  SPS has not submitted extrinsic evidence with its motion, rather the motion is based entirely on the allegations in the FAC and its attached documents, as well as documents of which the Court may take judicial notice.  Defendant's Rule 12(b)(1) motion is thus a facial challenge and will be evaluated as such.  The Court will assume Rovai's factual allegations to be true and will draw all reasonable inferences in her favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

### A. Injury-in-Fact

SPS argues that Rovai fails to show an injury-in-fact because there is no legally protected or cognizable interest in this case and her allegations of injury are conclusory. (ECF No. 44-1 at 9−10.)

#### 1. Legally Protected Interest

The Court first addresses SPS's legally protected interest argument, which contends that Rovai has failed to show even the most minimal requirement of injury-in-fact. SPS argues that no IRS law, rule, regulation, or guidance has ever required the reporting of capitalized mortgage interest on a Form 1098. (ECF No. 44-1 at 9.) Accordingly, Rovai does not have a legally protected or cognizable interest in a Form 1098 that reported payments of capitalized mortgage interest as interest on Rovai's 2011 and 2012 Forms 1098. In response, Rovai contends that SPS's argument improperly goes to the merits. (ECF No. 47 at 8.) Nevertheless, Rovai reiterates her argument that SPS was required to report deferred interest payments on the Form 1098 both under existing tax law and §6050H's plain meaning. (ECF No. 16 at 5.)

Both SPS's and Rovai's arguments improperly go to the merits of this case. It may very well be that Rovai's claims could fail on a merits analysis, but the scope of standing analysis is limited to whether the allegations show that the court can even exercise jurisdiction over the asserted claims. *Catholic League for Religious & Civ. Rights v. San Francisco*, 624 F.3d 1043, 1049 (9th Cir. 2010) ("Nor can standing analysis, which prevents a claim from being adjudicated for lack of jurisdiction, be used to disguise merits analysis, which determines whether a claim is one for which relief can be granted if factually true."); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1038 (N.D. Cal. 2014). The Court will disregard the merits arguments advanced by both sides.

Furthermore, SPS's legally protected interest argument focuses too narrowly on §6050H and its implementing regulations and guidance. The Court, of course, recognizes that Rovai's state law claims incorporate an alleged violation of §6050H

or an alleged duty arising under it, which is what makes her legal theory "novel".[1] *See, e.g., Horn v. Bank of Am., N.A.*, No. 3:12-cv-1718-GPC-BLM, 2014 WL 1455917, at *3 (S.D. Cal. April 14, 2014). The Court has already found that no private right exists under §6050H. (ECF No. 16 at 3) ("Because [§6050H] does not explicitly create a private cause of action and focuses on the person regulated, the Court is reticent to imply a private right.") But the Court left intact the potential viability of this case under common law theories. Indeed, the FAC, like the original complaint, asserts causes of action for alleged violations by SPS of Rovai's state law rights, including breach of contract (FAC ¶¶46−51), breach of the covenant of good faith and fair dealing (*id.* ¶¶52−57), fraud (*id.* ¶¶73−81), and negligence (*id.* ¶¶82−87), and a statutory right under California Business & Professions Code §17200 *et seq.* (*id.* ¶¶58−62). Injuries to such rights can constitute Article III injuries. *See, e.g., Ala. Power Co. v. Ickes*, 302 U.S. 464, 479 (1938) (injury to common law right suffices for Article III standing); *Fragley v. Facebook*, 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011) (finding Article III standing where plaintiffs alleged injury-in-fact to a California statutory right).

### 2. The Alleged Injuries

SPS argues that even if Rovai has a legally protected interest, Rovai's single new allegation in the FAC is not substantiated with any factual allegations and therefore Rovai fails to show a concrete and particularized injury. (ECF No. 44-1 at 10.) In response, Rovai contends that *Smith v. Bank of America, N.A.* sets forth the "elements" that plaintiffs in cases against a mortgage servicer for under-reporting mortgage interest on a Form 1098 must allege to establish standing. (ECF No. 47 at 4−5.) Rovai has alleged both elements and, therefore, she argues, she has standing.

