1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 ADRIANA ROVAI,                    Case No. 14-cv-1738-BAS-WVG

                          Plaintiff,
12                                   **ORDER DISMISSING IN PART**
                                    **AND SUSTAINING IN PART**
13       v.                          **THE FIRST AMENDED**
                                    **COMPLAINT UNDER FEDERAL**
14 SELECT PORTFOLIO                  **RULE OF CIVIL PROCEDURE**
   SERVICING, INC.,                  **12(b)(6)**
15
                          Defendant.  **[ECF No. 54]**
16

17

18

19

20

21 BASHANT, J.:

22        This matter is before the Court on a notice to Plaintiff Adriana Rovai of a

23 possible Rule 12(b)(6) dismissal of the claims alleged in the First Amended

24 Complaint ("FAC").  (ECF No. 53.)  Rovai has filed a response (ECF No. 54),

25 Defendant Select Portfolio Servicing, Inc. ("SPS") has opposed the response (ECF

26 No. 66), and Rovai has filed a reply (ECF No. 70).  The parties appeared before the

27 Court on June 7, 2018 for oral argument and the case was submitted.  (ECF No. 82.)

28 The matter is ripe for decision.

**Overview**

This case involves pressing questions about the scope of 26 U.S.C. § 6050H, a federal statute which requires an individual who receives at least $600 in home mortgage interest payments during a calendar year to report the amount of interest received to the IRS and the individual who paid the interest. 26 U.S.C. §§ 6050H(a), (d). The fundamental dispute between the parties is whether Section 6050H requires SPS to report deferred interest payments.

In 2005, Rovai obtained a home mortgage loan which permitted her to defer mortgage interest for payment at a later date and added that deferred interest to principal. She deferred interest during the earlier years of her loan, which caused the outstanding principal on her loan to increase above the original amount. In 2011, SPS became Rovai's loan servicer and received mortgage payments from her, which SPS applied to interest and principal due on the loan. Thereafter, SPS respectively provided the IRS and Rovai with Forms 1098, which reported Rovai's payments on interest and principal for 2011. The amount of interest reported did not reflect deferred interest, which Rovai contends violated Section 6050H. She also alleges that the 2012 Form 1098 she received similarly failed to report deferred interest payments.

Federal courts have proceeded with caution in addressing challenges to mortgage lender and servicer Section 6050H reporting, like the challenge Rovai raises, even when those challenges present familiar state law claims.[1] This is

_____

[1] Four other Section 6050H-based challenges are currently pending in three district courts in the Ninth Circuit. *See Neely v. JP Morgan Chase Bank, N.A.*, No. 8:16-cv-01924, ECF No. 1 (C.D. Cal. Oct. 21, 2016) (concerning alleged failure to report interest after a short sale of the plaintiff's home); *Smith v. Bank of Am., N.A.*, No. 14-cv-6668-DSF-PLA, ECF No. 1 (C.D. Cal. Aug. 25, 2014) (concerning alleged failure to report unpaid interest capitalized into principal after a loan modification); *Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1024-BAS-WVG, ECF No. 1 (S.D. Cal. Apr. 23, 2014) (concerning alleged failure to report deferred interest payments); *Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-5927-EJD, ECF No. 1 (N.D.

– 2 –

because "[n]either § 6050H nor its implementing regulations provide explicit direction to recipients on how, whether and when to report capitalized interest." *Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-5927-EJD, 2015 WL 5186493, at *3 (N.D. Cal. Sept. 4, 2015); *see also Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1024-BAS-WVG, ECF No. 17 at 5–6 (S.D. Cal. Feb. 5, 2015) (implicitly recognizing lack of clarity under Section 6050H and existing IRS regulations and revenue ruling). State law claims incorporating Section 6050H-based challenges raise "novel" issues that have given federal courts pause, particularly because of the IRS's role in the federal tax scheme.[2] *See Horn v. Bank of Am., N.A.*, No. 3:12 cv–1718–GPC–BLM, 2014 WL 1455917, at *3 (S.D. Cal. Apr. 14, 2014); *see also Strugala*, 2015 WL 5186493, at *5 ("Strugala's claims raising a novel question of taxation policy in the context of th[e] form [1098] are the types on which the agency should have the first word in accordance with Congress' broad mandate."); *Smith v. Bank of Am., N.A.*, No. CV 14-6668 DSF (PLA), 2015 WL 12979198, at *1, 3–5 (C.D. Cal. Feb. 3, 2015) (initially dismissing all claims on the ground that failure to comply with Section 6050H "fall[s] within the Internal Revenue Service's (IRS) exclusive enforcement regime"), *vacated by*, 679 Fed. App'x 549 (9th Cir. 2017). Despite the filing of five class actions in federal courts concerning Section 6050H

_____

Cal. Dec. 23, 2013) (concerning alleged over-reporting of deferred interest not actually paid during a given year and subsequent under-reporting of deferred interest payments).

[2] Whether Rovai may even raise state law claims premised on the violation of Section 6050H, a federal tax reporting statute, might implicate the issue of federal preemption. Rovai has argued extensively against preemption of her state law claims in responding to the Court's order to show cause. (ECF No. 54 at 14–21.) SPS, however, did not brief preemption and instead focused on the so-called "common law exclusive enforcement doctrine," which the Court rejects. (ECF No. 66 at 4–8.) At oral argument, SPS conceded that it does not presently argue that Rovai's claims are preempted. Given this concession, the Court declines to undertake a preemption analysis at this time, without prejudice to SPS asserting preemption at a later stage.

– 3 –

1   reporting, with the earliest filed some six years ago, the IRS has not weighed in on
2   Section 6050H's scope.

3   After careful consideration, this Court has determined that Rovai's state law
4   claims generally may be resolved based on each claim's elements. For the reasons
5   herein, the Court concludes that (1) Rovai's claims for breach of contract, breach of
6   the implied covenant of good faith and fair dealing, fraud, UCL fraudulent and
7   unlawful prong claims, and her declaratory judgment claim (as it is pleaded) must be
8   dismissed with prejudice; (2) Rovai's claim for a preliminary and permanent
9   injunction must be dismissed without prejudice; and (3) Rovai's UCL unfair prong
10  claim and negligence claim are plausible.

11  **I.    BACKGROUND**

12  **A.    Relevant Statutory and Regulatory Background**

13  Congress permits taxpayers to claim as a deduction from their taxes all interest
14  paid during a given year. 26 U.S.C. §163(a) ("There shall be allowed as a deduction
15  all interest paid . . . within the taxable year on indebtedness."). This deduction may
16  be claimed for interest payments a homeowner makes on his or her home mortgage
17  loan. 26 U.S.C. §163(h). Generally, this deduction must be claimed within three
18  years of the filing of a tax return. 26 U.S.C. § 6511(a).

19  Congress enacted Section 6050H, an information reporting statute, to "assist
20  the [IRS] in verifying the accuracy of claimed mortgage interest deductions." Joint
21  Comm. on Taxation, H.R. 4170, 98th Cong. P. L. 98-369, Gen. Explanation of the
22  Revenue Provisions of the Deficit Reduction Act of 1984, at 488 (Dec. 31, 1984).
23  Section 6050H requires any individual who receives interest aggregating over $600
24  on a mortgage in a given year from another individual to furnish the Internal Revenue
25  Service ("IRS") with an information return identifying the amount of interest
26  received. 26 U.S.C. § 6050H(a); 26 U.S.C. § 6050H(b)(2)(B). The interest recipient
27  must also provide a statement to the individual who provided the interest, which also
28  identifies the amount of interest received during the year. 26 U.S.C. § 6050H(d). By

– 4 –

regulation, the interest recipient meets its statutory obligations by providing the IRS and the interest provider with a Form 1098. 26 C.F.R. §§ 1.605H-2(a), (b). Existing regulations provide some guidance on how to calculate the amount of interest received on a mortgage during a calendar year and identify certain payments that do not qualify as reportable interest. 26 C.F.R. § 1.6050H-1(e). However, neither the statute, nor the implementing regulations address deferred interest.

By statute and regulation, monetary penalties may be imposed on an interest recipient who intentionally disregards the requirement to provide a Form 1098 or who includes "incorrect information" on a form. *See* 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement" required under Section 6050H(d)); 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement" to IRS required under Section 6050H(a)); 26 U.S.C. §§ 6721(e), 6722(e); *see also* 26 C.F.R. § 1.6050H-2(e)(2)(i)-(iii).

## B.    Rovai's Loan and 2011 and 2012 Forms 1098 From SPS[3]

Rovai is a California homeowner who obtained an Option ARM mortgage loan in 2005, the terms of which provided an option to make a monthly interest payment less than the full amount due. Under this option, the monthly interest Rovai did not pay was added to the principal amount of her loan and treated as principal for the purposes of the loan. When SPS took over servicing her mortgage loan in December 2011, Rovai's loan balance was $9,013.02 above her original loan balance, an amount which was charged as interest in the earlier years of her loan, *i.e.* deferred interest.

SPS provided Rovai with Forms 1098 for the 2011 and 2012 tax years, which showed the amount of mortgage interest it received from her during the relevant tax

---

[3] The Court has previously discussed in greater detail the factual allegations underlying Rovai's claims against SPS in its Article III standing order and thus provides only a brief discussion. *See Rovai v. Select Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, 2017 WL 4700080 (S.D. Cal. Oct. 18, 2017).

years.  According to Rovai, the amounts reported did not account for deferred interest payments despite the presence of deferred interest.  Rovai alleges that interest does not lose its character as interest and so SPS was required to apply her payments to retirement of deferred interest before ever applying such payments to principal.  When Rovai realized the interest amounts reported in her Forms 1098 did not account for deferred interest payments, she brought the issue to SPS's attention.  SPS, however, refused to provide corrected Forms 1098 that accounted for deferred interest.

Because the IRS allegedly maintains a policy of rejecting taxpayer attempts to seek a tax deduction for mortgage interest payments higher than the amount reported on a Form 1098, Rovai alleges that SPS's refusal to provide revised Forms 1098 harmed her.  She relied on the interest amounts stated in her 2011 and 2012 Forms 1098 when she filed her taxes, and received smaller mortgage interest deductions for those years than she would have if SPS had reported deferred interest payments.  Rovai sues to recover the damages allegedly caused by SPS and to require SPS to report deferred interest payments in the Forms 1098 it issues.

### C.    Procedural Posture

Rovai initially brought suit against SPS for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligence, California's unfair competition law, and directly under Section 6050H.  (ECF No. 1.)  SPS moved to dismiss the original complaint under Rule 12(b)(6), which the parties fully briefed.  (ECF Nos. 11–13.)  In resolving that motion, the Court dismissed Rovai's claim brought directly under Section 6050H on the ground that there is no federal private right of action under the statute.  (ECF No. 16.)  Without otherwise addressing the merits, the Court imposed a primary jurisdiction stay, finding that its reasoning for imposing a stay in *Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1738-BAS-WVG, ECF No. 17 (S.D. Cal. Feb. 5, 2015), "applie[d] equally" to Rovai's claims.  (ECF No. 16 at 5.)  As a result of the stay, the Court deferred consideration of Rovai's state law claims to permit the IRS to weigh in on the scope of Section 6050H in the

– 6 –

first instance. (*Id.*) During the two-year duration of the stay, Rovai submitted status reports to advise the Court of any IRS developments. (ECF Nos. 17, 24.) The reports did not reveal any IRS actions that would help resolve Rovai's claims in this case.

In April 2017, the Court dismissed the original complaint when Rovai conceded that the complaint failed to show Article III standing in view of the Ninth Circuit's decision in *Smith v. Bank of America, N.A.*, 679 Fed. App'x 549 (9th Cir. 2017). (ECF Nos. 36, 38.) Rovai subsequently filed the First Amended Complaint ("FAC"). (ECF No. 39.) After SPS moved to dismiss for lack of standing, the Court held that Rovai has standing to assert her state law claims and declined to impose another primary jurisdiction stay. (ECF No. 53.) The Court also provided notice to Rovai of a potential Rule 12(b)(6) dismissal of her claims and ordered the parties to brief once more the claims' legal sufficiency. (*Id.*) The matter was submitted for decision after the Court's June 7, 2018 hearing. (ECF No. 82.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A defendant may move to dismiss a complaint on the ground that its allegations fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b).

