David J. Vendler
LAW OFFICES OF DAVID J. VENDLER
2700 South Oak Knoll Ave.
San Marino, CA 91108
Tel: (213) 700-5194
Email: djvlegal@gmail.com

Michael R. Brown
MICHAEL R. BROWN APC
2030 Main Street Suite 550
Irvine, CA 92614
Tel: (949) 435-3888
Email: mbrown@mrbapclaw.com

Attorneys for Plaintiff and Others Similarly Situated

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA ROVAI,<br> individually, and on behalf of the class of all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>SELECT PORTFOLIO SERVICING, INC.<br><br>            Defendant. | Case No.: 14-CV-1738-BAS-MSB<br><br>[Assigned to Hon. Cynthia A. Bashant]<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTED SECOND AMENDED COMPLAINT**<br><br>*[Filed concurrently w/ Declaration of David J. Vendler]*<br><br>Hearing Date: January 28, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

**TO DEFENDANT AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 28, 2019, or as soon thereafter as the court may take up the motion, Plaintiff Adriana Rovai will, and hereby does, bring the within motion before the Hon. Cynthia Bashant, pursuant to Federal Rule of Civil Procedure 15(d) seeking leave to file a supplemented second amended complaint adding allegations and causes of action arising from facts that took place after the original complaint in this case was filed and which were just recently discovered by plaintiff. This motion is based on this notice, the attached memorandum of points and authorities, the attached proposed supplemented second amended complaint,[1] all pleadings and papers filed in this action, and such oral argument and evidence as may be presented at a hearing on the motion. This motion is made following meet and confer conferences of counsel, the most recent of which took place in person on December 12, 2018.

Date: December 24, 2018          MICHAEL R. BROWN, APC


                                By: _____/s/*Michael R. Brown*_____
                                         Michael R. Brown

Dated: December 24, 2018         LAW OFFICE OF DAVID J. VENDLER


                                By: _____*/s/ David J. Vendler*_____
                                         David J. Vendler

                                Attorneys for Plaintiff Adriana Rovai
                                and all others similarly situated

---

[1] For the Court's convenience, a proposed supplemented second amended complaint identifying the new allegations in is attached as Exhibit 1 to the accompanying declaration of David J. Vendler ("Vendler dec."). The proposed supplemental complaint (without track changes) is attached as Exhibit 2 to the Vendler declaration.

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................1

II. ARGUMENT ............................................................................3

    A. Supplementation under Fed. R. Civ. Proc. Rule 15(d) is Liberally Granted To Set Forth Post-Complaint Facts And New Legal Theories Arising Therefrom..............................................................................3

III. FACTS SUPPORTING PLAINTIFF'S SUPPLEMENTAL PLEADING.............5

IV. BASED ON THESE NEW FACTS, PLAINTIFF SEEKS TO ALLEGE NEW THEORIES OF LIABILITY IN HER SUPPLEMENTAL COMPLAINT ..................11

    A. Plaintiff Seeks To Plead A New Claim Of Breach Of Her Mortgage Contract Based On The Admissions Of SPS ...............................11

    B. Plaintiff Seeks To Include A New Claim For Breach Of The Covenant Of Good Faith And Fair Dealing ....................................................14

    C. Plaintiff Seeks To Plead A New Third Party Beneficiary Claim Of Breach Of The BANA/SPS Loan Servicing Contract............................................16

    D. Plaintiff Seeks To Plead A Fraud Claim Based on SPS' 2016 Misrepresentations and Concealments.........................................17

V. CONCLUSION ........................................................................17

# **TABLE OF AUTHORITIES**

**Cases**

*Burnet v. Sanford & Brooks Co.*, 282 U.S. 359 (1931) ....................................................10

*CIR v. Laguna Land & Water Co.*, 118 F.2d 112 (9th Cir. 1941) ....................................10

*Estate of Paul M. Bowen v. Comm'r.,* 2 T.C. 1 (1943) .....................................................9

*Griffin v. County School Board of Prince Edward County*,
    377 U.S. 218 (1964) ...................................................................................................3

*In re Raney*, 132 B.R. 63, 66 (Bkrtcy.D.Wyo. 1991) ......................................................10

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988) ........................................................3, 4, 17

*LaSalvia v. United Dairymen of Arizona*,
    804 F.2d 1113 (9th Cir. 1986) ..................................................................................4

*Mason v. U.S.*, 453 F.Supp. 845 (N.D. Cal.1978) ............................................................9

*Motel Corp. v. Commissioner*, 54 T.C. 1433 (1970) ........................................................9

*New Amsterdam Casualty Co. v. Waller*,
    323 F.2d 20 (4th Cir. 1963) ................................................................................3, 17

*Pemberton v. Nationstar Mortgage, LLC*
    14-cv-1738 (2014 USDC-SDCA).........................................................................2, 7

*Reinhardt v. General Motors* (2012) 879 F. Supp. 2d 1138.........................................15