---

[1] Despite the novelty of bringing state law claims on the basis of an alleged violation of §6050H, there is at least one example of a federal court sitting in diversity exercising jurisdiction over state law tort claims for alleged violations of federal tax law requirements. *See, e.g., Clemens v. USV Pharm., A Div. of Revlon, Inc.*, 838 F.2d 1389 (5th Cir. 1988).

In *Smith*, the plaintiffs sued a mortgage lender on state law causes of action based on an alleged violation of §6050H and on an implied federal right of action under §6050H. 679 Fed. App'x at 550. The plaintiffs specifically alleged, like Rovai does, that they received a Form 1098 that did not comply with the requirements of §6050H. *Id*. The Ninth Circuit held that "mere receipt of an erroneous form, without more, is insufficient to establish Article III standing." *Id*. The Ninth Circuit observed that the plaintiffs had failed to allege that they ever filed erroneous tax returns in reliance on the incorrect Form 1098 or that they had received smaller tax deductions as a result. *Id*. The court remanded the case to the district court for dismissal pursuant to Rule 12(b)(1). *Smith*, 679 Fed. App'x at 550.

In the wake of *Smith*, Rovai now alleges two injuries due to SPS's incorrect Forms 1098 and their underlying method of calculating interest payments: (1) Rovai filed erroneous tax returns in 2011 and 2012 in reliance on those forms and (2) Rovai received smaller tax deductions in 2011 and 2012 than she would have because she relied on those forms. (FAC ¶16.) The FAC, like the original complaint, also alleges that Rovai has suffered damages of the accountancy fees that will be necessary to amend her tax returns. (*Id.* ¶28.) The Court considers whether these injuries constitute an injury-in-fact.

### a. Tax Deduction Injury

Although simply filing an erroneous tax return is likely not a "concrete" injury if no further harm is alleged, Rovai alleges that she "received smaller tax deductions in at least the 2011 and 2012 tax years than she would have received had the proper information been provided to her on her Form 1098 by [SPS]." (*Id.* ¶16.)

"Economic injury is clearly a sufficient basis for standing." *Maya*, 658 F.3d at 1069 (*quoting San Diego Cty. v. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996)). An alleged injury of economic loss or overpayment has established an injury-in-fact in other contexts. *See, e.g., Opperman v. Path, Inc*., 87 F. Supp. 3d 1018, 1037 (N.D. Cal. 2014) (plaintiff's alleged overpayment for goods due to

defendant's conduct satisfied Article III); *Yount v. Salazar*, No. CV11-8171 PCT-DGC, 2014 WL 4904423, at *7 (D. Ariz. Sept. 30, 2014) (loss of value in existing claims and investments constituted injury-in-fact for Article III). The Court finds that Rovai's tax deduction allegations establish an economic injury that also satisfies Article III.

The FAC contains multiple factual allegations substantiating Rovai's allegation of economic injury by receiving smaller tax deductions in 2011 and 2012:

- The amount of deferred interest outstanding on Rovai's loan at the time SPS began servicing her mortgage was $9,013.02.[2] (FAC ¶11.)
- Rovai did not make any payments on her deferred interest prior to the point at which SPS began servicing her loan. (*Id*.)
- SPS was required to allocate Rovai's payments to interest before principal. (*Id*. ¶¶14−15.)
- Although Rovai paid SPS $2,698.20 in 2011, SPS credited $1,254.62 of that amount to principal. The remainder was credited to accrued interest. (*Id*. ¶13.)
- SPS credited $16,576.50 of Rovai's 2012 payments to principal and $18,272.28 to interest. (*Id*. Ex. D.)

On the basis of these allegations, it is not an "academic exercise in the conceivable", *Maya*, 658 F.3d at 1068, to understand how Rovai's mortgage interest tax deductions in 2011 and 2012 – which are deductions from her overall tax liability – would likely have been higher if even a single payment credited to principal in those years had been credited to deferred interest instead.