A Rule 12(b)(6) motion tests the sufficiency of a complaint's allegations. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To survive a Rule 12(b)(6) motion, a plaintiff is required to set forth "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Factual allegations

– 7 –

must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 556. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In assessing the sufficiency of a complaint, a court accepts as true the complaint's factual allegations and construes them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Yet, the court need not accept as true legal conclusions pled in the guise of factual allegations. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). A pleading is insufficient if it offers only "labels and conclusion" or "a formulaic recitation of the elements of a cause of action," without adequate factual allegations. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 676. Although a court assesses a complaint's sufficiency based on its allegations, a court may consider materials properly submitted as part of the complaint in deciding a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## III.   DISCUSSION[4]

### A.   The Breach of Contract Claim is Dismissed with Prejudice

Rovai pleads a breach of contract claim under two theories: (1) Section 6050H establishes a legal duty incorporated as a term into her contract, such that a violation of the statute also constitutes a breach the contract, and (2) SPS breached a

---

[4] Although tailored to account for some factual differences as well as differences in SPS's briefing, the Court's resolution of Rovai's claims is largely similar in substance and form to its decision in *Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1024-BAS-WVG, ECF No. 70 (S.D. Cal. June 26, 2018). Rovai's allegations and her submissions to the Court are generally identical to the in turn Pembertons' allegations and submissions. SPS's challenges to Rovai's claims largely track those asserted by Nationstar. To the extent this Order does not expressly address an argument SPS and Nationstar both raised, including the "common law exclusive enforcement doctrine," the Court's analysis in *Pemberton* controls.

– 8 –

contractual term governing allocation of her payments between interest and principal. (ECF No. 54 at 28.) SPS contends that neither theory provides a plausible basis for Rovai's breach of contract claim. (ECF No. 66 at 28–29.) The Court agrees.

To state a claim for breach of contract under California law, plaintiffs must plead four elements: (1) the existence of a contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiffs as a result of that breach. *Misha Consulting Grp., Inc. v. Core Ed. & Consulting Solutions, Inc.*, No. C-13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013) (citing *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Cal. Ct. App. 2008)). There is no dispute that a contract existed. Rovai alleges that SPS breached the terms of the "promissory note" which originated with her home mortgage loan. (FAC ¶¶ 10, 47.) Rovai has submitted that note with the FAC, which is comprised of the deed of trust ("Deed") and an Adjustable Rate Note rider (the "Note"). (*Id.* ¶ 10, Ex. A.) Together, these documents constitute Rovai's contract. SPS relies on the terms of these documents to challenge the plausibility of Rovai's claim (ECF No. 66 at 11–14), and the Court does so as well.[5] *See, e.g., United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (a court may consider documents attached to a complaint to resolve a motion to dismiss).

The parties' primary dispute is whether Rovai has adequately pleaded that SPS breached a term of the contract. "Under California law, the interpretation of a written contract is a matter of law for the court even though questions of fact are involved." *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1159 (E.D. Cal. 2009) (quoting *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986)).

---

[5] Rovai's contract originated with First Magnus Financial Corporation. (FAC ¶ 10.) SPS does not dispute that the contract governs its contractual relationship with Rovai. Further, the text of the contract specifically provides that "anyone who takes this Note by transfer and who is entitled to receive payments under this Note" is the Note Holder. (FAC Ex. A at 16.) Accordingly, it is the relevant contract between Rovai and SPS.

Where the parties have reduced their contract to writing, the parties' mutual intent at the time of the contract is determined from the writing alone if possible. *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505, 513 (Cal. Ct. App. 2003). When interpreting a contract, "[t]he whole of a contract is to be taken together" with "each clause helping to interpret the other." Cal. Civ. Code § 1641. Unless the contract uses words in a technical manner or defines certain terms, the words of a contract are understood in their ordinary and popular sense. *See Britz Fertilizers, Inc.*, 665 F. Supp. 2d at 1159–60 (citing *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 97 Cal. Rptr. 3d 533, 548 (Cal. Ct. App. 2009); *Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505 at 513). Although a contract is ambiguous if it is capable of two different reasonable interpretations, a court will not strain to create an ambiguity where none exists. *See Kashmiri v. Regents of the Univ. of Cal.,* 67 Cal. Rptr. 3d 635, 660 (Cal. Ct. App. 2007) ("[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.") (quoting *Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 627 (Cal. 1995)).

When a dispute centers on the contract's terms, a breach of contract claim may be dismissed for failure to state a claim if the contract's terms are unambiguous. *See Consul, Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1117 (N.D. Cal. 2013). However, "[w]here the language leaves doubt as to the parties' intent, the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008); *see also Trs. of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 777 (9th Cir. 2009)). With these principles in mind, the Court turns to Rovai's breach of contract claim.

### 1.    Section 6050H Is Not A Term of Rovai's Contract

Rovai alleges that Section 6050H is a term of her contract and, therefore, SPS's alleged violation of the statute also constitutes a breach of the parties' contract. (FAC

¶¶ 48–49.)[6] SPS argues that Rovai impermissibly "attempts to create an implied contractual term" to support her breach of contract claim. (ECF No. 66 at 12.) The Court finds that Section 6050H is neither an express, nor implied term of Rovai's contract and she cannot plausibly assert a breach of contract claim on this basis.

Generally, a party may not rely on a statute or regulation to state a breach of contract claim when the underlying contract does not incorporate the statute or regulation. *See, e.g., Johnson v. World Alliance Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016) ("HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement.") (affirming dismissal of breach of contract claim); *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. App'x 861, 864 (5th Cir. 2013) ("Federal statutes and regulations can form the basis of a breach-of-contract claim if the parties expressly incorporate them into their contract."); *see also Sybrandy v. U.S. Dep't of Agric., Agric. Stabilization & Conservation Serv.*, 937 F.2d 443, 445–46 (9th Cir. 1991) ("This regulatory provision was expressly incorporated into the Termination Program contract signed by the Sybrandys.").

Under California law, the terms of an extrinsic document may be incorporated by reference in a contract if: "(1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 97 Cal. Rptr. 3d 856, 870 (Cal. Ct. App. 2009). This includes specific statutes or regulations. "When statutory language in included in a contract, it assumes a new legal identity:

---

[6] Rovai contends that her "primary theory underlying her breach of contract claim" is "that SPS breached the mortgage deed of trust's allocation provision." (ECF No. 54 at 28.) This contention, however, is unsupported by the FAC, which expressly alleges a breach of contract based on the alleged violation of Section 6050H as a term incorporated into her contract. (FAC ¶¶ 48–49.) The Court thus analyzes in the first instance Rovai's breach of contract claim as it is pleaded.

– 11 –

that of contractual language." *300 DeHaro St. Investors v. Dep't of Hous. & Cmty. Dev.*, 75 Cal. Rptr. 3d 98, 111 (Cal. Ct. App. 2008). The inclusion of such language makes the statute or regulation "enforceable as a term of the contract." *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017) (citing *Bushell v. JPMorgan Chase Bank, N.A.*, 163 Cal. Rptr. 3d 539, 547–49 & n.9 (Cal. Ct. App. 2013)).

Rovai readily concedes in the FAC that her contract "do[es] not contain any provision specifically governing the manner in which [SPS] would report mortgage interest to Plaintiff[.]" (FAC ¶ 48.) This allegation understates the limitations of the contract because in fact no provision incorporates Section 6050H by reference or through use of any of its language. The absence of such a provision precludes Rovai from asserting a breach of contract based on SPS's alleged violation of Section 6050H. *Compare Chandler v. Wells Fargo Bank, N.A.*, No. 11-03831 SC, 2014 WL 31315, at *5–6 (N.D. Cal. Jan. 3, 2014), *aff'd* 637 Fed. App'x 413, 414 (9th Cir. 2016) ("To the extent that Chandler relies on HUD regulations to support his breach of contract claim, his argument fails because the HECM does not incorporate them.") *with Fowler*, 2017 WL 3977385, at *4 (finding incorporation of HUD regulations because plaintiff alleged contractual term in note that "Lender shall accept prepayment on other days provided that Borrower pay interest on the amount prepaid for the remainder of the month *to the extent required by Lender and permitted by regulations of the Secretary*." (emphasis in original)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) (plaintiff could pursue breach of contract claim for violation of TPP regulations that were incorporated by reference into contractual agreements).[7]

---

[7] Rovai asserts that *Wigod* shows why she can press a breach of contract claim based on a violation of Section 6050H. (ECF No. 54 at 30.) Rovai's claim is readily distinguishable from the breach of contract claim at issue in *Wigod* because the claim there was premised on express incorporation into the contract of the federal

Despite the absence of such a contractual provision, Rovai allege that SPS's reporting of mortgage interest is "nonetheless a term of each contract because SPS has a legal duty to provide accurate Forms 1098" under Section 6050H. (FAC ¶¶ 48–49.) The Court is not required to accept this conclusory allegation which contradicts the Note's express terms and will not accept it to defeat dismissal. *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998) (a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint"); *Abbit v. ING United States Annuity & Life Ins. Co.*, 999 F. Supp. 2d 1189, 1197 (S.D. Cal. 2014) (dismissing breach of contract claim based on allegations contradicted by terms of agreement submitted with complaint).

Rovai cannot save the claim from dismissal by relying on the principle that a contract is deemed to incorporate all applicable statutes in effect at the time the contract is made. (ECF No. 54 at 28–29.) She points to two California state court cases which applied this principle. (*Id.* (citing *Mercury Cas. Co. v. Scottsdale Indem. Co.*, 68 Cal. Rptr. 3d 123, 132 (Cal. Ct. App. 2007); *Grubb v. Ranger Ins. Co.*, 143 Cal. Rptr. 558, 559 (Cal. Ct. App. 1978)).) However, both cases applied the principle to insurance contracts to define the scope of *substantive* provisions directly regulated by the relevant law. For example, *Grubb* determined that a city ordinance governing insurance coverage requirements entered into an insurance contract to define the scope of insurance coverage. *Grubb*, 143 Cal. Rptr. at 559. Similarly, *Mercury Casualty Company* determined that a California statute establishing an automobile liability insurance requirement "automatically became a part of any new personal automobile liability policies issued in California as a matter of law." *Mercury Cas. Co.*, 68 Cal. Rptr. 3d at 132. As a reporting statute, Section 6050H simply does not operate in either manner—it says nothing about mortgage loan contracts, nor does it

_____

regulations the defendant allegedly violated. *See Wigod*, 673 F.3d at 565, 579. In contrast, Section 6050H is not expressly incorporated into Rovai's contract with SPS.

purport to impose substantive limits on them.

California courts have also applied the principle on which Rovai relies to ascertain or limit the meaning of terms in a contract. *See, e.g., Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330 (Cal. Ct. App. 2012) (applying principle to conclude that plaintiff's interpretation of the term "gallon" in the parties' sales agreement "had a specified meaning that plainly conflicts with plaintiffs' proposed definition of that term") (affirming dismissal of breach of contract claim); *Miracle Auto Ctr. v. Superior Court*, 80 Cal. Rptr. 2d 587, 589 (Cal. Ct. App. 1998) (applying principle to define certain undefined terms in an insurance contract). But, as the Court has noted, California contract law treats a *defined* contract term according to the definition set forth in the contract. *See Britz Fertilizers, Inc.*, 665 F. Supp. 2d at 1159–60; *see also Gutowitz v. Transamerica Life Ins. Co.*, 126 F. Supp. 3d 1128, 1143 (C.D. Cal. 2015) (applying the "plain and ordinary meaning" to a term because it "is not defined in the policy"). As the Court discusses herein, Rovai's contract expressly defines the terms "interest" and "principal." Thus, the Court need not and cannot look beyond the contract to ascertain their meaning for the purposes of Rovai's breach of contract claim. Accordingly, the Court rejects Rovai's claim that Section 6050H is an implied contractual term.