*Spray, Gould & Bowers v. Associated Internat. Ins. Co.*,
    71 Cal.App.4th 1260 (1999) ...................................................................................14

*Story v. Livingston*, 38 U.S. (13 Pet.) 359 (1839).............................................................9

*Tucson Herpetological Society v. Kempthorne*,
    2006 WL 2788643 (D. Ariz. 2006)...........................................................................4

**Statutes**

26 U.S.C. section 6050H ....................................................................................5, 8, 10, 13

**Treatises**

6A Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 1504 (3d ed. 2015)...........................................3, 17

## Regulations

26 C.F.R. section 301.6724-1(d)(2)(D) ............................................................. 8, 14

Fed. R. Civ. Proc. Rule 15(d) ......................................................................... 3, 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff filed her original complaint against defendant Select Portfolio Servicing, Inc. ("SPS") on July 24, 2014. The case was stayed pursuant to the primary jurisdiction doctrine until mid-2018. Discovery opened in September 2018. In December 2018, plaintiff learned that in 2016, unbeknownst to Plaintiff, its counsel or this Court, SPS unilaterally and suddenly decided to begin crediting its borrowers' monthly payments in that year to retiring their capitalized interest balances until each class member borrowers' capitalized interest balance reached zero. As part of this plan, SPS has been allocating monthly payments to current interest and capitalized interest, on a first dollar basis, prior to allocating funds to retiring any portion of the original principal. It has then been reporting the "aggregate" amount of interest, i.e. the combined monthly interest and the credited capitalized interest on its borrowers' Forms 1098. The first reporting of payment of capitalized interest occurred on Forms 1098 prepared in 2017 for tax year 2016. SPS falsely reported these capitalized interest credits as having been received by SPS in tax years 2016 forward. SPS never told its borrowers about its sudden epiphany to start reporting their capitalized interest prospectively beginning in 2016, never sought this Court's input, and never sought or received permission from the IRS to implement its prospective-only reporting policy. Instead, just like in the Nike commercial, SPS "just did it."

While SPS's recognition that plaintiff's and class members' capitalized mortgage interest payments are part of the "aggregate" interest that must be reported on Forms 1098 is unquestionably a huge victory for the plaintiff and the class – indeed it achieves the main goal plaintiff had when she filed this suit – SPS's unilateral determination to start reporting previously paid capitalized interest *prospectively* in tax years 2016 forward, as opposed to looking retrospectively to when the interest was actually paid according to well established principals of tax law, raises several new issues that were not included in plaintiff's original complaint and/or were not known about when

plaintiff filed her Second Amended Complaint. These are at the heart of the plaintiff's proposed supplemented second amended complaint.

The Court is reminded of SPS' counsel argument to the Court during the hearing on SPS' Motion to Dismiss which was hardly forthright. There, SPS argued that it would be "difficult" for SPS to comply with plaintiff's demand that such interest be reported and that there was "no basis in law to require that":

> MS. GRAY: So let me talk about that for a second because there's -- I mean the remedies are a very difficult issue here because, you know, you would have to order the defendant to separately track those amounts in separate buckets, to apply every payment, every amount in excess of monthly interest, to the capitalized portion, which there's no basis in law to require that, to issue an injunction requiring us to do that, and then to take those amounts, even though we're charging interest on that, and also report them as interest. (Transcript, MTD. Due to the Joint Hearing in *Rovai* and *Pemberton*, the hearing transcript was filed filed the court reporter in *Pemberton,* 14-cv-1024 at ECF # 93. The quote above is at *Pemberton, ECF #93* at page 9, lines 15-24).

As will be demonstrated below and as alleged in the supplemented amended complaint, the truth is defendant SPS' policy, in effect in 2011 and through the present date, **was in fact "to separately track those amounts in separate buckets, to apply every payment, every amount in excess of monthly interest, to the capitalized portion…"** And, in 2017, while arguing this "very difficult" remedy, SPS failed to tell the Court, or counsel, that it had done exactly what it told this Court it could not do and had been doing exactly for its other borrowers precisely what plaintiff was contending SPS should have done for her. And more importantly, SPS did not "change" a policy to start placing capitalized interest in "buckets" and report it on Forms 1098. **That was always its policy.** In 2016 what it did was to finally determine if there was capitalized interest on the loans from BANA, including Plaintiff's, and then incorporate the capitalized interest into its already existing computerized allocation system. The buckets were there waiting for the information from 2011. SPS just failed to "populate" the existing field.

## II.  ARGUMENT

### A.  Supplementation under Fed. R. Civ. Proc. Rule 15(d) is Liberally Granted To Set Forth Post-Complaint Facts And New Legal Theories Arising Therefrom.

Under Fed. R. Civ. Proc. Rule 15(d), "[T]he court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  While an amendment "relates to matters that occurred prior to the filing of the original pleading," a supplemental complaint "deal[s] with events subsequent to the pleading to be altered." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1504 (3d ed. 2015).