Contrary to SPS's argument, it is not necessary for Rovai to further allege that she paid more in taxes than she would have as a result of receiving the smaller tax

---

[2] Although the 2011 Form 1098 refers to the entire $533,012.13 balance on Rovai's loan as "principal", (FAC Ex. B), the Court accepts as true Rovai's allegation that $9,013.02 of that balance was actually deferred interest for the purposes of its appropriate tax treatment.

deductions. Although it is Rovai's burden to show an injury-in-fact, that burden is "supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561. Given the amount of the mortgage interest payments Rovai alleges SPS did not credit to interest and therefore did not report on her Forms 1098, it is not conjectural that she suffered an economic injury due to her receipt of smaller tax deductions in 2011 and 2012.

The Court next turns to whether Rovai's alleged injury is particularized. SPS concedes that the FAC pertains to Rovai's own Forms 1098. (ECF No. 44-1 at 10.) Indeed, Rovai's allegations concern the Forms 1098 SPS provided her, the federal tax returns she filed by relying on those forms, and the smaller federal tax deductions she received. (FAC ¶¶12, 13, 16.) Rovai also alleges that SPS was obligated or had a duty to accurately report her deferred interest payments on the 2011 and 2012 Forms 1098 it provided her by virtue of §6050H. (*Id.* ¶¶5, 48, 53, 60, 75, 83.) These allegations satisfy the particularity requirement because they show Rovai suffered the alleged injury "in a personal and individual way." *See Spokeo*, 136 S. Ct. at 1548. Citing no supporting authority, SPS argues that Rovai nevertheless fails to allege a particularized injury because she "has not alleged facts showing that SPS breached a legal duty or norm as to her in particular." (ECF No. 44-1 at 10−11.) SPS's argument appears to engage a Rule 12(b)(6)'s merits inquiry − in the guise of a constitutional standing inquiry − about whether the plaintiff has plausibly pleaded a claim upon which relief may be granted. As the Ninth Circuit has indicated, such an inquiry is "ill-suited to application in the constitutional standing context." *Maya*, 658 F.3d at 1068. For the purposes of Article III standing, Rovai's allegations of tax deduction injury are sufficient at the pleading stage.

        **b.**     **Accountancy Fees Injury**

The third injury Rovai alleges are "the accountancy fees that will be necessary to prepare and file amended returns." (FAC ¶28.) Accountancy fees incurred to file

an amended tax return could be a sufficient injury-in-fact for Article III standing. *See Strugala v. Flagstar Bank*, No. 5:13-cv-05927, 2017 WL 3838439, at *3 (N.D. Cal. Sept. 1, 2017) (finding standing where plaintiff had paid accountancy fees to file an amended tax return). However, Rovai does not allege that she has ever incurred such fees in order to file an amended tax return, nor does she allege an intent to file an amended return. Therefore, she has not alleged an injury-in-fact based on accountancy fees related to filing an amended return.

### B. Causation

SPS argues that Rovai has failed to allege that her injury is fairly traceable to SPS because any lost tax deduction was due to Rovai's conduct, not that of SPS. (ECF No. 44-1 at 11.) SPS argues that Rovai could have claimed a higher tax deduction before filing her tax returns or could have amended her returns, but failed to do so.

At the pleading stage, the question is whether Rovai has alleged that her alleged injury is fairly traceable to the conduct of SPS. To survive a motion to dismiss for lack of Article III standing, "plaintiffs must establish a line of causation between defendants' action and their alleged harm that is more than attenuated." *Maya*, 658 F.3d at 1070. A causal chain does not fail simply because there are several links so long as those links are not hypothetical or tenuous, but rather are plausible. *Id.* (citing *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)). Where the independent decision of a third party has a significant effect on the plaintiff's injuries, the causal chain is too weak to support standing at the pleading stage. *Allen*, 468 U.S. at 759.