### 2. Rovai Cannot Plausibly Plead a Breach of the Allocation Provisions

Rovai also argues that she has stated a breach of contract claim based on the allocation provisions of her contract. (ECF No. 54 at 8–9, 28.) The allocation provisions require that SPS apply Rovai's payments to interest before principal. (FAC Ex. A at 5, 17.) The specific allegations in support of Rovai's breach of contract claim do not allege that SPS breached these provisions. (*See generally* FAC ¶¶ 46–51.) The Court thus construes Rovai's reliance on the allocation provisions as a request for leave to amend the FAC to plead a breach of contract claim on this basis. *See, e.g., Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141, 1162

– 14 –

(E.D. Cal. 2015) (construing argument raised in legal memorandum in response to motion to dismiss as request for leave to amend). The Court finds that amendment on this basis would be futile.

The starting point for the Court are the allocation provisions of Rovai's Note and Deed as well as the conduct alleged in the FAC. Section 3(A) of Rovai's Note establishes that "[e]ach monthly payment . . . will be applied to interest before Principal." (FAC Ex. A at 17.) By its terms, the Note identifies only two categories for payment allocation: interest and principal. There is no separate category for "deferred interest." Rovai's Deed in turn allocates payments, in the first instance, between interest and principal. (*Id.* at 5.)[8] Thus, Rovai must be able to plausibly allege that SPS's treatment of deferred interest violated the contract's allocation between interest and principal.

Rovai attempts to allege a violation of the allocation provisions by identifying the deferred interest on her loan. Rovai alleges that $9,013.02 of her "loan balance" was deferred interest at the time SPS took over her mortgage loan. (*Id.* ¶ 11.) Although she made all payments to SPS due under her Note in 2011—an amount of $2,698.20—the 2011 Form 1098 she received from SPS reflected $1,443.58 in interest payments and $1,254.62 in principal payments. (*Id.* ¶¶ 12–13.) Rovai contends that SPS's "method" of calculating mortgage interest is "wrong" because it

---

[8] The allocation provision in Rovai's Deed appears under the section "Uniform Covenants" and is titled "Application of Payments or Proceeds." It reads in relevant part:

> Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [funds for escrow items]. Such payments shall be applied to each Periodic Payment in the order in which it became due.

(ECF No. 39, Ex. A at 5.)

"assumes that the entire loan balance constitutes principal and fails to recognize that interest that was previously deferred does not lose its character as interest . . ." (*Id.* ¶ 14; ECF No. 70 at 2.) Central to Rovai's allocation theory is her allegation that interest "does not lose its character as interest." (FAC ¶ 14; ECF No. 54 at 5–7.) Assuming that premise, Rovai alleges that SPS violated the allocation provisions by not crediting payments toward retiring all deferred interest before crediting any payments to principal. (FAC ¶¶14–15; ECF No. 54 at 9.)

Rovai's allocation theory is implausible because multiple provisions of the Note expressly treat deferred interest as principal, which in turn affects how payments are allocated under the contract. The Note contains multiple admonitions that principal due under the Note may increase over the amount originally borrowed. The Note begins with a clear warning that "THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED . . ." (*Id.* Ex. A. at 16.) The first provision of Rovai's Note, titled "Borrower's promise to pay," incorporates the substance of this warning into Rovai's contractual promise. Under that provision, Rovai specifically agreed that "[t]he Principal amount may increase *as provided under the terms of this Note* . . ." (*Id.* at §1 (emphasis added).) The Note thus leaves no surprise that principal may increase under its terms.

Rovai's Note further specifies precisely *how* the principal amount of the Note would increase: through deferment of interest. Specifically, through Rovai's exercise of her option to make a "minimum payment" "not sufficient to cover the amount of interest due," resulting in negative amortization. (*Id.* §3(C).) Section 3(E), titled "Additions to my Unpaid Principal," discusses in explicit terms how exercising this option would affect the principal balance. The Section provides that "for each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and *will add the difference to my unpaid Principal* . . ." (*Id.* §3(E) (emphasis added).) Section 3(E) further states that "interest will accrue on the amount of this difference

– 16 –

at the interest rate required by Section 2," which in turn, sets the interest rate for "unpaid Principal." (*Id.* §§2(A); 3(E).)  Section 3(E) thus unambiguously adds deferred interest to unpaid principal to be treated, for the purposes of the payments due under the Note, as payments on principal.

These specific provisions of Rovai's Note qualify the meaning of the allocation provisions in Rovai's Deed.  *See Pecarovich v. Allstate Ins. Co*., 309 F.3d 652, 658 (9th Cir. 2002) (quoting *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 278 (9th Cir. 1992) ("It is well settled that '[w]here there is an inconsistency between general provisions and specific provisions [in a contract], the specific provisions ordinarily qualify the meaning of the general provisions.'")); *Quezada v. Loan Ctr. of Cal., Inc.*, No. 08-177 WBS KJM, 2008 WL 5100241, at *7–8 (E.D. Cal. Nov. 26, 2008) (determining that specific provisions of adjustable rate note qualified general terms on which plaintiff's breach of contract claim was premised and required dismissal).  The Note's treatment of deferred interest as principal thus applies to the allocation provisions in both documents, which together comprise Rovai's contract.

Based on the contract's unambiguous provisions, Rovai cannot plausibly plead that SPS breached the contract's "allocation formula" by allocating her payments in the manner reflected on her 2011 and 2012 Forms 1098.  (ECF No. 54 at 9.)  As Rovai concedes, she "elected *pursuant to her note* to defer payment of some of her interest that was due for a given month," and that that interest "was capitalized."  (ECF No. 54 at 2 n.3; FAC ¶ 11.)  In accordance with the Note's treatment of deferred interest as principal, the principal amount increased in the amount of interest Rovai deferred.[9]

_____

[9] Rovai attempts to elide the Note's treatment of deferred interest as "principal" by using the phrase "overall loan balance" and "loan-balance" to refer to the addition of deferred interest.  (FAC ¶¶ 8, 11.)  Elsewhere, however, Rovai implicitly recognizes the Note's treatment of deferred interest as principal.  Specifically, she alleges that "a limit of 115% of the original principal amount was placed on the amount of negative amortization consumers were allowed to incur."  (*Id.* ¶ 9.)  That

– 17 –

Indeed, Rovai alleges that the amount of her loan balance in excess of the original principal is deferred interest. (FAC ¶ 11.) When Rovai's deferred interest became principal under the Note, it became principal for the purposes of the contract's allocation provisions as well. In accordance with the contract's identification of interest and principal as the relevant categories for payment allocation, SPS appropriately treated deferred interest as the latter. SPS's Form 1098 reporting in turn merely reflected SPS's authorized application of Rovai's payments. Rovai therefore cannot plausibly allege a breach of the contract's allocation provisions.

The absence of any textual basis in the contract for Rovai's allocation argument underscores to the Court that Rovai's true aim is once more to imply a contractual term that does not exist. Rovai's argument that SPS's "method" of calculating interest is "wrong" because interest "does not loses its character as interest" substantively derives from tax law, not from her contract with SPS. (FAC ¶ 14.) In fact, Rovai argues that "[e]ven in the absence of an allocation agreement, the law presumes that payments on a note are allocable to retiring interest before retiring principal." (ECF No. 54 at 8.) Central to that argument is the notion that Rovai's deferred interest is interest *for tax purposes*. For example, Rovai relies on *Old Colony Railroad Company v. Commissioner of Internal Revenue*, 284 U.S. 552, 561 (1932), to assert that the term "interest" means "the amount which one has contracted to pay for the use of borrowed money." She argues that her deferred interest satisfies this meaning. She further points to a Tax Court case which determined that although a contract treated "defaulted interest" as principal, such interest "d[id] not become principal for tax purposes." *See Motel Corp. v. Commissioner*, 54 T.C. 1433, 1440 (1970) (citing *Deputy v. DuPont*, 308 U.S. 488 (1940)). Implicit in Rovai's argument is that SPS's contractual treatment of deferred interest cannot change what counts as interest for

_____

limit only has meaning in view of the Note's multiple provisions treating deferred interest as principal.

– 18 –

1  tax purposes.  (ECF No. 54 at 5 ("Just as the laws of physics prevent alchemists from

2  transforming lead into gold, well-established tax law prevents transforming interest

3  into principal based on the time of repayment.").

4      Even if Rovai is right that deferred interest qualifies as interest for tax purposes,

5  the claim before the Court is one for breach of contract.  The terms of Rovai's contract

6  plainly treat deferred interest as principal and authorize SPS to allocate Rovai's

7  payments accordingly.  Concluding otherwise is possible only on the assumption that

8  Section 6050H is a term of Rovai's contract—an assumption that finds no support in

9  the contract.   Accordingly, Rovai cannot allege a claim under the allocation

10  provisions and the breach of contract claim is dismissed with prejudice.  *See Foman*

11  *v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is permissible if

12  amendment would be futile).

13      **B.      The Breach of the Implied Covenant of Good Faith and Fair Dealing**

14              **Claim is Dismissed with Prejudice**

15      Rovai's second cause of action is for breach of the implied covenant of good

16  faith and fair dealing.  She alleges that, under the covenant, SPS had a duty "not to

17  conceal and/or fully and unambiguously disclose to Plaintiff . . . that the way it was

18  treating 'deferred interest' payments was against [her] interests and contrary to

19  established tax law." (FAC ¶ 53.)  SPS allegedly breached the covenant when it failed

20  to report to the IRS deferred interest payments it received from Rovai.  (*Id.* ¶ 54.)

21  Rovai further alleges that SPS had a duty to research her contentions that it had failed

22  to accurately report her interest payments and further breached the covenant when it

23  failed to issue revised Forms 1098 to Rovai after receiving her complaint.  (*Id.*)  SPS

24  argues that Rovai has failed to allege any specific contractual provision with which

25  SPS interfered, nor can she plausibly do so.  (ECF No. 66 at 14–15.)  The Court agrees

26  with SPS.

27      To plead a breach of the implied covenant, a plaintiff must allege: (1) the parties

28  entered into a contract; (2) the plaintiff fulfilled his or her obligations under the

– 19 –

contract; (3) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct. *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). Generally, under California law, every contract carries with it an implied covenant of good faith and fair dealing in the contract's performance and enforcement. *Foley v. Interactive Data Corp.*, 765 P.2d 373, 389 (Cal. 1988). The implied covenant "is aimed at making effective the agreement's promises" and requires that neither party do anything which will deprive the other of the benefits of the agreement. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 8 (Cal. 2000); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 672 (Cal. 1995). The implied covenant is inherently limited—it "does *not* extend beyond the terms of the contract at issue." *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1160 (E.D. Cal. 2010) (emphasis in original) (citation omitted); *see also Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) ("The covenant . . . cannot be endowed with an existence independent of its contractual underpinnings" or "impose substantive duties or limit . . . beyond those incorporated in the specific terms of the[] agreement.").

Rovai's implied covenant claim fails because no provision of the Note or the Deed requires SPS to disclose its treatment of deferred interest payments in its Form 1098 reporting. In fact, Rovai disavows that any provision governing how SPS would report mortgage interest existed. (FAC ¶ 48.) Rovai does not identify any express contractual provision that required SPS to investigate her contentions regarding SPS's allegedly inaccurate reporting in a Form 1098, or to issue a corrected Form 1098. Nor can Rovai identify such provisions because no such provisions exist. The absence of these contractual provisions defeats Rovai's claim. *See Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 639 (Cal. 1995) ("Absent [a] contractual right . . . the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of contractual underpinnings.").