Rule 15(d) is a "device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted."  *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (quoting *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20–28 (4th Cir. 1963), cert. denied, 376 U.S. 963 (1964)).  "Its use is therefore favored."  *Keith*, 858 F.2d at 473.

"An application for leave to file a supplemental pleading is addressed to the discretion of the court and should be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action."  Wright & Miller, *supra*, § 1504.

A supplemental pleading under Rule 15(d) does not require a strict transactional relationship between the facts and law in the original complaint and the supplemental claims.  See *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218 (1964) (allowing supplemental complaint filed 10 years after original action, and after judgment entered); to the contrary, the Supreme Court in *Griffin* specifically permitted the filing of a supplemental complaint that included a "new and different cause of

action from that presented in the original complaint." See 377 U.S. at 226. Likewise, in *Volpe*, the Ninth Circuit held that there must only be "some relationship . . . between the newly alleged matters and the subject of the original action, they need not all arise out of the same transaction." *Volpe*, 858 F.2d at 474. See also *LaSalvia v. United Dairymen of Arizona*, 804 F.2d 1113 (9th Cir. 1986) (reversing denial of motion to supplement complaint); *Tucson Herpetological Society v. Kempthorne*, 2006 WL 2788643 (D. Ariz. 2006) (allowing supplemental pleadings based on "the court's experience with the case").[2]

  As will be shown, Plaintiff's proposed supplemented complaint is exactly the type of pleading that Rule 15(d) contemplates. It sets forth occurrences "that happened after the date of the pleading to be supplemented" and which are closely intertwined with the prior litigation in this case involving the reporting of mortgage interest and damages flowing from the wrongful reporting thereof. The allowance of the supplemented complaint will not prejudice the defendant as it will allow all of the claims against it to proceed under one action. Further, supplementation will not cause undue delay or trial inconvenience. As of the present, there is no scheduling order in place, no discovery cut off and no trial date has been set.[3] Discovery is in its infancy. Thus, none of the grounds that might militate against the granting of a motion to supplement are present here. Rather, all that is present is the liberal standard of Rule 15 favoring such supplementation.

---

[2] It is this Court's history with this case, and the extraordinary time devoted by this Court in preparation of its Order on the Motion to Dismiss, that supports all the reasons why this second amended complaint must be supplemented to put this case in proper order for a judicial resolution.

[3] In its Order denying Plaintiff additional time to supplement the second amended complaint, the Court references the existence of a Scheduling Order. ECF #119, page 2, line 18. There is no Scheduling Order in place. It was vacated by Magistrate Gallo on November 1, 2018. ECF # 110.

## III.  FACTS SUPPORTING PLAINTIFF'S SUPPLEMENTAL PLEADING

On December 12 and 13, 2018, more than four years after plaintiff filed her complaint, but only two months after the opening of discovery, SPS's deposition was taken in Salt Lake City.  The allegations in plaintiff's supplemented second amended complaint have come as a result of that deposition. [4]

First, plaintiff learned that while SPS did not report any of plaintiff's capitalized mortgage interest when it took over plaintiff's loan in December 2011, SPS's historical policy for interest reporting has **ALWAYS** been to report capitalized interest on Forms 1098 *exactly in the manner plaintiff has always contended is correct*, i.e. SPS has historically not only separately tracked amounts of capitalized interest that have been "added to principal," but it has always allocated its borrower's monthly payments so that any funds above current monthly interest go to retiring capitalized interest before retiring any of the original principal.[5]  And SPS's regular practice for preparing Forms 1098 has **ALWAYS** been to then "aggregate" together the amounts of regular monthly interest that has been paid by the borrower along with the amounts of capitalized interest that has been paid in that tax year and report that aggregated amount in Box 1 of the borrower's Form 1098.  Notably, SPS never mentioned that its policy was exactly what the plaintiffs were saying should be the case throughout the motion to dismiss proceedings.  Rather, its position before the Court was always that it was not obligated to report payments of capitalized interest.  (See: quoted argument of SPS,

---

[4] Plaintiff had requested additional time to file this motion in order to obtain the deposition transcript of SPS' 30(b)(6) witness which has not yet been transcribed.  The Court denied the motion. Accordingly, the representations contained herein about SPS' deposition testimony are true and correct recollections of the testimony as set forth in the Vendler declaration.

[5] The Court should cast a cold eye now on SPS's multiple protestations in the motion to dismiss proceedings about how plaintiff could never state a claim because capitalization supposedly turns interest *into* principal when SPS's *actual practice* has always been to recognize that the capitalization of mortgage interest does not change its character as mortgage interest for purposes of 26 U.S.C. section 6050H.

*supra).* Presumably, SPS expected to win the motions to dismiss and avoid having to disclose the actual facts about its interest reporting policies.