Rovai's allegations establish that her alleged tax deduction injury is fairly traceable to SPS's conduct. First, under §6050H, regardless of the merit of Rovai's argument about the duty it imposes on SPS, SPS was the entity responsible for providing Rovai with her Forms 1098 because it received payments from her exceeding $600 in 2011 and 2012. (FAC ¶¶5, 12, Exs. B, D.) Second, Rovai alleges that SPS provided her with 2011 and 2012 Forms 1098 that failed to account for

deferred interest payments based on its practice of calculating mortgage interest in violation of §6050H. (*Id*. ¶¶ 13−14, 16, 49, 54, 60, 76−79, 84−85.) Third, Rovai alleges that this deferred interest was incurred but not paid until SPS began servicing her loan, thus eliminating the possibility that her prior mortgage loan owners or servicers caused her alleged injury. (*Id*. ¶11.) Fourth, Rovai alleges that she relied on the Forms 1098 SPS provided to her – like other taxpayers, tax professionals, and the IRS do – when she filed her 2011 and 2012 tax returns. (*Id*. ¶¶16−17.) Assuming the truth of these allegations, as the Court must, Rovai has fairly traced her tax deduction injury to SPS's conduct.

In reaching this conclusion, the Court finds unpersuasive SPS's argument that Rovai has not alleged causation because she could have claimed a higher tax deduction before filing her tax returns or by filing an amended return. This argument, however, "wrongly equates injury 'fairly traceable to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Injury produced by the determinative or coercive effect upon the action of someone else still satisfies the causation requirement of Article III. *Id*; *Maya*, 658 F.3d at 1072 n.8.

Regarding pre-return filing conduct, SPS argues that Rovai ignored the IRS's "plain and simple" instruction on Line 10 of Schedule A to Form 1040 that would have allowed her to claim a larger mortgage deduction. Rovai explicitly alleges that she relied on the 2011 and 2012 Forms 1098 SPS provided her and she did not notice the discrepancy in SPS's interest reporting until late 2013. (FAC ¶¶16, 21.) Assuming the truth of these allegations, Rovai would not have known *before* she filed her 2011 and 2012 tax returns that the information on her Forms 1098 was incorrect. Even assuming Rovai were aware of the discrepancy before she filed her returns, Rovai also alleges that the IRS like everyone else – exclusively relies on the information contained in a Form 1098, and will reject any attempt by a taxpayer to claim an amount of mortgage interest different than the amount reported on that form. (*Id*. ¶¶17−18.)

Even if SPS's conduct is not the very last step in the chain of causation Rovai alleges, these allegations still show that her alleged injury is fairly traceable to SPS's conduct.

The Court is also not persuaded by SPS's argument that Rovai's failure to amend breaks the causal chain between SPS's provision of incorrect 2011 and 2012 Forms 1098 to Rovai and her tax deduction injury in those years, which was completed when she received smaller tax deductions. *See, e.g., Maya*, 658 F.3d at 1069 ("[I]f plaintiff would not have purchased their homes absent defendants' misconduct, the injury was created at the moment of the fraudulent purchase. . .").

Lastly, the Court finds the authorities on which SPS relies for its causation argument are inapplicable. *See Chandler v. State Farm Mutual Automobile Insurance Company*, 598 F.3d 1115, 1118, 1122 (9th Cir. 2010) (holding there was no standing to sue an automobile insurer based on made-whole rule exception peculiar to insurance claims); *Bennett v. United States*, 361 F. Supp. 2d 510, 518 (W.D. Va. 2005) (finding no jurisdiction over plaintiff's suit against IRS for income tax refund of withheld income under both 26 U.S.C. §7422 and the Anti-Injunction Act).

**C. Redressability**

SPS makes two arguments against redressability in this case. First, SPS argues that this case is "not the proper arena" to address Rovai's alleged injury, but rather Rovai's proper recourse is to the IRS. (ECF No. 44-1 at 12.) Second, SPS argues that there is no remedy this Court can award Rovai because only the IRS could have approved a higher deduction and determined the impact on Rovai's tax liability. Accordingly, SPS argues a damages award is not an option.