Rovai nevertheless contends that she can ground her implied covenant claim

– 20 –

on the terms of the allocation provisions of her contract as well as on the purported

incorporation of Section 6050H as a contractual term.[10]  (ECF No. 54 at 31–33; ECF

No. 70 at 8.)  Because the breach of implied covenant claim does not plead this, the

Court construes this as a request for leave to amend the FAC to plead the breach of

the implied covenant claim on this basis and finds amendment to be futile.

The Court has already concluded that the contract, in unambiguous terms,

specifically requires that deferred interest be treated as principal *for the purposes of*

*the contract*.  SPS in turn had the contractual right to treat deferred interest as

principal, which in turn determined the allocation of Rovai's payments between

principal and interest.  Rovai "cannot state a claim for breach of the implied covenant

of good faith and fair dealing, because 'if defendants were given the right to do what

they did by the express provisions of the contract there can be no breach.'"  *Song Fi*

*Inc. v. Google, Inc*., 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (quoting *Carma Dev.*

*(Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (Cal. 1992)) (dismissing

implied covenant claim with prejudice based on defendant's rights under the

contract); *Abbate v. Wells Fargo Bank, N.A*., No. CV 10-6561 DOC (RNBx), 2011

WL 9698215, at *9 (C.D. Cal. Nov. 17, 2011) (same); *Zamora v. Zuni Solar*, No.

2:16-cv-01260-ODW-KS, 2016 WL 3512439, at *4 (C.D. Cal. June 27, 2016) (same).

This principle also precludes Rovai's claim to the extent it is premised on SPS's

---

[10] Rovai also argues that her implied covenant claim is adequately pleaded because California courts recognize a "duty" of mortgage finance company that includes "[the] financial services [of managing the loan]."  (ECF No. 70 at 8 (citing *Hernandez v. Hilltop Fin. Mortg., Inc*., 622 F. Supp. 2d 842, 850 (N.D. Cal. 2007); *Jefferson v. Chase Home Finance LLC*, No. C06-6510 THE, 2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007).)  She asserts that, based on these authorities, she had a "reasonable expectation of good faith in [SPS's] performance of that duty even if no specific terms of the loan were being breached."  (*Id*. (emphasis added).)  The Court rejects this argument because the implied covenant cannot be used to graft into a contract a free-floating duty untethered to its existing terms. *See Guz v. Bechtel Nat'l, Inc*., 8 P.3d 1089, 1110 (Cal. 2000)).

– 21 –

purported abuse of contractual discretion under the allocation provisions. *See Carma*, 826 P.2d at 728 (the covenant cannot "be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms."). To the extent Rovai attempts to imply Section 6050H into her contract through the implied covenant (ECF No. 54 at 33), the Court rejects this. A breach of the implied covenant claim based on the violation of a non-existent contractual term plainly "impose[s] substantive duties or limits on the contracting parties beyond those incorporated in the[se] specific terms." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012). Accordingly, the Court dismisses with prejudice Rovai's breach of the implied covenant claim.

### C.     The Common Law Fraud Claim is Dismissed with Prejudice

Rovai asserts a fraud claim against SPS based on SPS's alleged failure to report deferred interest payments. She alleges that "SPS[] knowingly and intentionally misrepresented the correct amount of interest that Plaintiff paid in 2011 and 2012" on her 2011 and 2012 Forms 1098, and "intentionally concealed" its wrongful reporting. (FAC ¶ 74.) The basis of Rovai's assertion of falsity is that "SPS[] was under a legal duty pursuant to the 26 U.S.C. § 6050H to report accurately the interest SPS[] 'received' during each calendar year" and "was further under a duty to correct any mistakes on Forms 1098[.]" (*Id.* ¶ 75.)

Under California law, "the necessary elements of fraud are: (1) misrepresentations (false representation, concealment, or nondisclosure); (2) knowledge of falsity (*scienter*); (3) intent to defraud (*i.e.*, to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Alliance Mortgage Co. v. Rothwell*, 900 P.2d 601, 608 (Cal. 1995). Rule 9(b) in turn requires—even when a claim is raised under state law—that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Allegations

– 22 –

supporting a fraud claim thus must move beyond Rule 8(a)(2)'s general requirement that a party plead "a short and plead statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To avoid dismissal under Rule 9(b), a "complaint [must] state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (internal quotations omitted). These averments give "defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done nothing wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations and citation omitted). Thus, under Rule 9(b), "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Applying these principles, the Court concludes that Rovai cannot plausibly show a false representation, nor can she plausibly plead SPS's knowledge of falsity and intent to defraud.

### 1. Rovai Cannot Plausibly Plead that SPS Made a False Representation

The Court initially rejects SPS's argument that Rovai cannot allege a misrepresentation simply because her claim concerns interest information provided on a Form 1098. SPS argues that "the characterization of [Rovai's] payments is a legal, not factual, issue[.]" (ECF No. 66 at 21.) Yet, SPS also contends that "Plaintiff's Form 1098 clearly disclosed what payments were reported as interest, and which were not." (*Id.*) What SPS "clearly disclosed" to Rovai was in response to Section 6050H'S requirements, which call for factual information whose accuracy

can be assessed.[11]

Congress has authorized the imposition of statutory penalties for the provision of "incorrect information" regarding home mortgage interest received, whether provided to the IRS or individuals like Rovai. *Compare* 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" in an "information return") *with* 26 U.S.C. § 6724(d)(1)(B)(v) (defining "information return" to mean "any return required by . . . section 6050H(a)", *i.e.* a return provided to the IRS); *compare* 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement") *with* 26 U.S.C. § 6724(d)(2)(M) (defining "payee statements" to include statements required by "section 6050H(d)", *i.e.* a statement provided to the individual from whom interest was received). IRS regulations in turn impose penalties for incorrect information in a Form 1098. 26 C.F.R. § 1.6050H-2(e)(2)(iii). Given this scheme, the Court cannot agree with SPS that the information it provides in a Form 1098 is a "legal opinion" immune from charges of fraud.

The crux of Rovai's allegation of falsity is that (1) Section 6050H's use of the term "interest" includes "deferred interest" and (2) the amounts of interest stated in her 2011 and 2012 Forms 1098 were false because they did not account for deferred interest. (FAC ¶ 76; *see also* ECF No. 54 at 33.) Rovai defends this assertion by pointing the Court to the same cases she relies on to argue that the term "interest" in Section 6050H includes deferred interest as a matter of statutory construction. (*Compare* ECF No. 54 at 3–6 *with id.* at 33–34.) In particular, she points to *Old*

---

[11] SPS's argument is based on the principle that "fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004). This general principle regards statements of domestic law as expressions of opinion that cannot support fraud liability, even if the opinions are false. *Miller*, 358 F.3d at 621. Because Section 6050H calls for factual information, the principle is inapplicable here

– 24 –

*Colony Railroad Company* for the proposition that interest is the price charged for the use of money and assume that her deferred interest satisfies that meaning. (*Id*. at 33.)

Fatal to Rovai's statutory construction-based assertion of falsity is Section 6050H's ambiguity and the lack of regulatory guidance at the time SPS issued its Forms 1098. While Rovai "would characterize the question as a simple undertaking of statutory construction, that is quite frankly not the case." *Strugala*, 2015 WL 5186493, at *4. "It cannot be said based on a plain reading of § 6050H whether or not the statute's use of the term 'interest' encompasses capitalized interest." *Id*. As multiple courts have expressly acknowledged, "[n]either § 6050H nor its implementing regulations provide explicit direction to recipients on how, whether and when to report capitalized interest." *Id*. at *3; *see also Rovai v. Select Portfolio Servicing, Inc*., No. 14-cv-1738-BAS-WVG, 2015 WL 3613748, at *3 (S.D. Cal. May 11, 2015) (observing that whether Section 6050H reaches deferred interest and thus requires reporting of deferred interest on a Form 1098 is an "issue of first impression").

Instructive for the Court is *Brakke v. Economic Concepts, Inc*., 153 Cal. Rptr. 3d 1 (Cal. Ct. App. 2013), a case involving alleged misrepresentations of federal tax information. The *Brakke* plaintiffs sued a defendant corporation which marketed and administered pension plans, and which had made representations to the plaintiff in 2002 that its pension plans were legal, complied with the Internal Revenue Code, and would be tax deductible. *Id*. at 3. The plaintiffs alleged these representations were false because a 2004 IRS audit concluded that the plaintiffs' plan did not comply with relevant Internal Revenue Code provisions and disallowed tax deductions. *Id*. at 4. Relying on *Berry v. Indianapolis Life Insurance Company*, 638 F. Supp. 2d 732 (N.D. Tex. 2009), the *Brakke* court held that the plaintiffs failed to allege that statements by the defendants' agents were false *when made* and, to the extent they were, the plaintiffs could not have reasonably relied on representations regarding the IRS's future treatment of their pension plan. *Id*. at 7. *Berry* in turn involved plaintiffs who

– 25 –

asserted claims against four insurance companies and their consultants related to their alleged design of "defined benefit plans" to qualify for federal tax benefits. *Berry*, 638 F. Supp. 2d at 734. The *Berry* plaintiffs asserted fraud based on similar conduct, alleging that defendants' 2001 and 2002 representations were false based on 2004 and 2005 IRS pronouncements. The *Berry* court determined that "as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements . . . purportedly made in 2001 and 2002 were false when made. . ." *Berry*, 638 F. Supp. 2d at 739.

Unlike in the *Brakke* and *Berry* cases, the IRS has not made any pronouncement regarding what Section 6050H requires with respect to reporting of deferred interest. Nor has any federal court adopted the statutory construction Rovai advances here based on non-Section 6050H cases and different revenue rulings. Even if this Court did so now, *Brakke* and *Berry* counsel that it could not be used to show that SPS's reporting in 2011 and 2012 was false *when made* because the law did not unambiguously set forth clear requirements for reporting deferred interest payments. *See Berry*, 638 F. Supp. 2d at 739; *Brakke*, 153 Cal. Rptr. 3d at 7. Stripping away the FAC's assertions of a false representation based on the failure to report deferred interest, there are no other allegations that can sustain Rovai's fraud claim. With no factual allegations showing plausible false representations in the 2011 and 2012 Forms 1098 SPS provided and the fact that Rovai cannot plausibly allege any with respect to Section 6050H, the Court dismisses with prejudice her fraud claim

## 2. Rovai Cannot Plausibly Plead SPS's Knowledge of Falsity and Intent to Defraud

Under the allegations specific to her fraud claim, Rovai alleges that "SPS[] knowingly and intentionally misrepresented the correct amount of interest that Plaintiff paid to it in 2011 and 2012." (FAC ¶ 74.) The Court finds that Rovai's fraud claim fails because she cannot plausibly allege that SPS knowingly and intentionally defrauded her.

– 26 –

For the purposes of Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" by a plaintiff. Fed. R. Civ. P. 9(b); *see also Odom v. Microsoft Corp*., 486 F.3d 541, 554 (9th Cir. 2007). Although this general averment of intent and knowledge may be sufficient for Rule 9(b), "*Twombly* and *Iqbal*'s pleading standards must still be applied to test complaints that contain claims of fraud." *Eclectic Props. East, LLC v. Marcus & Millichap Co*., 751 F.3d 990, 995 n.5 (9th Cir. 2014). This means that "[p]laintiffs must still plead facts establishing *scienter* with the plausibility standard required under Rule 8(a)." *DeLeon v. Wells Fargo Bank, N.A*., No. 10-CV-01390-LHK, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) (citing *Iqbal*, 556 U.S. at 686) (conclusory allegations regarding knowledge of falsity fails to plausibly show *scienter* or knowledge of falsity necessary for fraud claim); *Gilliland v. Chase Home Fin., LLC*, No. 2:13-cv-02042 JAM-AC, 2014 WL 325318, at *6 (E.D. Cal. Jan. 29, 2014) (same); *see also Tabletop Media, LLC v. Citizen Systems of Am. Corp.*, No. CV16-7140 PSG (ASx), 2017 WL 3081690, at *4 (C.D. Cal. June 16, 2017) (same). Rovai cannot plausibly satisfy this standard. Rovai alleges that SPS's "method of calculating mortgage interest . . . *assumes* that the entire loan balance constitutes principal and *fails to recognize* that interest that was previously deferred does not lose its character as interest[.]" (FAC ¶ 14 (emphasis added).) SPS's alleged "assumption," however, is consistent with the terms of Rovai's Note. Although the IRS may very well adopt Rovai's position on Section 6050H reporting at a later point and even if this Court considers Rovai's position to be reasonable, this cannot show SPS's knowledge of falsity at the time it issued the 2011 and 2012 Forms 1098.