But, according to SPS in its deposition, the ***only reason*** SPS failed to allocate plaintiff's and other class members' monthly payments according to its normal policy and to then report those payments on its borrowers' Forms 1098 back in 2011 and 2012 was due to the fact that when SPS acquired plaintiffs' and other class members' loans from Bank of America, N.A. ("BANA"), BANA had not segregated the borrowers' capitalized interest balances into a separate field within the computerized data it provided to SPS.  (SPS conceded, however, that it was fully aware of the fact that the portfolio of loans it was acquiring included Option ARM loans with deferred interest balances).

Yet, notwithstanding the fact that the BANA/SPS loan servicing agreement specifically placed the duty of Form 1098 reporting on SPS, and that SPS knew that there were Option ARM loans in the BANA portfolio it was acquiring, SPS never bothered even to try to figure out what the capitalized interest balances were on those loans.  As a result, SPS simply did not report any payments of capitalized interest for those borrowers.  Then it was sued in 2014 by plaintiff.  After having some sort of epiphany in 2016 (while this lawsuit was stayed), SPS suddenly concluded it not only could determine whether the BANA borrowers loan balances, transferred in 2011, included capitalized interest from the information it had received from BANA in 2011, but that it should start reporting that interest prospectively on Forms 1098.  SPS was instructed not to answer what caused the epiphany or who decided to implement it other than it came from "legal counsel."

SPS did testify unequivocally, however, that if BANA had included plaintiff's capitalized interest balance in the computerized information it received as part of acquiring the loan servicing rights under the BANA/SPS agreement, SPS *would have* reported plaintiff's interest payments in exactly the manner plaintiff's lawsuit contends is correct, i.e. that plaintiff's 2011 and 2012 payments would have been be allocated to

retiring her capitalized interest balance prior to retiring any of the original principal and those amounts would have then been reported to plaintiff on her 2011 and 2012 Forms 1098 along with the amounts of current interest she paid. In fact, SPS testified that for all other loans it was servicing where it knew the transferred loan balances included capitalized interest, it had in place a computerized payment allocation program that allocated the excess of monthly payments to a "field" that was specifically designed to contain only the capitalized interest and pay down the capitalized interest on a first dollar basis for all amounts received in excess of the monthly interest payment. It would then take the total of that "field," add it to the amount of monthly interest paid, and then place the "aggregate" amount in Box 1 of Form 1098. In short, SPS **always** has reported capitalized interest as mortgage interest in Box 1 when it was aware of its existence.

Yet, again, SPS argued differently at the Motion to Dismiss hearing:

> So to hold that those amounts are interest, you potentially are exposing the entire industry to a tremendous amount of liability for having charged interest on interest when the whole industry has always treated those amounts as principal. (Transcript, MTD, *Pemberton,* ECF # 93 at page 35, lines 19-23).

In fact, it has now become clear that "the whole industry" does not treat these amounts as "principal." As noted by the Court, plaintiff alleged in her original complaint that Wells Fargo Bank tracked and reported payments of capitalized interest in the correct manner.[6] And it now turns out that not only did SPS track such interest as well, but that so too did Nationstar in the companion case to this one.[7] The only

---

[6] Noted by the Court in its Order on MTD ECF #83, page 44, line 28.

[7] *Pemberton v. Nationstar Mortgage, LLC* 14-cv-1738 (2014 USDC-SDCA). It will come as no surprise to this Court that in discovery, Nationstar also admitted to a policy of reporting capitalized interest pursuant to the terms of the contract/Note and consistent with its obligations under §6050H. In a companion motion for leave to amend, this Court will learn Nationstar also further investigated Pembertons' complaint about their Form 1098, *coincidentally* in 2016. However, Nationstar understood the

reason that both SPS and Nationstar did not report the plaintiffs' interest correctly was that they did not bother to figure out the capitalized interest balances that were not contained in the computerized information BANA provided to them. So, indeed, it seems from the now available evidence that "the whole industry" **does** in fact track and report capitalized interest, and that it was only BANA that did not. [8]

But SPS cannot lay the blame for its failure to properly report plaintiff's interest payments on BANA. Under both the provisions of the BANA/SPS servicing agreement, and under 26 U.S.C. section 6050H, SPS indisputably had the duty to *correctly* report its borrowers' payments of mortgage interest. It also indisputably had the duty under both 26 C.F.R. section 301.6724-1(d)(2)(D) and the IRS's "General Instructions for Certain Information Returns" to promptly correct any Forms 1098 that it realized were issued in error.

Stunningly, however, when SPS finally came to its decision in 2016 to suddenly

---

way to correct the problem was to issue a "corrected" Form 1098 for prior years in which the deferred interest had been paid. Unfortunately for Nationstar, it was both too late and Nationstar **failed** to send the 2016 corrected Form 1098, prepared in 2017, to the Pembertons! (And it also failed to actually correct the forms for other Class Members to the years in which the interest was paid as will be detailed in the motion). But, Nationstar's action, and ultimate deposition testimony, refutes SPS' contention that correcting the Forms 1098 would create a burden and adversely impact the "entire industry".