A plaintiff's burden to show redressability is "relatively modest." *Renee v. Duncan*, 623 F.3d 787, 797 (9th Cir. 2010). Rovai must allege that it is likely that the injury resulting from SPS's conduct will be redressed by a favorable court decision. *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 869 (9th Cir. 20002). "A claim may be too speculative if it can be redressed only through the unfettered choices made by independent actors not before the court." *Id.* The question here is whether Rovai's

tax deduction injury would likely be remedied by a favorable court decision.

Rovai seeks three forms of relief: damages for receiving smaller 2011 and 2012 tax deductions, an order requiring SPS to provide corrected Forms 1098, and a declaratory judgment that SPS's conduct is unlawful. (FAC, Prayer for Relief.) These forms of relief would likely remedy Rovai's injury, which was produced by SPS's allegedly incorrect method of calculating mortgage interest, SPS's allegedly incorrect Forms 1098, and the resulting economic harm to Rovai. It is in this Court's power to provide a damages award. *See Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011) (noting that "there is no real question about redressability" because the plaintiff "seeks an injunction and damages, either of which is an available remedy. . ."). The requested injunctive relief of corrected Forms 1098 and preclusion of SPS from issuing Forms 1098 that do not accurately report mortgage interest payments would also address the injury Rovai alleges. *See id*. Lastly, a declaratory judgment declaring unlawful SPS's method of calculating mortgage interest, for the purpose of its tax deductibility to interest payers, would redress the conduct Rovai alleges resulted in SPS providing erroneous Forms 1098.

Despite the redressability of the Rovai's claims through a favorable decision, SPS argues that "all questions pertaining to Rovai's claimed mortgage interest deduction are appropriate for determination by the IRS and that the IRS is currently formulating tax policy addressing the reporting of capitalized mortgage interest" (ECF No. 44-1 at 12.) SPS offers no evidence that the IRS is currently formulating such tax policy. More importantly, SPS's argument appears to confuse Article III's redressability requirement, which asks only whether the remedies a court can provide are likely to redress the alleged injury, with this Court's prior determination that the IRS might be better suited to address the question of §6050H's scope in the first instance as a matter of the primary jurisdiction doctrine. (ECF No. 16 at 4−5.) The question of whether the IRS might be better suited to resolve an issue does not bear upon whether this Court has subject matter jurisdiction. *See Syntek Semiconductor*

*Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) ("Primary jurisdiction is not a doctrine that implicates the subject matter jurisdiction of the federal courts").

The Court also rejects as misguided SPS's second argument that only the IRS could have approved a higher tax deduction and determined the impact on Rovai's tax liability. (ECF No. 44-1 at 12.) This dispute is not about the IRS's determinations of Rovai's mortgage interest tax deductions in 2011 and 2012, nor is it about the IRS's determinations concerning her tax liability in those years. Rovai is suing SPS for its "completely separate actions and omissions, which resulted in negative tax consequences." *Dr. Henry Erle Childers IV v. The New York and Presbyterian Hospital*, 36 F. Supp. 3d 292, 304 (S.D.N.Y. 2014). Thus, SPS's reliance on *Ward v. American Family Life Assurance Company*, 444 F. Supp. 2d 540 (D.S.C. 2006), a case in which the plaintiff sought relief specifically to undermine the IRS's prior tax assessment, is misplaced.

*   *   *

For the foregoing reasons, the Court denies SPS's Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1). Nevertheless, the Court observes that SPS's challenge is a facial challenge to subject matter jurisdiction. SPS may file a factual Rule 12(b)(1) challenge to Rovai's Article III standing at a later point. Moreover, this Court will *sua sponte* revisit at any time the question of Rovai's Article III standing should it suspect that Rovai does not in fact possess Article III standing to assert any or all of her state law claims.