Rovai's allegations regarding SPS's intent to defraud fare no better. "Intent to defraud is defined as the intent to induce reliance on a knowing misrepresentation or omission." *Moss v. Kroner*, 129 Cal. Rptr. 3d 220, 226 (Cal. Ct. App. 2011). "[M]ere conclusory allegations" that representations or omissions "were intentional and for the purpose of defrauding and deceiving plaintiffs . . . are insufficient." *Linear Tech.*

*Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 234 (Cal. Ct. App. 2007); *see also see also Sukonik v. Wright Med. Tech., Inc.*, No. CV 14-08278 BRO (MRWx), 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) ("[A]llegations of intent must still meet Rule 8(a)'s plausibility standard under *Twombly* and *Iqbal*."). Rovai alleges that SPS "knowingly started to purchase Option Arm Mortgages that had a separately reportable income component to the seller (*i.e.* unpaid deferred interest) . . . with the intent to convert it into an asset note" so there was "no separately reportable income component." (FAC ¶ 22.) In Rovai's view, "[t]hrough its purchase SPS[] effectively transformed interest to principal without notice to borrowers[.]" (*Id.* ¶ 23.) However, whatever SPS's alleged motive was for purchasing a portfolio of Option ARM loans, Rovai's allegations do not plausibly show an intent to defraud with respect to SPS's Section 6050H reporting. Rovai's Note, which SPS did not create, treats deferred interest as principal and did so before SPS ever began to service Rovai's loan. As the Court has discussed, Rovai's Note also gave her clear and repeated notice that deferred interest would be treated as principal under the contract. Given these facts, Rovai cannot plausibly allege that SPS intended to defraud her. Accordingly, the Court dismisses Rovai's fraud claim with prejudice.

### D.    The UCL Claim is Subject to Partial Dismissal

Rovai asserts a claim against SPS under California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability" and "an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999). Both parties argue extensively of the sufficiency of Rovai's UCL under all of these prongs. (ECF No. 54 at 25–27; ECF No. 66 at 16–19.)[12] The Court concludes

---

[12] Unlike Nationstar in the *Pemberton* case, SPS did not raise a UCL abstention

that while Rovai has failed to state a claim under the fraudulent and unlawful prongs and cannot plausibly do so, she has stated a claim under the unfair prong.

### 1. The Fraudulent Prong Claim Is Dismissed

"A business practice is fraudulent under the UCL if members of the public are likely to be deceived." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citation omitted). The fraudulent prong thus requires a plaintiff to "show deception to some members of the public, or harm to the public interest," or to allege that "members of the public are likely to be deceived," by the defendants' conduct. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001); *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439 (Cal. Ct. App. 2000). A fraudulent prong claim must also satisfy Rule 9(b)'s heightened pleading standard by stating with particularity the circumstances constituting the allegedly fraudulent practice, including the who, what, when, where, and how of the misconduct charged. *Ebeid ex rel. United States*, 616 F.3d at 998; *Kearns*, 567 F.3d at 1125.

Rovai defends her fraudulent prong claim by arguing that SPS issued "incorrect mortgage interest statements" to borrowers. (ECF No. 54 at 27.) This defense is premised on the notion that SPS's reported interest amounts were false because they did not account for deferred interest payments. The Court has already rejected as implausible Rovai's allegations that such interest amounts were misrepresentations when made in its analysis of Rovai's common law fraud claim. Although a fraudulent prong claim "is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of a tort," "courts have been unwilling to impose liability under the fraudulent prong of the UCL" when "a defendant lacked knowledge of the facts that rendered its representations misleading at the time it made the

_____

challenge to Rovai's claims. The Court therefore does not address that issue here. Even if SPS had raised such an argument now, the Court would reject it for the reasons set forth in its *Pemberton* order. *See Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1024-BAS-WVG, ECF No. 70 (S.D. Cal. June 26, 2018).

representations." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159–60, 1161 (N.D. Cal. 2011); *see also Neu v. Terminix Int'l, Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3–4 (N.D. Cal. July 24, 2008) (finding UCL fraudulent prong claim implausible when studies relied on by plaintiff to show falsity of representations were published after the defendant's statements at issue in case). For the reasons set forth in the Court's analysis of Rovai's fraud claim, the Court concludes that Rovai cannot plausibly allege that SPS made a false representation to her when it issued her 2011 and 2012 Forms 1098 and dismisses with prejudice Rovai's UCL fraudulent prong claim.

### 2.     The Unlawful Prong Claim is Dismissed

The FAC alleges that SPS violated the terms of Section 6050H by failing to include on its Forms 1098 mortgage interest payments Rovai made. (FAC ¶ 60.) Rovai in turn argues that she has stated a UCL claim under the unlawful prong because SPS violated Section 6050H by not reporting deferred interest payments, as shown by her construction of Section 6050H. (ECF No. 54 at 25.) SPS contends that that "there is no IRS law, rule, regulation, or guidance—either in 2011 or today— requiring SPS to apply and report the Disputed Payments as Rovai urges" and "neither Section 6050H(a)(2), [nor] its implementing regulation . . ., required SPS to report the Disputed Payments on Form 1098." (ECF No. 66 at 10; *see also id.* at 16–17.) SPS therefore argues that Rovai has failed to satisfy the "unlawful" aspect of an unlawful prong claim because it did not violate Section 6050H. (*Id.* at 16–17.)

Violations of other laws are treated as "unlawful" business practices that are independently actionable under the UCL. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *see also Cel-Tech Commc'ns, Inc.*, 973 P.2d at 539–40 (same). A practice may be actionable under the unlawful prong if it violates any law "civil or criminal, statutory or judicially made, federal, state or local." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 242 (Cal. Ct. App. 2006). "[A] UCL claim under the unlawful prong is dependent on an underlying offense."

*Robinson v. Hunger Free Am., Inc.*, No. 1:18-cv-00042-LJO-BAM, 2018 WL 2563809, at *4 (E.D. Cal. June 4, 2018). An unlawful prong claim is not plausible when it is premised on conduct that does not violate the borrowed law. *See Webb v. Smart Documents Solutions*, *LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) (noting that defendant's conduct "must violate a law . . . in order for [p]laintiffs to state a claim for relief under Section 17200's 'unlawful' prong"); *Garon v. eBay, Inc.*, No. C 10-05737 JW, 2011 WL 6329089, at *6 (N.D. Cal. Nov. 30, 2011) ("[W]here the conduct alleged by a plaintiff does not violate any law, the plaintiff has not stated a claim for relief under the unlawful prong of the UCL."); *Ingels v. Westwood One Broad. Servs., Inc.*, 28 Cal. Rptr. 3d 933 (Cal. Ct. App. 2005) ("[a] defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law").

The basis of Rovai's unlawful prong claim is that Section 6050H requires SPS to report deferred interest payments, which SPS failed to satisfy when it issued Rovai's 2011 and 2012 Forms 1098. (FAC ¶ 60.) As discussed, a plain reading of Section 6050H does not address whether, when, or how to report deferred interest payments, nor do Section 6050H's implementing regulations provide guidance on these issues. *See Strugala*, 2015 WL 5186493, at *4; *Rovai*, 2015 WL 3613748, at *3; *see also Horn v. Bank of Am., N.A.*, No. 3:12 cv-1718-GPC-BLM, 2014 WL 1455917, at *3 (S.D. Cal. Apr. 14, 2014). ("The IRS has never taken a formal position in any published regulation (or even in a private letter ruling) that [the loan servicer's] method of calculating interest was wrong."). The Court is not persuaded that Rovai has alleged factual allegations which plausibly satisfy the unlawful prong's requirement that the defendant's conduct "must violate" a borrowed statute or "be forbidden by law." *See Webb*, 499 F.3d at 1082; *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1053 (C.D. Cal. 2014). If Rovai had contended that SPS failed to report interest that it is undoubtedly required to report, such as accrued monthly interest Rovai paid, the Court would sustain this claim. But this has never been

Rovai's assertion. Nor does Rovai point this Court to any other concrete law to sustain her unlawful prong claim. (*See* ECF No. 54 at 25–26 (discussing alleged violation of Section 6050H.)) Accordingly, the Court dismisses Rovai's UCL unlawful prong claim.

### 3. The Unfair Prong Claim is Plausible

The UCL does not define the term "unfair" and the proper definition of what qualifies as "unfair" conduct against consumers is currently in flux among California courts. *Davis v. HSBC Bank*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citation omitted). Despite this flux, California courts have used two tests for consumer claims of unfair conduct: the "public policy" test and the "balancing test."[13] *Id.* Federal courts apply both tests to assess the sufficiency of an unfair prong claim. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). The Court finds that the FAC plausibly alleges an unfair prong claim under both tests.

### a. The Public Policy Test and Section 163

Under the public policy test, a plaintiff must show that the defendant's alleged practice violates some public policy. *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 813 (N.D. Cal 2011). This test requires that the claim "be tethered to some specific constitutional, statutory, or regulatory provisions." *McVicar*, 1 F. Supp. 3d at 1054 (citing *Scripps Clinic v. Superior Court*, 134 Cal. Rptr. 2d 101 (Cal. Ct. App. 2003) and *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389 (Cal. Ct. App. 2002) (internal quotation marks omitted)). By doing so, some courts have suggested that

---

[13] A third test used to assess UCL unfairness prong claims "borrows from [S]ection 5 of the Federal Trade Commission Act, finding 'unfair' business practices where (1) the consumer injury is substantial, (2) any countervailing benefits to consumers or competition do not outweigh the injury, and (3) the consumers could not reasonably avoid the injury." *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014) (citations omitted). The Ninth Circuit has rejected this test in consumer cases, finding that the test applies to anti-competitive conduct. *See Lozano v. AT&T Wireless Servs Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). Accordingly, the Court does not apply it to Rovai's unfair prong claim.

– 32 –

the public policy test potentially "collaps[es] the 'unfair' prong' into the 'unlawful' prong." *McVicar*, 1 F. Supp. 3d at 1054. This Court sees no such issue because a business practice may be "unfair . . . in violation of the UCL *even if the practice does not violate any law*."[14]  *Olszewski v. Scripps Health*, 69 P.3d 927 (Cal. 2003) (emphasis added); *see also Korea Supply Co. v. Lockheed Martin Corp*., 63 P.3d 937 (Cal. 2003) ("[U]nder section 17200, a practice may be deemed unfair even if not specifically proscribed by some other law." (internal quotations and citation omitted)). This means that a plaintiff may be able to plausibly plead that a practice which does not facially violate a law nevertheless "offends an established public policy." *Smith v. State Farm Mut. Automobile Ins. Co*., 113 Cal. Rptr. 2d 399, 415 (Cal. Ct. App. 2001); *see also In re Adobe Sys. Privacy Litig*., 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) ("Plaintiffs do not need to plead any direct violations of a statute to bring a claim under the UCL's unfair prong. Instead, Plaintiffs need merely to show that the effects of [a defendant's] conduct 'are comparable to or the same as a violation of the law, or otherwise significantly threaten[] or harm[] competition.'" (quoting *Cel-Tech*, 973 P.2d at 544)).