[8] Also, attached to the supplemented second amended complaint are Forms 1098 received by Rovai for tax years 2010 and a portion of 2011 in which BANA "corrected" the prior Form 1098 and added capitalized interest to the mortgage interest reported in Box 1. (Exhibit H). BANA, on the very same loans transferred to SPS for servicing, was not fearful that "correcting" the previously issued Forms 1098, by including the missing capitalized interest, would "expose" the entire industry to liability. As a matter of fact, the BANA correction came on the heels of a voluntary settlement and agreement to correct the Forms 1098, which, under CAFA, was submitted to the IRS. So, where does SPS come up with this unfounded and argument! And, these BANA Forms 1098 for Rovai's loan, for years 2010 and 2011, were corrected in February 2014. These corrected Forms 1098 were in SPS' file at or about the time Rovai was making inquiry regarding the SPS prepared Forms 1098 for 2011 and 2012 in May 2014.

start reporting capitalized interest to plaintiff and class members, it unilaterally determined that it would not do so by way of providing corrected Forms 1098 that would have brought plaintiff's Forms 1098 within SPS's normal reporting method (and within sound tax law), but that it would instead would "fix" the problem by allocating class members' payments to their capitalized interest balances only prospectively.[9]

But while this "fix" might initially seem facially appealing, since at least the capitalized interest is now being reported and class members are getting deductions, SPS's action is not only contrary to its own historical practices, but it is also contrary to bedrock tax law.[10]

Tax law presumes that in the absence of a specific agreement to the contrary – and there is none here – payments on a note are allocable to retiring interest before retiring principal.[11] *Mason v. U.S.*, 453 F.Supp. 845, 848 (N.D. Cal.1978). This is an old common law rule that has been specifically upheld in both the Supreme Court and Tax Court. See *Story v. Livingston*, 38 U.S. (13 Pet.) 359, 371 (1839) and *Estate of Paul M. Bowen v. Comm'r.,* 2 T.C. 1, 7 (1943). Particularly notable for the purposes of this case, the rule applies to interest that has been capitalized. *Motel Corp. v. Commissioner*, 54 T.C. 1433, 1440 (1970) ("[p]artial payments on a note are generally

---

[9] SPS made no effort to "fix" its failure to report payments of capitalized interest for borrowers whose loans terminated by sale or refinance prior to SPS implementing its "fix" in 2016. It simply left those people by the side of the road.

[10] Plaintiff is prepared to allege that she simply relied on the Forms 1098 that were provided to her in 2016 and 2017 and did not notice that SPS had suddenly started reporting her capitalized interest as having been paid in those years. SPS further testified unequivocally: (1) that SPS never apprised plaintiff (or anyone else) that it was going to start reporting her capitalized interest balance in those years and (2) that there was nothing on the Forms 1098 that it issued to her in 2016 or 2017 that would have alerted her to SPS's sudden change in reporting method. Finally, the law is clear that taxpayers may reasonably rely on the Forms 1098 they receive and do not have to look behind or double check them. See 26 C.F.R. § 1.6664–4(b) which states that taxpayers can reasonably rely on the informational tax returns they receive.

[11] This is not "principal" as defined by SPS's contract, but "principal" in its ordinary sense, i.e. the originally borrowed funds upon which the interest was charged.

treated as first applying to interest and then to reduce principal.")

In short, just as SPS's **historical policy** for reporting payments of capitalized interest allocates payments to interest before principal, tax law also dictates that from the date SPS took over plaintiff's loan in December 2011, SPS should have allocated plaintiff's payments toward retiring her interest (including her capitalized interest balance) prior to retiring any of the original principal.[12] It then should have reported on plaintiff's Form 1098 the aggregate of the current and capitalized interest she paid in that year. The same should have been done in 2012.

26 U.S.C. section 6050H simply does not allow for interest to be reported in any year. Rather, the statute is clear that interest should only be reported on Forms 1098 in the "calendar year" in which the interest is "received." SPS's "fix" – to randomly start allocating plaintiff's payments to retiring her capitalized interest balance in 2016 – when SPS took over plaintiff's loan in 2011 – runs afoul not only of SPS's normal policy for reporting capitalized interest, but also runs afoul of the long-established rule that each tax year is separate and distinct from any other. *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 363 (1931).

Indeed, the Ninth Circuit has specifically held that it is not proper to try to correct mistakes made in one tax-year by trying to make up for them in another tax-year. *CIR v. Laguna Land & Water Co.*, 118 F.2d 112, 117 (9th Cir. 1941) ("None of these cases holds that an improper deduction from the gross receipts from a specific piece of property sold in one year may be corrected by refusing a deduction upon the sale of a different piece of property in a different year.") See also *In re Raney*, 132 B.R. 63, 66 (Bkrtcy.D.Wyo. 1991) (debtor could not offset against later tax-year overpayments made in earlier years).

---

[12] SPS testified that its allocation of policy payments follows the terms of the Note. SPS testified that when aware of capitalized interest, the Note provides for payment of interest before principal and this was applied, on a first dollar basis to amounts in excess of monthly payments.