In denying SPS's current motion to dismiss for lack of subject matter jurisdiction, the Court *sua sponte* provides notice that it is concerned that Rovai has not plausibly pleaded any claims upon which relief may be granted. "A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim." *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981). Before such dismissal, a court should provide the plaintiff with an opportunity to at least submit a written opposition to such a motion. *Id.* Although the parties previously

briefed Defendant's prior motion to dismiss, significant time has passed since that briefing. Therefore, the Court will afford the Plaintiff the opportunity to file a brief in opposition to a Rule 12(b)(6) dismissal, and sets a briefing schedule at the conclusion of this opinion and order.

## IV. THE PROPRIETY OF A STAY UNDER THE PRIMARY JURISDICTION DOCTRINE

Having found that this Court has subject matter jurisdiction to consider Rovai's state law claims, the Court now considers the propriety of imposing a stay under the primary jurisdiction doctrine once more.

The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 397 F.3d 775, 780 (9th Cir. 2002). It "is not a doctrine that implicates the subject matter jurisdiction of the federal courts." *Id*. The Ninth Circuit has made clear that the application of the primary jurisdiction doctrine serves two underlying policies: (1) whether application will enhance court decisionmaking and efficiency by allowing the court to take advantage of administrative expertise and (2) whether application will help assure uniform application of regulatory laws. *See Chabner v. United of Omaha Life Ins*., Co, 225 F.3d 1042, 1051 (9th Cir. 2000). The Court does not believe that the first policy will be served at this juncture and that efficiency considerations outweigh the Court's prior concern with uniformity.

### A. Judicial Decisionmaking and Efficiency

First, the Court is not convinced that staying this case a second time will enhance its decisionmaking or serve efficiency purposes. This case is one of four that referred to the IRS the issue of reporting deferred interest under §6050H. *See Neely v. JP Morgan Chase Bank, N.A.*, No. 8:16-cv-01924, ECF No. 30 (C.D. Cal. Feb. 6, 2017); *Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-05927-EJD, 2015 WL 5186493

(N.D. Cal. Sept. 4, 2015); *Rovai v. Select Portfolio Servicing, Inc*., No. 3:14-cv-01738-BAS-WVG, ECF No. 16 (S.D. Cal. May 11, 2015); *Pemberton v. Nationstar Mortgage LLC*, No. 3:14-cv-01024-BAS-WVG, ECF No. 17 (S.D. Cal. Feb. 5, 2015). The IRS initially accepted the issue into its Industry Issue Resolution ("IIR") program on December 29, 2015. (ECF No. 45 at 2.) The IRS announced on August 25, 2016 that the IRS had added the issue to its Priority Guidance Plan, indicating that it would address the issue in the upcoming year. (*Id.* 2−3.) Based on this development, the Court kept the stay in place.

The IRS subsequently terminated the IIR project, as reflected in a communication to Rovai's counsel on October 28, 2016, indicating that it would instead address the issue through a formal guidance process. (ECF No. 32, Ex. A.) Since that communication over a year ago, there has been no indication that the IRS "has taken up or will take up the issues." *Pimental v. Google, Inc*., No. C-11-02585-YGR, 2012 WL 1458179, at *5 (N.D. Cal. April 26, 2012). The primary jurisdiction doctrine only "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties *reasonable opportunity* to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (emphasis added); *Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1173 (9th Cir. 2002). The Court believes there has been a reasonable opportunity for the parties to refer the question to the IRS and receive guidance, but this process has not resulted in any efficient resolution of the issue.

Second, it is no longer clear that the expertise of the IRS may be so necessary to adjudicate Rovai's state law claims that this Court must impose an additional stay of unknown duration. Although the Court recognizes that Rovai's state law claims incorporate or are premised on a duty arising under §6050H, the statute's use of the term "interest" is susceptible to statutory construction. "A district court is suited to resolve issues of statutory interpretation" of this term. *Pimental*, 2012 WL 1458179, at *3.