Rovai's allegations are sufficient to state an unfair prong claim under the public policy test. Rovai alleges that as a result of SPS's conduct, "Plaintiff has not been able to correctly her taxes or obtain the full mortgage interest deduction she is entitled to under 26 U.S.C. [§] 163(a)." (FAC ¶ 26.) Section 163 permits taxpayers to deduct

---

[14] Of course, in practice, courts may effectively collapse the unlawful prong and the unfair prong, as understood by the public policy test, when the violation of a law is shown. *See, e.g., Becerra v. GM LLC*, 241 F. Supp. 3d 1094, 1111 (S.D. Cal. 2017) (finding that "unfair" business practice was "tethered to a legislatively declared policy" because the pleadings "alleg[ed] violations of the TREAD Act and a Federal Safety Standard"); *Backus v. General Mills*, 122 F. Supp. 3d 909, 930 (N.D. Cal. 2015) ("For the same reason that Backus sufficiently alleged that the sale of the baking mixes was 'unlawful' under the UCL . . . he has also sufficiently alleged that their sale violated the Sherman Act's public policy of prohibiting the sale of adulterated food.").

home mortgage interest payments. 26 U.S.C. §§ 163(a), (h). It undeniably represents an established public policy, which Section 6050H reporting facilitates.[15] Rovai also alleges that SPS's failure and refusal to account for deferred interest has directly harmed her by causing her to take smaller tax deductions. (FAC ¶¶ 16, 26–28.) These allegations are sufficient to show that SPS's conduct offends the public policy reflected in Section 163. The Court need not separately analyze whether Section 6050H reflects a public policy, the violation of which would state a claim under the unfair prong.

### b. The Balancing Test Shows the Alleged Harm Outweighs Any Justification or Utility SPS Advances

Under the balancing test, a business practice is "unfair" "when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp*., 85 Cal. Rptr. 2d 301, 316 (Cal Ct. App. 1999); *see also Hodsdon v. Mars, Inc*., 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016). This test requires courts to "examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer," and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis*, 691 F.3d at 1169 (quotations and citation omitted); *McKell*, 49 Cal. Rptr. 3d at 240. The balancing test should not be a particularly difficult test to satisfy at the motion to dismiss stage. *See Ellsworth v. U.S. Bank, N.A*., 908 F. Supp. 2d 1063, 1090 (N.D. Cal. 2012) (finding that plaintiff's

---

[15] One central policy objective attributed to the home mortgage interest deduction is to encourage home ownership. *See* Joint Comm. on Taxation, 100th Cong., General Explanation of the Tax Reform Act of 1986, at 263-64 (1987) ("Encouraging home ownership is an important policy goal, achieved in part by providing a deduction for residential mortgage interest."); S. Rep. No. 99-313, at 804 (1986) (same); H.R. Rep. No. 99-426, at 297 (1985) (same); *see also Fid. Int'l Currency Advisor A Fund, LLC v. United States*, 747 F. Supp. 2d 49, 69 (D. Mass. 2010) ("A taxpayer may buy a house with a mortgage in order to take advantage of the deductibility of mortgage interest.").

allegations "satisf[y] the balancing test given the lenient standard on a motion to dismiss").

Rovai alleges that SPS has failed to report millions of dollars in mortgage interest that it has actually received from consumers with Option ARM loans, caused taxpayers to "unknowingly file erroneous tax returns" and "permanently los[e] valuable tax deductions," and caused Rovai to take a smaller tax deduction in 2013 and file an incorrect tax return. (FAC ¶¶ 2, 12, 16.) She further allege that the IRS rejects attempts by taxpayers to seek a deduction for an interest amount higher than that reported in a Form 1098. (*Id.* ¶¶ 17–18.) Taking these allegations as true, they show that Rovai has suffered substantial harm from SPS's conduct.

SPS, however, contends that its reporting did not harm Rovai because she "could have filed amended returns for refunds" but "[s]he did not." (ECF No. 66 at 28.) This argument is one SPS has made throughout the litigation, pointing the Court to a statement on Forms 1098 that deductible mortgage interest could be different from what is reported. (ECF No. 66 at 6 (referring also to Schedule A to Form 1040 and Publication 936).) Rovai, however, alleges that the IRS rejects attempts by a taxpayer to seek an interest deduction different from the amount the loan servicer provides the IRS. Because the Court must accept as true that allegation at this stage, the Court cannot dismiss the unfair prong claim based on SPS's argument. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013) (noting that "[w]hether this [UCL] claim ultimately prevails in [defendant's] favor is not currently at issue" and that "[t]aking the allegations as a whole and in the light most favorable to Plaintiffs, they have alleged sufficient facts to state a claim under" various unfair tests).

As for the utility of SPS's conduct, the Court presently has no basis to find that SPS's failure to report deferred interest payments has any utility, let alone utility that outweighs the gravity of the alleged harm to Rovai. *See Fraley*, 830 F. Supp. 2d at 813 (reaching the same conclusion in sustaining UCL unfair prong claim under

balancing test). SPS has never argued that reporting deferred interest payments would impose any meaningful burden on it. At oral argument, it was suggested that reporting deferred interest may be as simple as establishing a computer program that tracks deferred interest and reporting those numbers to the IRS and individuals like Rovai. Accordingly, the Court cannot find a meritorious defense of SPS's practice at this stage. *See, e.g., Backus v. General Mills*, 122 F. Supp. 3d 909, 930 (N.D. Cal. 2015) (sustaining unfair prong claim when plaintiff alleged harms "that could be avoided in a cost-effective way" and "because [the defendant] has not submitted a meritorious argument regarding the utility of the practice").

As for whether SPS's lack of reporting deferred interest has a justification, SPS asserts two grounds, neither of which is compelling or outweighs the harm Rovai alleges. First, while SPS points to the contract as permitting it to treat deferred interest as principal (ECF No. 66 at 18), no party disputes that the contract does not address SPS's reporting of deferred interest for tax purposes. (FAC ¶ 48; ECF No. 66 at 14 ("[T]he mortgage is silent on tax reporting."); *id.* at 17 ("The FAC identifies no mortgage term allegedly breached by SPS. Plaintiff concedes that her note '[does] not contain any provision specifically governing the [way] the lender would report mortgage interest[.]").) Respecting the distinction between what is interest and principal for contractual purposes as opposed to tax purposes, the Court is not persuaded that the former makes implausible an unfair prong claim premised on the latter. Second, SPS contends that nothing in Section 6050H or its implementing regulations requires reporting of deferred interest. However, this contention carries little weight for the Court because SPS does not argue that deferred home mortgage interest is not deductible as a general matter or in Rovai's case, or that SPS is prohibited from reporting deferred interest. Accordingly, the Court finds that Rovai has stated an unfair prong claim based on the balancing test.

### E. The Negligence Claim is Plausibly Pleaded

Rovai alleges a negligence claim against SPS in the alternative to her fraud

– 36 –

claim. (FAC ¶ 84 ("Assuming that SPS[] did not intentionally report incorrect amounts of mortgage interest on the Forms 1098 that it sent to Plaintiffs[.]").) She alleges that "SPS[] was under a legal duty pursuant to [Section 6050H] to report accurately only the interest SPS[] 'received' during each calendar year" and a further "duty to correct any mistakes on Forms 1098 as soon as possible after determining that a wrong amount had been reported." (*Id*. ¶ 83.) SPS allegedly breached its legal duties to Rovai by its respective failures to accurately report her interest payments in her 2011 and 2012 Forms 1098 and to correct the information reported after Rovai complained. (*Id*. ¶¶ 13–16, 21, 84.) Rovai alleges that she has been damaged by SPS's negligence because of the IRS's policy of rejecting a return claiming an amount of interest that does not match the amount stated on a servicer-issued Form 1098. (*Id*. ¶ 86.)

To state a negligence claim under California law, a plaintiff must allege: (1) a legal duty of care owed by the defendant to her, (2) a breach of that duty, and (3) proximate causation of that breach to (4) the plaintiff's injury. *Merrill v. Navegar, Inc.*, 28 P.3d 116, 123 (Cal. 2001); *see also Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1019 (N.D. Cal. 2017). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against an unintentional invasion." *Paz v. State of California*, 994 P.2d 975, 981 (Cal. 2000). The existence of a duty is a question of law to be resolved by a court on a case-by-case basis. *Id*.; *Alvarez v. BAC Home Loans Servicing, L.P.*, 176 Cal. Rptr. 3d 304, 306 (Cal. Ct. App. 2014); *see also Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1113 (E.D. Cal. 2014) ("The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."). Both parties dispute extensively whether SPS owed any duty to Rovai. Although SPS cursorily argues that there was no breach even if a duty exists (ECF No. 66 at 25), that argument is best addressed on the merits because Rovai's allegations plainly plead a breach. Accordingly, the Court focuses solely on

whether a duty of care exists in this case.

In California, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[16] *Paz*, 994 P.2d at 981. This rule applies to loan servicers as well.[17] *Azzini v. Countrywide Home Loans*, No. 09-cv-787-DMS-CAB, 2009 WL 5218042, at *2 (S.D. Cal. Dec. 29, 2009); *Wong v.*

---

[16] This limit on the imposition of a duty of care on a mortgage provider or loan servicer has particular force in negligence cases involving lending activities, such as offering or modifying a loan. Federal courts have split on whether and when a duty of care may exist in such cases. *See Hernandez v. Select Portfolio Servicing, Inc.*, No. CV 15-01896 MMM (AJWx), 2015 WL 3914741, at *21–22 (C.D. Cal. June 25, 2015) (contrasting cases in which district courts in California have found a duty of care for loan modification under California negligence law with those that have not). But these cases turn on whether there is a *common law* duty regarding these general loan activities. *See Colom v. Wells Home Mortgage, Inc.*, No. C-14-2410 MMC, 2014 WL 5361421, at *3 (N.D. Cal. Oct. 20, 2014) (dismissing loan modification negligence because "[a] lender [does] not have a common law duty of care to offer, consider, or approve a loan modification"). In the cases which find no duty, there is a sound policy reason to do so. *See Casault v. Fannie Mae*, 915 F. Supp. 2d 1113, 1131 (C.D. Cal. 2012) ("[F]inancial institutions would be less likely to assist borrowers with defaulted loans if the financial institution would be held to a higher duty of care for exercising leniency."). This case, however, concerns a *statutory* reporting obligation placed on SPS. There is no suggestion that a duty of care pertaining to that statutory obligation would make SPS less likely to report interest payments, *i.e.* comply with its obligation, or less likely to engage in the underlying lending and servicing activities.

[17] To challenge this general rule, Rovai asserts that California law recognizes that "loan transactions between a mortgage finance company and the borrowers like the plaintiff involve 'more than the provision of a loan; they also include [the] financial services [of managing the loan]." (ECF No. 54 at 23–24 (quoting *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842 (N.D. Cal. 2007)).) Rovai's reliance on *Hernandez* is misplaced as the case considered whether the plaintiffs could maintain a claim under the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1770, *et seq*. The scope of statutory liability under the CLRA is not relevant to whether a duty exists with respect to Section 6050H reporting.

– 38 –

*Am. Servicing Co., Inc*., No. 2:09-CV-01506 FCD/DAD, 2009 WL 5113516, at *6 (E.D. Cal. Dec. 18, 2009). "Lenders and loan servicers in California do not ordinarily owe borrowers or third parties any duties beyond those expressed in the loan agreement." *York v. Bank of Am*., No. 14-cv-02471-RS, 2015 WL 3561723, at *10 (citing *Castaneda v. Saxon Mortg. Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009)). However, "[w]hen considered in full context, the cases show the question is not subject to black-and-white analysis, and not easily decided on the 'general rule.'" *Jolley v. Chase Home Finance, LLC*, 153 Cal. Rptr. 3d 546, 567 (Cal. Ct. App. 2013).