The following hypothetical drives home the point. Imagine two SPS borrowers with identical loans and payment histories. Imagine further that the first borrower is the plaintiff (whose loan came in to SPS as part of the portfolio of loans transferred by BANA) and the other borrower's loan came to SPS on the same day from another lender which had included that borrower's capitalized interest balance in the information it provided to SPS. By SPS's own testimony, the result would be that the second borrower would have had her capitalized interest reported by SPS as having been paid on Form 1098 in 2011-2012, while plaintiff's capitalized interest balance was not reported by SPS as paid until 2016-2017. Tax law is plainly not supposed to work in a way where identically situated taxpayers have their interest reported in two different tax years by the same mortgage servicer.

Thus, while SPS testified that its reason for only reporting on a prospective basis was based on its contention that it had the *discretion* to report plaintiff's payment of her capitalized interest in any year SPS chose with no consultation with plaintiff, this is simply wrong.

These are the facts upon which plaintiffs' present motion is based.

## IV. BASED ON THESE NEW FACTS, PLAINTIFF SEEKS TO ALLEGE NEW THEORIES OF LIABILITY IN HER SUPPLEMENTAL COMPLAINT

### A. Plaintiff Seeks To Plead A New Claim Of Breach Of Her Mortgage Contract Based On The Admissions Of SPS

Plaintiff includes within her supplemented complaint a new claim for breach of contract alleging that notwithstanding its arguments made in the motion to dismiss proceedings, discovery has revealed that SPS's own interpretation of plaintiff's mortgage contract is in fact exactly consistent with plaintiff's interpretation – that while capitalized interest is "added" to principal under the provisions of the mortgage contract, it never loses its character as mortgage interest and the contract continues to treat it as interest for purposes of the allocation provision. Hidden from the Court in

the motion to dismiss proceedings was the knowledge that SPS **has in fact always interpreted the mortgage provisions in plaintiff's contract in this way, allocating monthly payments in excess of monthly interest to pay down the capitalized interest balance that was "added" to the Principal and reporting such payments of capitalized interest on Forms 1098. So, the truth was that plaintiff's argument was nothing new to SPS; it already interpreted the Note as Plaintiff originally alleged. Its lawyers just hid that fact.**

Plaintiff asserts in her supplemented complaint that the term "added to principal" is at least ambiguous. On the one hand, "added to" it can mean joined with. But on the other, like vinegar being "added to" oil to make salad dressing, it is simply the adding of one thing to another without the merging of the two. All dictionaries specify at least these two meanings of "add." And the language of plaintiff's note and SPS's historical interest reporting policy supports the latter of these two definitions. This is especially true considering that "interest" is not a defined term in plaintiff's note and thus must be construed in its ordinary meaning, i.e. money charged for the use of money.

Section 3(E) of plaintiff's notes provides, as follows:

> "For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and **will add the difference to my unpaid Principal,** *and Interest will accrue on the amount of this difference at the Interest rate required by Section 2.* For each month that the monthly payment is greater than the Interest portion, the Note Holder will apply the payment as provided in Section 3(A). (Emphasis added).[13]

Courts must interpret contractual language in a manner which gives force and effect to every provision. Courts must avoid constructions which render any provisions or words meaningless or surplusage. Plaintiff alleges in this breach of

---

[13] Section 3(a) is the allocation of proceeds provision that provides that: "*Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal*"
86.

contract claim that if her capitalized interest was truly intended by the language of her Note to *become* part of the principal, as opposed to merely being added to it, there would be no need for the second to last sentence of Paragraph 3(C) in her note, i.e., there would be no need to separately specify that the interest rate on the **interest** being "added" to the principal would be governed by Section 2 **since Section 2 already specifies the interest rate applicable to "Principal**."

At the hearing on SPS' motion to dismiss in June 2017, the Court asked a pivotal question, which transcends both tax law and contract law:

> THE COURT: I think the big question is is it interest? I mean that's really the big question" Transcript, MTD *Pemberton,* ECF #93, page 27, l. 15).

The undisputed, unequivocal answer, from the mouth of SPS, is YES. In all matters other than the BANA portfolio, as well as subsequent to its epiphany in 2016, SPS, on thousands of Forms 1098, spanning no less than 7 years, has **reported this** "difference"-"deferred interest"-"capitalized interest", which it added to principal but separately "tracked" as interest as *"mortgage interest received from borrower" in Box 1 on Form 1098.* And, at deposition, SPS says that what it included in Box 1 is true.

**That SPS has always tracked capitalized interest separately from the amount actually borrowed, and has reported those amounts as interest on its customers' Forms 1098, demonstrates that notwithstanding what its lawyers might have argued in the motion to dismiss proceedings, SPS actually agrees with plaintiff's interpretation of plaintiff's loan agreement.**

Thus, SPS breached plaintiff's mortgage contract when it ignored its own interest reporting policy, which it testified was based on the language of plaintiff's note, and failed to allocate plaintiff's payments to retiring her capitalized interest balance prior to retiring other "principal." The supplemented second amended complaint now alleges

facts that SPS interpreted and applied the terms of the Note in accordance with plaintiff's interpretation of the Note.