Furthermore, the IRS is not particularly well-suited to address the common law principles underlying all but one of Rovai's state law claims. An administrative agency's specialization does not offer much assistance in resolving questions of the application of common law principles which are "more competently decided in a judicial forum." *See General Elec. Co. v. Nedlloyd*, 817 F.2d 1022, 1027−28 (2d Cir. 1987); *see also, e.g., N.Y. State Thruway v. Level 3 Communs., LLC*, 734 F. Supp. 2d. 257, 265 (N.D.N.Y, 2010) ("[c]ontract disputes are legal questions within the conventional competence of the courts and thus the doctrine of primary jurisdiction does not normally apply.") Here, resolution of the question about whether §6050H imposes a duty to report deferred interest would not end the Court's inquiry as to whether Rovai has successfully shown that common law principles entitle her to relief from SPS's allegedly wrongful conduct.

This is not to say that the IRS has no relevant expertise regarding the scope of §6050H that would be helpful. In fact, the Court previously stayed the matter hoping the IRS would provide its expertise or guidance. (ECF No. 16.) But as only a portion of the state law claims falls within the purview of the IRS, further delay in resolving Rovai's claims through the imposition of another stay does not aid judicial efficiency.

**B.  Uniformity in Administration**

The Court's prior concerns about uniformity present a closer call in the Court's decision not to impose another stay. The Court's primary concern in staying the case pursuant to the primary jurisdiction doctrine was uniformity. The Court observed that all "the state law causes of action each turn on whether Defendant accurately reported the interest paid in Plaintiff's 1098 Forms." (ECF No. 16 at 4.) Those forms are completed, submitted, and relied upon by the IRS to enforce the nationwide taxation scheme. (*Id*.) The Court further observed that the IRS promulgates rules regarding the scope of interest payments and the proper administration of Forms 1098. (*Id.* (citing 26 C.F.R. §1.221-1; 26 C.F.R. §1.6050H02).) In light of these circumstances, the Court sought for the IRS to weigh on the issue of reporting deferred interest under

1 §6050H first.

Notwithstanding this earlier determination, the Court finds that the need for judicial efficiency determinatively outweighs its initial concern with uniformity.[3] *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) ("Under our precedent, 'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction.") Moreover, the Court's uniformity concerns were solely concerned with §6050H, not with what the common law and state statutory principles underlying Rovai's state law claims might require of SPS. If it becomes clear at a later point that the Court and the IRS "on a collision course in rendering different decisions" about the scope of §6050H, the Court can easily revisit the propriety of a stay to avoid a conflict. *See, e.g., N.Y. State Thruway v. Level 3 Communs., LLC*, 734 F. Supp. 2d. 257, 265 (N.D.N.Y, 2010).

## V. CONCLUSION & ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendant SPS's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) is **DENIED**.
2. The Court **DECLINES TO STAY** the remaining state law claims.
3. The Court **HEREBY ORDERS** the following Rule 12(b)(6) dismissal briefing schedule:
   a. Plaintiff Rovai shall file a Motion in Opposition to a Rule 12(b)(6) Dismissal of the First Amended Complaint **no later than November 17, 2017**. The motion must not exceed a total of 35 pages in length.
   b. Defendant SPS shall file a response to such motion **no later than December 7, 2017.** The response must not exceed a total of 35 pages in length.

---

[3] The Court also observes that at least one district court considering similar claims has found Article III standing and lifted its stay. *See Neely v. JP Morgan Chase Bank, N.A.*, No. 8:16-cv-01924, ECF No. 39 (C.D. Cal. Apr. 26, 2017).

|     |                                                                                                     |
| --- | --------------------------------------------------------------------------------------------------- |
| 1   |     c.    Plaintiff Rovai may file a reply **no later than December 14, 2017**. The reply must not exceed a total of 10 pages. |
| 3   |     d.    It is **ORDERED** that Plaintiff's Motion in Opposition to a Rule 12(b)(6) Dismissal and Defendant's response should brief the question of the appropriate choice of law to apply for the state law claims. |

    **IT IS SO ORDERED.**

DATED: October 18, 2017

Hon. Cynthia Bashant  
United States District Judge