California courts apply a non-exhaustive six-factor test to determine "whether a financial institution owes a duty of care to a borrower-client" even when the financial institution has not exceeded its role as a mere lender. *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 283 Cal. Rptr. 53, 58 (Cal. Ct. App. 1991). A court "balanc[es] various factors, including: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* (applying six-factor test set forth in *Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958), to determine whether financial institution owed a duty of care to borrower).[18]  Federal courts routinely apply the *Biakanja* factors to determine whether a loan servicer owes a duty

_____

[18] Based on a misreading of this Court's decision in *Ruvalcaba*, which involved parties not in privity, SPS contends that the *Biakanja* factors apply "only" when privity is absent. (ECF No. 66 at 23 (citing *Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-CV-00744-BAS(DHB), 2017 WL 2985121 (S.D. Cal. July 13, 2017)).) The *Biakanja* factors, however, apply even when the parties are in privity. *See Nymark*, 283 Cal. Rptr. at 58 (applying *Biakanja* factors to borrower-client relationship); *see also Kemp v. Wells Fargo Bank, N.A*., No. 17-cv-01259-MEJ, 2017 WL 4805567, at *6 (N.D. Cal. Oct. 25, 2017) ("[C]ourts still apply the *Biakanja* factors to determine whether a financial institution owes a duty of care to a borrower-client, *even where the parties are in privity*." (emphasis added) (citing cases)).

– 39 –

to a particular borrower plaintiff under the facts alleged. *See*, *e.g., Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1173–74 (E.D. Cal. 2016); *Gilmore v. Wells Fargo Bank, N.A.*, 75 F. Supp. 3d 1255, 1266 (N.D. Cal. 2014); *Rockridge Trust v. Wells Fargo Bank, N.A,* 985 F. Supp. 2d 1110, 1160–61 (N.D. Cal. 2013).

To assess whether a duty exists, a court must first "identify[] the specific conduct by [the defendant] which [the plaintiff] claims was negligent so to limit our analysis 'the specific action the plaintiff claims the particular [defendant] had a duty to undertake in the particular case.'" *Jolley*, 153 Cal. Rptr. 3d at 568 (quoting *Vasquez v. Residential Investments, Inc*., 12 Cal. Rptr. 3d 846 (Cal. Ct. App. 2004)). The allegations show that SPS allegedly failed (1) to accurately report the interest it received from Rovai during the calendar year in accordance with Section 6050H and, relatedly, (2) to correct any mistakes on the Form 1098 it provided "as soon as possible after determining that a wrong amount had been reported." (FAC ¶¶ 83–84.) The Court addresses both issues.

### 1.    Alleged Duty of Care in Reporting

Rovai argues that a duty exists because Section 6050H requires an interest recipient to report interest payment information to the interest payor, as opposed to just the IRS. (ECF No. 54 at 22.) She further argues that the *Biakanja* factors support a duty because: (1) the transaction, *i.e*., provision of a Form 1098 and calculation of the amounts reported therein, was intended to affect her, (2) she has no input whatsoever in how SPS reports interest in a Form 1098, (3) borrowers, tax preparers and the IRS all rely on the Forms 1098, (4) there is a "dollar for dollar" connection between the amount of misreported interest and her injury, (5) SPS has moral blame as a "sophisticated financial institution whose very business it is to correctly service loans," and (6) the policy of preventing future harm favors her because SPS can prevent the harm to Rovai by simply changing its reporting policy. (*Id*. at 24–25.) For its part, SPS argues that "Plaintiff's *Biakanja* argument fails upon examination of the first factor: Section 6050H is not 'intended to affect the plaintiff.'" (ECF No. 66

at 24.)  SPS makes no meaningful argument regarding the remaining *Biakanja* factors, but instead asserts that the lack of a federal right of action under Section 6050H forecloses Rovai's negligence claim.  (*Id*. at 25.)

After completion of the parties' briefing in this case, one district court dismissed with prejudice a negligence claim concerning Section 6050H reporting. Applying the *Biakanja* factors, the court determined that the defendant bank's issuance of a Form 1098 is "for its own benefit, to fulfill its own statutory obligations."  *Neely v. JP Morgan Chase Bank, N.A.*, No. 16-cv-01924, ECF No. 72 at 7 (C.D. Cal. April 10, 2018).  The court then determined that the foreseeability of harm was "remote" because a taxpayer has an "independent duty to keep records of his interest payments" under IRS Revenue Ruling 70-647, which attenuated the relationship between the plaintiff's injury and the alleged misreporting.  *Id.* (citing IRS Rev. Rul. 70-647, 1970-2 C.B. 38, 1970 WL 21200, at *2 (1970).)  The court further reasoned that "placing the burden of accurate reporting on Chase would negate Neely's independent duty."  *Id.*  This Court respectfully departs from this reasoning.

Neither party disputes that Section 6050H imposes a statutory obligation on SPS, as an interest recipient, to report interest payments it receives.  That obligation does not make SPS responsible for Rovai's tax obligations, but it plainly requires SPS to provide "correct information" in its reporting, even accepting that Rovai has her own independent duties in respect of her tax obligations.[19]  While SPS emphasizes

_____

[19] The notion that Revenue Ruling 70-647 creates or recognizes an independent duty for a taxpayer to keep track of loan payment records for tax purposes is not entirely accurate.  The ruling expressly qualified that "[b]ecause the lender's records do not indicate when and how much interest is actually paid by the individual for purposes of deduction under section 163 of the Code," the taxpayer had to keep his own record of the loan.  IRS Rev. Rul. 70-647, 1970-2 C.B. 38, 1970 WL 21200, at *2 (1970).  In this case, however, SPS does keep records that pertain to deduction of the mortgage interest payments so that it can report those payments to the IRS and to Rovai.  Moreover, even accepting that a taxpayer has his or her own duties, the allegation that the IRS rejects claims to an interest deduction higher than the amount

– 41 –

the subsection in Section 6050H which obligates it to report interest payments to the IRS, a different subsection obligates SPS to report interest payments to payers, like Rovai. *Contrast* 26 U.S.C. § 6050H(a) *with id.* § 6050H(d). That obligation is related to, but not the same as SPS's obligation to the IRS—and they are independently subject to statutory penalties for the provision of "incorrect information." 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement"); 26 U.S.C. § 6724(d)(2)(M) (defining "payee statement" to include statements required by "section 6050H(d)"); 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement"); 26 U.S.C. § 6724(d)(1)(B)(v).

More fundamentally, SPS's statutory obligation to Rovai does not foreclose a duty of care in how it discharges that obligation, but rather may properly serve as the basis for a duty.[20] *See J'Aire Corp. v. Gregory*, 598 P.2d 60, 62 (1979) ("A duty of

---

reported in a servicer-provided Form 1098 prevents the Court from concluding that placing a duty on SPS "negates" that of Rovai.

[20] SPS's reliance on *Giacometti v. Aula, LLC*, 114 Cal. Rptr. 3d 724, 729 (Cal. Ct. App. 2010) to argue against a duty is inapposite. That case concerned whether non-client plaintiffs could sue for professional negligence, a claim which California law treats more restrictively to permit only "intended beneficiaries of a transaction [to] recover." *Giacometti*, 114 Cal. Rptr. 3d at 728 (quoting *Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992). The *Giacometti* court dismissed the plaintiffs' professional negligence claims because "in our case the restaurant's intention in hiring the accountants was not to benefit the employees but to fulfill a legal obligation to furnish pay information to the IRS.").

SPS relies on two additional cases to argue that no duty of care can exist with respect to its provision of Forms 1098. Neither case supports this. For one, *Rumfelt* did not find that there was no duty of care regarding W-2 reporting, but rather involved a plaintiff who failed to plead any facts which would show a federal claim. *See Rumfelt v. Jazzie Pools, Inc.*, No. 1:11CV217 JCC TCB, 2011 WL 2144553, at *4 (E.D. Va. May 31, 2011). The court expressly declined to address negligence claims under state law. *Id.* at *8. Second, *Arvin* did not concern whether a duty of care exists, but rather whether a private cause of action existed under federal law for

– 42 –

care *may arise through statute . . .*"); *Greystone Homes, Inc. v. Midtec, Inc.*, 86 Cal. Rptr. 3d 196, 212 (Cal. Ct. App. 2008) ("[a] duty of care may arise through statute . . ."). Indeed, "a statute may impose a duty where none existed at common law." *Sierra-Bay Federal Land Bank Ass'n v. Superior Court*, 277 Cal. Rptr. 753, 761 (Cal. Ct. App. 1991) [hereinafter "*Sierra-Bay*"]. Several courts have determined that a duty of care arises from federal statutory obligations to provide or disclose information— even in the context of home mortgage lenders and servicers. *See Watson v. Bank of Am., N.A.*, No. 16-cv-513-GPC-MDD, 2016 WL 3552061, at *14 (S.D. Cal. June 30, 2016) (concluding that "[p]laintiffs have sufficiently alleged that [defendant], as a loan servicer, had a duty to exercise reasonable care in proceeding and reviewing and responding to [Requests for Information] and [Notice of Error]" required under RESPA); *Boessenecker v. JPMorgan Chase Bank*, No. 13-0491-C-MMC, 2014 WL 107063, at *1–2 (N.D. Cal. Jan. 10, 2014) (permitting negligence claim based on defendant's alleged failure to respond to two Qualified Written Requests ("QWRs") mandated by RESPA); *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1250 (S.D. Cal. 2010) (plaintiff alleged a plausible failure by the defendant to make required disclosures under RESPA and determining that "[defendant] had a duty of care with regard to RESPA disclosures"); *Baldain v. Am. Home Mortg. Servicing, Inc.*, No. CIV. S-09-0931-LKK-GGH, 2010 WL 56143, at *6 (E.D. Cal. Jan. 5, 2010) (a defendant's failure to make disclosures required by Truth in Lending Act "support finding a duty of care as to these disclosures"); *Champlie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009) (concluding that duty of care existed based on lender's failure to make disclosures as required by the Truth in Lending Act). This Court sees no fundamental difference between these cases and

_____

the alleged misreporting there. *Arvin v. Go Go Inv. Club*, No. C 96-3264 FMS, 1996 WL 708589, at *4 (N.D. Cal. Dec. 5, 1996), *aff'd*, 129 F.3d 124 (9th Cir. 1997). The case is inapposite in light of the Court's dismissal of a claim under Section 6050H.

– 43 –

that of Rovai's case because Section 6050H requires an interest recipient to report interest payments to Rovai.

Rovai's allegations otherwise support a duty of care under the *Biakanja* factors. Consistent with the Court's determination that Rovai has standing to pursue her claims, the allegations show that her injury was foreseeable and sufficiently closely connected to SPS's alleged failure to account for deferred interest. *See Rovai v. Select Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, 2017 WL 4700080, at *6–7 (S.D. Cal. Oct. 18, 2017). The Court does not find that SPS's conduct is particularly morally blameworthy insofar as it concerns SPS's initial provision of Forms 1098. However, the allegations show that the injury Rovai alleges—which assumes that the IRS rejects attempts by taxpayers to claim a higher deduction than the amount reported on a Form 1098—could easily be prevented by SPS merely reporting deferred interest. Accordingly, Rovai's allegations are sufficient to show a duty of care at the pleading stage.

## 2. Alleged Duty to Correct Reporting Mistakes

Rovai also alleges that SPS had "a duty to correct any mistakes on Forms 1098 as soon as possible after determining that a wrong amount had been reported." (FAC ¶ 83.) This duty is related to the duty of care concerning SPS's initial Section 6050H reporting, but it separately arises from how SPS allegedly investigated and responded to Rovai's complaint. SPS makes no argument that a duty of care cannot arise from this conduct. (ECF No. 66 at 22–25 (not addressing the issue).)

Rovai alleges that she brought to SPS's attention its alleged failure to report deferred interest payments in her 2011 and 2012 Forms 1098 and requested revised Forms 1098. (FAC ¶ 21.) SPS stated that it would look into the matter. (*Id*.) SPS contacted Rovai by phone to reject her complaint and to inform her that it would not change its Form 1098 reporting. (*Id.*) There is no suggestion that SPS contended that deferred interest is not deductible or that it could not report deferred interest amounts in a Form 1098. Rovai alleges that in fact another mortgage lender, Wells Fargo

– 44 –

Bank, N.A., "credits payments of previously deferred mortgage interest on the Forms 1098[] it issues to its borrowers." (*Id*. ¶ 15, Ex. C.) She also alleges that Bank of America, SPS's predecessor to her loan, also "now properly includes payments of deferred interest on the Forms 1098 it issues." (*Id*. ¶ 15.)