**B.** **Plaintiff Seeks To Include A New Claim For Breach Of The Covenant Of Good Faith And Fair Dealing**

While plaintiff is happy to be vindicated in her position that capitalized interest is "mortgage interest" which must be reported on Form 1098, given that tax law (and SPS's historical interest reporting policy) requires payments to be allocated on a first dollar basis to interest, and given that section 6050H requires that interest be reported in the year in which it was paid, SPS's "fix" only compounds an existing problem. For, as the saying goes, "two wrongs don't make a right."

Section 6050H simply does not allow interest recipients the discretion to report borrowers' interest payments on Forms 1098 in two entirely different ways. But that is exactly what SPS has done. As to SPS's non-BANA-originated loans SPS has been correctly allocating borrowers' payments to retiring capitalized interest balances on a first dollar basis and its Form 1098 reporting has followed from that allocation. Again, this is exactly the manner plaintiff says SPS should have acted with respect to her. But for plaintiff and the other BANA-acquired borrowers, their capitalized interest balances were wrongfully reported as having been paid in 2016 and onward simply because SPS never took the time to identify the existing capitalized interest.

This has of course led (for the second time) to class members receiving incorrect Forms 1098 and thus filing incorrect tax returns – which, at least theoretically, need to now be fixed.[14]

_____

[14] Plaintiff is not necessarily advocating for this result. While this result would, strictly speaking, be correct, it will create a big burden on class members to have to restate their 2016, 2017 and potentially even 2018 tax returns. At this point at least, there is no reason to believe that the IRS will reject the affected SPS's borrowers' 2016, 2017 and 2018 tax returns even though the affected borrowers have likely claimed their interest deductions in the wrong tax year (by virtue of SPS's wrongful reporting). At a minimum, however, plaintiff contends that plaintiff and the class should not be

SPS's position is simply that it can report payments of capitalized interest in whatever tax year *SPS chooses,* if it chooses at all to do so[15]. But even if SPS were correct that there are no rules that apply to the reporting of capitalized interest and that it has the *discretion* to report such interest in any year it chooses even for identically situated borrowers, plaintiff contends (and pleads in her supplemental complaint) that SPS cannot exercise that discretion in a manner that is potentially detrimental to plaintiff. SPS cannot simply ignore its own historical capitalized interest reporting

disadvantaged by SPS's unilateral action. Plaintiff contends that class members should at least have been given the choice of receiving a corrected Form 1098 retrospectively reporting their interest payment in the correct year, or having their capitalized interest balance reported prospectively. In other words, plaintiff contends that even if SPS is correct that there are no provisions in plaintiff's loan contract or IRS rules for when capitalized interest should be reported, then it should have been up to the plaintiff and the members of the class, and not SPS, to make the determination as to when her capitalized interest should be reported.

But plaintiff's primary contention is that SPS should get **no credit** for its 2016 "fix." Since SPS's conduct was wrong, was taken without any input from plaintiff, and has permanently altered plaintiff's tax position, plaintiff contends that SPS should be equitably estopped to claim any offset to plaintiff's damages for 2011 and 2012 based on the amount of any interest that SPS wrongfully reported as paid in 2016-2018 and which plaintiff or other class members may have deducted in those years. See, e.g. *Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, 71 Cal.App.4th 1260 (1999) where it was held that where a state insurance regulation required certain disclosures be made and the insurer failed to make those disclosures, it was appropriate to invoke the doctrine of equitable estoppel against the insurer. *Id*. at 71 Cal.App.4th 1268-1269. Simply put, SPS was under a legal duty under 26 C.F.R. section 301.6724-1(d)(2)(D) to have disclosed its wrongful reporting by issuing corrected Forms 1098 to class members and it did not do so. As a result, the class members' legal position was permanently altered (since the statute of limitations for class members to amend those years' returns has now expired) without their knowledge or consent. Since they can now no longer correctly state their taxes for those tax years SPS should not be able to claim credit for "fixing" the problem by again misreporting the class's interest payments from 2016 forward.

[15] But contrast this argument with the cited oral argument whereby SPS appears to argue payment of the "difference" or "deferred interest" that gets capitalized can never be reported as mortgage interest because it would expose the entire industry to liability.

policy – which it testified was grounded in the contractual notes of its borrowers – for purposes of expediency. Indeed, SPS's unilateral allocation of payments to particular years, especially without even consulting its borrowers is a classic breach of the covenant of good faith and fair dealing.