Applying the *Biakanja* factors to these allegations, the Court finds that Rovai has adequately alleged a separate duty. First, SPS's investigation of Rovai's complaint and response was intended to affect her because it was expressly directed to her and impacted whether she could amend her tax returns. *See, e.g., Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1258 (E.D. Cal. 2016) (defendant bank's and loan servicer's efforts to assist plaintiff were intended to affect plaintiff because the result of those efforts would affect plaintiff).

Second, although Rovai expressly told SPS the basis for her complaint, SPS refused to provide her with a revised Form 1098. Due to SPS's refusal, Rovai alleges that she has been unable to correctly state her taxes or seek a higher interest deduction. (FAC ¶ 26.) This alleged conduct shows a high degree of certainty that Rovai suffered harm that was foreseeable and closely connected with SPS's conduct. *See, e.g., Gerbery v. Wells Fargo Bank, N.A.*, No. 13-CV-614-MMA(DHB), 2013 WL 3946065, at *12 (S.D. Cal. July 31, 2013); *see also Powell v. Wells Fargo Home Mortg.*, No. 14-cv-04248-MEJ, 2017 WL 840346, at *9 (N.D. Cal. Mar. 3, 2017) (defendant bank had a duty of care based on plaintiff's allegations that defendant mishandled his loan modification); *Robinson v. Bank of Am.*, No. 12-CV-00494-RMW, 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012) (denying motion to dismiss negligence claim when, *inter alia*, plaintiff alleged that defendant bank engaged in contradictory and somewhat misleading communications with plaintiff). Accordingly, the Court concludes that the second through fourth *Biakanja* factors weigh in favor of a duty.

SPS's moral blame is also greater with respect to Rovai's allegations on this issue given its role. SPS purchased Rovai's loan from a different servicer, services

– 45 –

her loan, undertook an investigation into her complaint, and, based on the allegations, had the discretion regarding whether to change its Form 1098 reporting. *See Gerbery*, 2013 WL 3946065, at *12. Rovai's allegations also show that other mortgage services report deferred interest payments on Forms 1098, which calls into question SPS's refusal to similarly report deferred interest payments. The policy of preventing future harm is particularly compelling. Rovai's allegations show that borrowers who have deferred interest and whose loans SPS services face the risk of future harm, even when they expressly inform SPS regarding its lack of reporting deferred interest. At oral argument, it became clear that some loan servicers and banks do in fact report deferred interest, even in the absence of clear guidance from the IRS about whether and when to do so. In this context, Rovai's allegations counsel that the policy of preventing future harm points toward a duty. Accordingly, the Court finds that the *Biakanja* factors support finding a duty of care on this conduct.

**F.    The Request for Declaratory Relief is Subject to Dismissal**

Rovai's fourth cause of action is for a declaratory judgment to "resolve the issue as to whether SPS is correctly reporting Class Members' mortgage interest payments on Form[s] 1098[] and whether SPS should be required to provide corrected [Forms 1098] to the Class Members for all years in which its policies did not conform to law." (FAC ¶ 67.) SPS contends that the Declaratory Judgment Act and the Anti-Injunction Act bar Rovai's claim for declaratory relief. (ECF No. 66 at 8–9.) The Court agrees that the claim must be dismissed to the extent it seeks a declaration regarding the lawfulness of SPS's Form 1098 reporting under Section 6050H and its implementing regulations.

The Declaratory Judgment Act provides that declaratory relief is not available in a case within a court's jurisdiction "*with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986 . . ." 28 U.S.C. § 2201(a) (emphasis added). The Anti-Injunction Act in turns provides that subject to certain exceptions, "no suit for the purpose of restraining the assessment or collection

– 46 –

of any tax shall be maintained in any court by an person . . ."  26 U.S.C. § 7421(a).

"The purpose of the federal tax exception to the Declaratory Judgment Act is to protect the government's ability to assess and collect taxes free from pre-enforcement judicial interference, and to require that disputes be resolved in a suit for refund."  *California v. Regan*, 641 F.2d 721, 722 (9th Cir. 1981).  "The federal tax exception of [the Declaratory Judgment Act] is 'at least as broad as the Anti-Injunction Act.'"  *Id.* (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974)); *Daines v. Alcatel, S.A.*, 105 F. Supp. 2d 1153, 1158 (E.D. Wash. 2000) ("[A]lthough the Declaratory Judgment Act exception would appear to prohibit a wider range of court action than the Anti-Injunction Act, the Declaratory Judgment Act is read to be coextensive with the Anti-Injunction Act . . . . [T]ogether, [they] prohibit only injunctive relief which would restrain the assessment or collection of federal taxes.").  There are only two exceptions to the Declaratory Judgment Act's bar on declaratory relief: (1) when the government could under no circumstances ultimately prevail and where the prerequisites for equity jurisdiction are met and (2) an aggrieved party has no access at all to judicial review.  *Id.* at 723 (citing, *inter alia*, *Bob Jones Univ.*, 416 U.S. at 742, 746).

The Court acknowledges that unlike the plaintiffs in *Regan* and *Daines*, Rovai does not seek to exempt SPS from filing a Form 1098, nor to withdraw forms already provided to the IRS, but rather she focuses on the accuracy of information reported in the forms.  *See Regan*, 641 F.2d at 722 (the State of California sought declaratory and injunctive relief from the requirement that it file an annual information return with the IRS pursuant to ERISA provision governing employee pension benefit plans); *Daines*, 105 F. Supp. 2d at 1154 (plaintiff sought a declaratory judgment that defendants should not have issued certain Form 1099s and an order directing defendants to rescind the forms).

Yet the possibility that the issuance of a declaratory judgment that SPS's Form 1098 reporting was and is wrongful under Section 6050H, as a matter of law, may

have some impact on the IRS's discretion regarding what an interest recipient must report to comply with Section 6050H and the IRS's implementing regulations. Rovai does not assert that any exception to the Declaratory Judgment Act's prohibitions applies. The possibility of interference thus counsels that the relief Rovai seeks is inappropriate under the Declaratory Judgment Act. *See Daines*, 105 F. Supp. 2d at 1154; *see also Neely v. JP Morgan Chase Bank*, N.A., No. 16-cv-01924, ECF No. 72 at 7–8 (C.D. Cal. April 10, 2018). The Court concludes that, as pleaded, the declaratory relief Rovai seeks turns on a controversy "with respect to federal taxes within the meaning of the Declaratory Judgment Act." *Regan*, 641 F.2d at 722; *see also Neely v. JP Morgan Chase Bank*, N.A., No. 16-cv-01924, ECF No. 72 at 7–8 (C.D. Cal. April 10, 2018) (dismissing claim for declaratory relief under the Declaratory Judgment Act with respect to relief similar to what Rovai requests). Accordingly, the Court dismisses Rovai's claim for declaratory relief with prejudice insofar as it concerns (1) a declaration that SPS's Form 1098 reporting is wrongful under Section 6050H and relatedly (2) an order requiring SPS to issue revised Forms 1098 that account for deferred interest as part of interest paid in order to comply with Section 6050H.

The Court, however, does not find that the Declaratory Judgment Act or the Anti-Injunction Act otherwise preclude any declaratory or injunctive relief the Court could order in this case.[21] As the Court has previously explained, while this case

[21] Moreover, the Declaratory Judgment Act and the Anti-Injunction Act, which concern the power of a federal court to order certain relief, do not appear to limit what SPS can *voluntarily* agree to as a private party. For example, SPS could voluntarily agree to report deferred interest payments in the Forms 1098 it provides to the IRS and individuals like Rovai. In fact, one district court approved a settlement agreement in which a defendant bank "agreed to issue amended Forms 1098 to individuals for tax years 2010–2013" and "to report deferred-interest payments on Forms 1098 going forward." *Horn v. Bank of Am., N.A.*, No. 3:12 cv-1718-GPC-BLM, 2014 WL 1455917, at *4 (S.D. Cal. Apr. 14, 2014). There has been no suggestion that the IRS rejected these forms or that the inclusion of deferred interest payments was unlawful.

– 48 –

undoubtedly is informed by the federal tax scheme, "Rovai is suing SPS for its completely separate actions and omissions, which resulted in negative tax consequences." *Rovai*, 2017 WL 4700080, at *8 (citation and internal quotation omitted). Declaratory relief which focuses on SPS's conduct and does not interfere with the IRS's tax determinations could properly proceed.

For example, this Court could declare SPS's investigation of Rovai's complaint regarding deferred interest payments and subsequent refusal to provide supplemental information to have been negligent. Relatedly, the Court could properly order SPS to provide Rovai and similar individuals with supplemental information regarding deferred interest payments. The Court could also properly order SPS to provide information to the IRS regarding deferred interest, identified *separately* from the payments that no one doubts must be reported on a Form 1098 to satisfy Section 6050H and its implementing regulations. The provision of supplemental information on deferred interest would not mandate that such payments must be treated as deductible by the IRS, but it would provide information of which the IRS could take notice to make its own determinations—particularly as it decides how to treat deferred interest payments for the purposes of the home mortgage interest deduction.[22] The FAC, however, does not request these forms of declaratory relief. Because Rovai may be able to seek other forms of declaratory relief, the Court grants her leave to amend to clarify the declaratory relief she seeks.

### G. The Injunctive Relief Claim Is Improper

Lastly, SPS argues that Rovai's fifth cause of action, entitled "preliminary and permanent injunction," should be dismissed because injunctive relief is not a separate

---

[22] There is an anecdotal basis to believe that the IRS treats deferred interest payments on a home mortgage loan to be deductible in certain circumstances. *See, e.g., Strugala*, 2017 WL 3838439, at *2 (observing that IRS provided refund to a taxpayer who amended her tax return to report a higher amount of deferred interest paid to defendant bank).

– 49 –

cause of action.  (ECF No. 66 at 20.)  The Court agrees.  "Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action."  *Cox Commc'ns. PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1282 (S.D. Cal. 2002) (citing Black's Law Dictionary 201 (1979)); *see also Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1167 (N.D. Cal. 2013) (same); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1205 (S.D. Cal. 2010) (same).  Accordingly, the Court dismisses Rovai's fifth cause of action for injunctive relief.

## IV.  CONCLUSION & ORDER

For the foregoing reasons, the Court **HEREBY ORDERS** that:

1.    The Court **DISMISSES WITH PREJUDICE** Rovai's claims for breach of contract (Count 1); breach of the implied covenant of good faith and fair dealing (Count 2); a UCL claim under the unlawful and fraudulent prongs (Count 3); the declaratory judgment request as pleaded (Count 4); and fraud (Count 6).

2.    The Court **DISMISSES WITHOUT PREJUDICE** Rovai's claim for a preliminary and permanent injunction (Count 5).

3.    The Court **SUSTAINS** Rovai's UCL unfair prong claim (Count 3) and negligence claim (Count 7).

4.    Rovai is **GRANTED LEAVE TO AMEND** the First Amended Complaint consistent with this Order.  Rovai may file a Second Amended Complaint **no later than July 24, 2018**.  Failure to file an amended complaint by this date will result in this case proceeding only as to those claims not dismissed by this Order.  Any amended pleadings should comply with Local Rule 15.1, by providing the Court with a version of the amended pleadings showing how it differs from the previous pleadings.  *See* S.D. Cal. Civ. L.R. 15.1.  All claims dismissed by this Order and previously dismissed claims must **not** be asserted in the Second Amended Complaint.

**IT IS SO ORDERED.**

**DATED:  June 27, 2018**

Hon. Cynthia Bashant
United States District Judge

14cv1738