Although plaintiff believes now the allegations tie SPS' conduct to the mortgage contract and/or to a breach of the SPS/BANA mortgage servicing contract, the new allegations demonstrate that even if SPS had any unilateral or discretionary right, it was exercised in bad faith. The supplemental second amended complaint alleges facts, which if proven, will demonstrate that SPS breached the covenant of good faith and fair dealing with conduct that post-dated the filing of the original complaint and occurred in 2016 and 2017 while this lawsuit was pending. The allegations demonstrate that SPS unfairly interfered with the borrowers' rights, after 2016, to receive the benefit of the contract. *Reinhardt v. General Motors* (2012) 879 F. Supp. 2d 1138).

Notwithstanding the filing of this lawsuit in 2014, SPS continued to be the servicer of Plaintiff's loan, as well as the servicer for Class Members. Its duties to Plaintiff and Class Members did not terminate with the filing of this lawsuit. Accordingly, this breach of the covenant of good faith and fair dealing is properly included in this lawsuit to avoid duplicity of actions and for judicial economy.

### C. Plaintiff Seeks To Plead A New Third Party Beneficiary Claim Of Breach Of The BANA/SPS Loan Servicing Contract

As Plaintiff has now learned, the loan servicing agreement between SPS and BANA specifically says that part of the loan servicing duty is to provide Forms 1098 to the IRS *and to the class members*. The contract then places that duty squarely on SPS. Plaintiff contends, and seeks to allege in this cause of action, that by virtue of the fact that taxpayers rely on Forms 1098 being correct, she and the other class members were intended third party beneficiaries of the SPS/BANA agreement.

In the supplemented second amended complaint, Plaintiff alleges that by failing to properly report plaintiff's interest payments properly, SPS breached the provisions of

its contract with BANA. And since the borrowers (including plaintiff) whose loans were to be serviced by SPS were intended beneficiaries of the BANA/SPS agreement, plaintiff should be allowed to allege that by failing to report her interest properly, she is entitled as a third party beneficiary to sue SPS for the damages she suffered as a result of that breach.

### D. Plaintiff Seeks To Plead A Fraud Claim Based on SPS' 2016 Misrepresentations and Concealments

In its supplemented second amended complaint, Plaintiff alleges, on behalf of herself and Class Members that SPS made affirmative misrepresentations to her regarding the "correction" to its previous reporting (or non-reporting) of Plaintiff's and Class Members payment of capitalized interest in 2016 and while this lawsuit was pending.

The allegations include the concealment of the addition of previously paid capitalized interest to her Form 1098, and that prospectively, for all Class Members, amounts in excess of the monthly payments would now be applied to unpaid capitalized interest until the capitalized interest balance reached zero. SPS further concealed that in 2016 it had determined that Plaintiff and Class Members had previously paid capitalized interest that it had not reported the payment of Forms 1098, and it was now going to report payments of capitalized interest on Forms 1098.

The allegations also include the fact in 2017, SPS misrepresented to Plaintiff, and Class Members, the amount of mortgage interest Plaintiff and Class members paid in 2016.

The supplemental second amended complaint sufficiently details actual fraudulent conduct that took place after the filing of the original complaint and it is appropriate to address the alleged conduct in this singular action.

### V. CONCLUSION

As stated, this case is, and has always been about the consequences of SPS's incorrectly reporting on Forms 1098 the plaintiff's and class members' capitalized

interest balances. Supplementing the pleading as proposed herein will ensure the court is able "to award complete relief," *Keith*, 858 F.2d at 473 (quoting *New Amsterdam*, 323 F.2d at 28–29), and will "promote the economic and speedy disposition of the entire controversy between the parties." Wright & Miller, *supra*, § 1504.

Plaintiffs' proposed supplemental complaint relates only to how capitalized interest was reported by SPS on Forms 1098 to the plaintiff and other class members beginning in 2016 – and will not unduly delay the case or prejudice the defendant. This case is, and has always been focused on the reporting of capitalized interest. It will continue to be so under the allegations of the supplemented complaint. However, the complexion of the case has changed since SPS never disclosed to Plaintiff, Class Members, counsel or this Court that what it was arguing in its Motions to Dismiss was **contrary to the true facts as to how SPS really treated capitalized interest.** Notwithstanding the fact SPS has been resisting discovery, Plaintiff can now establish that its breach of contract claim is supported not by its factual or legal arguments, but by SPS' own interpretation of the contract. The remaining claims are borne out by the limited discovery to date.

Further, plaintiff has not unduly delayed in bringing the within motion because discovery in this case just opened, there is no scheduling order, trial date or discovery cutoff date in place, and the facts upon which the motion is based were just revealed by the defendant 14 days ago.

For these reasons, and especially given the liberal standard applicable to requests to supplement complaints under Rule 15, plaintiffs respectfully request that the Court grant them leave to file their proposed supplemental complaint.


Date: December 24, 2018          MICHAEL R. BROWN, APC


By: _____/s/*Michael R. Brown*_____
          Michael R. Brown

- 18 -

Dated: December 24, 2018            LAW OFFICE OF DAVID J. VENDLER


                                    By: _____ */s/ David J. Vendler* _____
                                            David J. Vendler

                                    Attorneys for Plaintiff Adriana Rovai
                                    and all others similarly situated