LAW OFFICE OF DAVID J. VENDLER
David J. Vendler, Esq. (SBN 146528)
Email:   djvlegal@gmail.com
2700 South Oak Knoll
San Marino, California 91108
Tel.:  (213) 700-5194

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email:   mbrown@mrbapclaw.com
2030 Main Street, Suite 550
Irvine, California 92614
Tel.:  (949) 435-3888
Fax:   (949) 435 3801

Attorneys for Adriana Rovai and Others Similarly Situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA ROVAI, individually and on behalf of the class of all others similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>SELECT PORTFOLIO SERVICING, INC.<br><br>       Defendant. | Case No.:  14-CV-1738-BAS-MSB<br><br>[Assigned to Hon. Cynthia A. Bashant]<br><br>**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANT'S RESPONSE IN SUPPORT OF HER MOTION TO FILE HER SUPPLEMENTED SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Date: Jan. 28, 2019**<br>**Court: 4B** |

   NOW COMES Plaintiff, Adriana Rovai ("Plaintiff" or "Rovai") who, on behalf of herself and all others similarly situated (collectively "class members"), submits the following reply memorandum in support of her motion to file a Supplemented Second

-1-
PLAINTIFF'S REPLY MEMORANDUM

Amended Class Action Complaint ("SSAC") against Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant").

Date: January 18, 2019                                MICHAEL R. BROWN, APC

By: _____*s/ Michael R. Brown*_____
       Michael R. Brown

LAW OFFICES OF DAVID J. VENDLER

By: _____*s/ David J. Vendler*_____
       David J. Vendler

Attorneys for Plaintiff ADRIANA ROVAI and all others similarly situated.

# REPLY

After beginning with a long and largely irrelevant rant (which is refuted in the Declaration of Michael R. Brown filed herewith), SPS eventually turns to its actual arguments. SPS argues plaintiff's motion should be denied because: (1) although plaintiff's SSAC presents claims that indisputably arose after the filing of plaintiff's complaint, it also presents claims based on facts that arose prior thereto – but about which plaintiff did not know, and could not reasonably have known, until late 2018 (Brown Dec., ¶¶ 6-36); (2) plaintiff filed their motion in bad faith and for the purposes of undue delay; and (3) allowing plaintiff's supplemented claims would be futile. SPS also throws in a "no standing" argument based upon the fact that SPS thinks it extinguished Plaintiff's claim when it unilaterally, wrongly, and without providing any advance notice to Rovai, reported on Rovai's 2016 and 2017 Forms 1098 that she had paid her capitalized interest in those years and not when she actually paid it in 2011-2012. As will be shown, under the liberal standard of Rule 15, plaintiff's motion should be granted, leaving the full merits of her claims to be tested on a subsequent motion to dismiss. *Bd. Of Trustees of the Automotive Industries Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, 2010 WL 760452 at \*3 (N.D. Cal. 2010).

**A. Since The Standards For Amendment And Supplementation Are The Same, It Makes No Difference To The Resolution Of This Motion Whether Certain Claims Are Based On Pre- Or Post-Complaint Facts**

SPS concedes plaintiff's new claims are largely based on facts that arose after the filing of plaintiff's original complaint, including, *inter alia*, SPS's unilateral and wrongful decision to begin reporting class members' 2011 capitalized interest balances as having been paid in 2016 and forward. SPS argues, however, that since some of plaintiff's supplemental claims are based on facts that existed at the time of the original complaint, even if they were unknown to plaintiff (See Brown Dec.), those claims are not properly the subject of a motion to supplement under Rule 15(d).

Even SPS admits that the standards for reviewing a motion to file a supplemental pleading are the same as those for a motion to amend under Rule 15(a). Motion at 6:11-12. And those standards are to be applied with great liberality. *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir.1981). Thus, it "makes little difference whether the court treats plaintiff's motion as a motion to supplement rather than a motion to amend because the factors relevant to a Rule 15(d) motion to supplement a complaint are essentially the same as those considered when addressing a motion to amend under Rule 15(a)" (*Stallworth v. Stolk,* 2018 WL 3453914 at *7 (D. Nev. 2018)) and courts will treat a motion to supplement as one to amend where the proposed supplement alleges pre-complaint facts. *Torrie v. Goodman Law Offices PC*, 2014 WL 5594452 at *6 (D. Ariz. 2014). Thus, even assuming plaintiff should have captioned her motion as one to add supplemental *and* amended claims, her failure to do so is at best just a matter of semantics; it is not a reason to deny plaintiff's motion.

### B. SPS Has Not Established Any Of The Discretionary Grounds Necessary For The Denial Of The Plaintiff's Motion.

The discretionary factors for denying a motion to amend or supplement are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party, or (5) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Prog., Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). Of these factors, prejudice is the most important. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir.1990); *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321, 330–31 (1971). *Here, SPS does not even argue it would be prejudiced by the granting of this motion.*

### i.   Granting Plaintiff's Motion Will Not Result In Undue Delay.

SPS claims plaintiff unjustifiably delayed in bringing her motion and is acting in bad faith because (1) the case is 5 years old and (2) plaintiff allegedly should have realized in 2016 that SPS had over-reported her interest paid in that year. Both assertions are ridiculous. First, "undue delay by itself is insufficient to justify denying

-4-
PLAINTIFF'S REPLY MEMORANDUM

a motion to amend." *DCD Programs, supra,* at 833 F.2d 186. There is not even a scheduling order in this case, much less a trial date, so the granting of this motion will not cause any delay. [1] Moreover, the only reason this case is 4 ½ years old is because *SPS asked for the case to be stayed*. Plaintiff opposed the stay and its continuation at every opportunity. The stay was lifted October 18, 2017. ECF No. 53. Discovery only finally opened in late 2018. Plaintiff then promptly obtained documents, interrogatory answers and took SPS's deposition which led to the factual revelations more fully described in plaintiff's SSAC relating to: (1) the fact that SPS's regular policy and practice has always been to report payments of capitalized interest in exactly the manner plaintiff has been contending is correct; (2) SPS's flat-out admission that plaintiff's capitalized interest would have been reported in 2011-2012 if BANA had provided a separate data field for capitalized interest balance as part of the loan boarding process[2]; (3) SPS's unilateral decision (implemented with no notice to its borrowers) to try to "fix" its prior under-reporting of capitalized interest by (falsely) reporting class members' capitalized interest balances as having been paid in tax years 2016 forward; (4) the fact that the SPS/BANA Loan Servicing Agreement specifically placed the duty for Form 1098 reporting on SPS; and (5) the fact that SPS knew that BANA was not providing it with any capitalized interest balances at the time of transfer and SPS nonetheless took no steps to determine what those capitalized interest balances were. The chronology of events, the reasons why plaintiff could not have amended previously and the details relating to the discovery of the information alleged in the SSAC is detailed in the Brown Dec. ¶¶ 6-36.

As to the assertion that plaintiff should have realized that SPS had suddenly and without any notice started to report on plaintiffs' Form 1098, the Brown declaration

---

[1] The Scheduling Order was entered ECF 107 then vacated ECF 110. Brown Dec. ¶33
[2] SPS conceded that even though it knew many of the loans it was acquiring were Option ARM loans with capitalized interest balances and that it actually had all of the information at the time the loans were boarded to figure out plaintiff's capitalized interest balance, it simply chose not to undertake the analysis necessary to properly prepare its Forms 1098 after boarding the BANA loans.

refutes this. Brown Dec. ¶31. Further, the law recognizes that taxpayers can reasonably rely on the Forms 1098 they receive without having to double check them. "A taxpayer's reliance on erroneous information reported on a Form W–2, Form 1099, *or other information return* indicates reasonable cause and good faith [for reporting incorrect amounts on their tax returns], provided the taxpayer did not know or have reason to know that the information was incorrect." See 26 C.F.R. § 1.6664–4(b) and *Shao v. Commissioner*, T.C. Memo. 2010–189, 2010 WL 3377501 at *6 (2010). The indisputable fact is that SPS implemented its 2016 over-reporting "fix" for its previous under-reporting without providing any notice to its borrowers and did it during the period of stay. One might ask the question: "If SPS allegedly fixed this problem for Rovai, who was represented by counsel two years into the litigation, by doing something Plaintiff contended in her lawsuit should be done, why didn't SPS or its counsel tell Plaintiff and her counsel what they did? For all of these reasons, plaintiff's motion will not cause undue delay.

### ii. Plaintiff's Supplemental Claims Are Not Futile.

The balance of SPS's opposition argues that plaintiff's breach of contract, covenant of good faith and fair dealing and fraud theories will be futile. Yet,

> "[d]enial of leave to amend on this ground is rare. Ordinarily, courts will defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleading is filed." [Citations omitted]. Deferring ruling on the sufficiency of the allegations is preferred in light of the more liberal standards applicable to motions to amend and the fact that the parties' arguments are better developed through a motion to dismiss.

*Moapa Band of Paiute Indians v. Nevada Power Company*, 2014 WL 12772274 at *1 (D. Nev. 2014).[3] The only time "futility" should be used to deny a motion to amend/supplement is when the claims are "clearly and unambiguously futile." *Bd. Of Trustees*, *supra*, 2010 WL 760452 at *3. Such is not the case here.

### iii. Plaintiff's Breach Of Contract Claim Is Not Futile.

---

[3] See also, *Allred v. Frito-Lay North America, Inc.*, 2018 WL 3608391 at *2 (S.D. Cal. 2018).

Central to the Court's conclusion in the last motion to dismiss that plaintiff could not state a breach of contract claim was its conclusion that "[t]he terms of the Rovai mortgage contract plainly treat deferred interest as principal *and authorize SPS to allocate Rovai's payments accordingly*" (emphasis added). *Rovai v. Select Portfolio Servicing, Inc*, 2018 WL 3140543 at *9 (S.D. Cal. 2018). The Court thus found it would be "futile" to allow plaintiff to assert a breach of the mortgage contract's allocation provision. *Id.* at *7.

But what the Court did not know then was that SPS has never in fact allocated its borrowers' payments that way! How things might have changed if the Court had been told prior to issuing its last opinion: (1) that SPS utilizes a computer program *that its own witness testified was specifically designed to follow the allocation provisions in its customer's mortgage contracts*; and (2) that its **contract-based** computer program in fact *allocated its borrowers' payments to retiring monthly interest first, then to retiring capitalized interest which had been "added to" "Principal," and then only to retiring the original "Principal."* See Brown Dec., ¶¶ 16-19 and 36.

If this information had not been hidden by the defendants from plaintiffs and the Court, plaintiff could have convincingly argued that SPS's policy supported her claim that the allocation of payments provision in her mortgage contract was, at the very least, ambiguous. Brown Dec., *supra*. After all, California Supreme Court law is clear that *even if a contractual provision initially appears to a court to be unambiguous*, where the parties' past conduct evidences a different interpretation, that interpretation will create an ambiguity even where there otherwise would not be one.

> Words frequently mean different things to different people. Here the contracting parties demonstrated by her actions that they knew what the words meant and were intended to mean. ***Thus, even if it be assumed that the words standing alone might mean one thing to the members of this court, where the parties have demonstrated by her actions and performance that to them the contract meant something quite different, the meaning and intent of the parties should be enforced***. In such a situation the parties by her actions have created the 'ambiguity' required to bring the rule into operation. If this were

-7-
PLAINTIFF'S REPLY MEMORANDUM

> not the rule the courts would be enforcing one contract when both parties have demonstrated that they meant and intended the contract to be quite different. (Emphasis added).

*Crestview Cemetery Assn. v. Dieden*, 54 Cal.2d 744, 754 (1960). Thus, contrary to SPS's contention, plaintiff is not impermissibly seeking reconsideration of this Court's prior ruling via her motion to supplement. Even without reconsidering the conclusion that the language of the contract is unambiguous in converting capitalized interest into principal, SPS's admission, which is alleged in the SSAC, that its own allocation of payments practice was to treat capitalized interest as interest after capitalization, should be sufficient under *Crestview* to get plaintiff over the "futility" hump of showing an ambiguity such that the matter can be more fully briefed in a subsequent motion to dismiss.[4] This is especially true since SPS (and Nationstar) were, to say the least, less than forthright with this Court in concealing their true interest reporting policies. Brown Dec., ¶¶ 10-24.

### iv.  Plaintiff's Fraud Claim Is Not Clearly And Unambiguously Futile.

Irrespective of whether the plaintiff's mortgage contract mandates it, the law presumes that payments on a note are allocable to retiring interest before principal. *Mason v. U.S.*, 453 F.Supp. 845, 848 (N.D. Cal. 1978); *Story v. Livingston*, 38 U.S. (13 Pet.) 359, 371 (1839); *Estate of Paul M. Bowen v. Comm'r.,* 2 T.C. 1, 7 (1943) and

---

[4] This Court, *inter alia*, relied on the language of Section 3(E) of the note to support its conclusion that the mortgage contract unambiguously converted capitalized interest ***into*** principal. *Rovai*, *supra,* 2018 WL 3140543 at *8. Section 3(E) specifies that the interest rate to be charged on capitalized interest will be the same as the interest rate set forth in Section 2 applicable to principal. But if "adding" capitalized interest to principal was really intended to convert that interest into principal, as the Court concluded, then there would be no need for a separate provision specifying a rate of interest for the interest being capitalized since ***Section 2 already specifies the interest rate that is applicable to "Principal****."* Bedrock principles of California contract interpretation require that "[c]ourts must interpret contractual language in a manner which gives force and effect to every provision" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal.App.4th 445, 473 (1998)) and that courts must "avoid constructions which render any provisions or words meaningless or surplusage." *McCarther v. Pacific Telesis Group*, 48 Cal.4th 104, 110 (2010). The only way to do this is to conclude, ***consistent with SPS's own practice***, that the interest the plaintiff deferred paying initially, but then paid later, was never intended to lose its character as "interest" even when it was "added to" the principal.

-8-
PLAINTIFF'S REPLY MEMORANDUM

1  *Motel Corp. v. Commissioner*, 54 T.C. 1433, 1440 (1970).  Indeed, Plaintiff alleges in
2  the SSAC that SPS expressly concedes that it follows this rule generally, and that the
3  only reason that it did not follow this rule when it took over plaintiff's loan from
4  BANA in 2011, was that BANA did not provide a separate data field containing each
5  borrowers' capitalized interest balance in the computerized transfer of loan
6  information.  Brown Dec., ¶ 16. But SPS also conceded at its deposition that it knew
7  that it was acquiring many Option ARM loans that had capitalized interest balances
8  and yet, in spite of its duty to *accurately* report borrower payments of mortgage
9  interest under 26 U.S.C. section 6050H, SPS decided not do anything to try to
10 determine what those balances were – even though it admits it could have determined
11 those amounts from the information it had available at the time of transfer.  Brown
12 Dec., ¶16.

13     The fraud claim, which Plaintiff alleges with specificity in the SSAC, clearly
14 rests on SPS' conduct after the filing of this lawsuit and directly related to the issues
15 framed in the original complaint. In 2016, SPS tried to unilaterally "fix" the problem
16 raised by this lawsuit.  Its "fix" was to start unilaterally (and falsely) reporting in Box 1
17 of plaintiff's and class members' 2016 Forms 1098 that plaintiff and class members
18 had paid their 2011 capitalized interest balances in 2016 and forward.  SPS's "fix,"
19 however, is contrary to bedrock tax law. Even SPS admits that Rovai's interest should
20 have been reported in 2011 under its normal policy.  And the Ninth Circuit has
21 specifically held that it is not proper to try to correct mistakes made in one tax-year by
22 trying to make up for them in another tax-year. *CIR v. Laguna Land & Water Co*., 118
23 F.2d 112, 117 (9th Cir. 1941) ("None of these cases holds that an improper deduction
24 from the gross receipts from a specific piece of property sold in one year may be
25 corrected by refusing a deduction upon the sale of a different piece of property in a
26 different year.")  See also *In re Raney*, 132 B.R. 63, 66 (Bkrtcy.D.Wyo. 1991) (debtor
27 could not offset against later tax-year overpayments made in earlier years).
28

-9-
PLAINTIFF'S REPLY MEMORANDUM

Rather than implement its "fix," SPS was legally required to have issued corrected Forms 1098 to its affected borrowers correctly reflecting the year in which they actually paid their capitalized interest.[5]  Instead, SPS chose expediency – to wrongfully and falsely represent to its borrowers in Forms 1098 that they paid inflated amounts of interest in those years.  These representations (and concealment that SPS should have issued corrected Forms 1098) were knowingly made with the intent that consumers would act based thereon.

And SPS's "fix" does not eliminate class member damages from the overpayment of taxes they made in 2011 and 2012 because California law is clear that one cannot gain an advantage by wrongful conduct.  California *Civil Code* section 3517.  In short, SPS should not only be estopped from claiming any damage offset due to its 2016 false reporting, but it should also be responsible for any additional damages that have been caused by its 2016 fix.

This also dooms SPS's claim that plaintiff allegedly no longer has standing to bring this case because her capitalized interest balance has now been reported (in the wrong tax year).[6] Neither plaintiff, nor the class members hired SPS as its tax advisor or grant to SPS the right to pick and choose at random the year to report their interest payments.  And this leads into plaintiff's breach of covenant of good faith claim.

### v.  Plaintiff's Supplemental Covenant Breach Claim Is Not Futile.

---

[5] See 26 CFR § 301.6724-1(d)(2)(D) and 2011 General Instructions for Certain Information Returns quoted in plaintiff's motion.

[6] Also, since SPS's "fix" does not help any of its borrowers whose loans terminated prior to 2016 by reason of sale or refinance, plaintiff can continue as the representative of these class members.  Under the rule in *Sosna v. Iowa*, 419 U.S. 393, 402, fn. 11 (1975), even if this Court agrees that SPS had the right to report plaintiff's capitalized interest as having been paid in 2016-2017, and thus plaintiff no longer has suffered a sufficient injury for standing purposes, she can continue to act as the representative of the other class members whose interest was never reported.  Finally, even if this Court finds that plaintiff no longer has standing by virtue of SPS's 2016-2017 reporting, plaintiff will be the prevailing party as she will have obtained the primary relief she was seeking when she filed her original complaint, and which SPS refused to provide her when she complained to it prior to her lawsuit.

1    SPS barely mentions plaintiff's covenant breach claim in its opposition; it just
2 lumps it in with its discussion of plaintiff's breach of contract claim. But it is very
3 different this time. Plaintiff's claim is centered on SPS's 2016 conduct in unilaterally
4 picking and choosing in what year to report plaintiff's and the class members'
5 capitalized interest payments without telling them. It asserts that even assuming that
6 SPS *legally* can report its borrowers' payments of capitalized interest in any random
7 year, this does not give SPS the discretion to simply pick a random year in which to
8 report its borrowers' capitalized interest without providing its borrowers any choice in
9 the matter.

10   A tax deduction is an important benefit of a mortgage agreement. SPS does not
11 dispute this, but has argued in the past that plaintiff cannot base a claim for covenant
12 breach on its wrongful reporting of interest on Forms 1098 because there is no
13 provision in the mortgage contract that speaks specifically to that duty. *Crescent*
14 *Woodworking Co., Ltd. v. Accent Furniture, Inc.*, 2005 WL 5925586 (C.D. Cal. 2005)
15 refutes this argument and holds that a party cannot exercise its discretion *vis à vis* the
16 other contracting party in a way to frustrate a benefit of the contract even if there is no
17 specific contractual provision affected. And this is what SPS has done by unilaterally
18 picking the year in which to report the class members' capitalized interest payments.

19   **vi.   Plaintiff Third-Party Beneficiary Claim Is Not Futile.**

20   There is no merit to SPS's contentions that (1) the BANA/SPS Loan Servicing
21 Agreement does not obligate it to report payments of capitalized interest on Forms
22 1098 or (2) that plaintiff lack standing to sue for its breach (Opp. at 11:20-13:20). The
23 Servicing Agreement expressly states that SPS would be responsible for providing the
24 Internal Revenue Service ***and Mortgagors*** with ***all appropriate tax forms and***
25 ***information*** for transactions affecting the Mortgage loans. SPS's argument that this
26 provision does not specifically obligate it to report capitalized interest is frivolous in

-11-
PLAINTIFF'S REPLY MEMORANDUM

light of its post-lawsuit conduct and its admissions as to how such interest has historically been reported by it under SPS's normal policy.

A third-party beneficiary theory is governed by Cal. *Civil Code* section 1559 providing that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."[7]  To state a claim for breach of contract as a third-party beneficiary, all plaintiff need to establish is that this provision of the Servicing Agreement was made expressly for the benefit of "Mortgagors" including plaintiff.  This is easily satisfied given the specific provision that SPS was responsible for providing to all mortgagors all appropriate information on mortgage-related tax forms. *Spinks, supra,* 171 Cal.App.4th at 1022. As put in *Spinks*:

> The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. [Citation.]  If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person…. In other words, 'the doctrine presupposes that the defendant made a promise which, if performed, would have benefited the third party.'

*Id.*  SPS's express contractual obligation is further confirmed by its post-lawsuit conduct. *Spinks, supra,* 171 Cal.App.4th at 1024 ["In determining intent to benefit a third party, the contracting 'parties' practical construction of a contract, as shown by her actions, is important evidence of her intent."] None of SPS's authorities support a different conclusion. Here, SPS's failure to perform its tax reporting duty directly injured plaintiff and thus plaintiff can bring her third party claim.

Plaintiff has established in the limited space of this reply that her new claims are not "unambiguously and clearly futile," but clearly, a motion to dismiss will allow all parties and the Court a full airing.  And that is how it should be. See *Moapa, supra*.

---

[7] "Expressly" in section 1559 "has now come to mean merely the negative of 'incidentally.'" *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1022 (2009).  In other words, section 1559 only prohibits enforcement of a contract "by persons who are only incidentally or remotely benefited." *Id.*

-12-
PLAINTIFF'S REPLY MEMORANDUM

| | | |
|---|---|---|
| 1 | Date: January 18, 2019 | MICHAEL R. BROWN, APC |
| 2 | | |
| 3 | | By: _____*s/ Michael R. Brown*_____<br>Michael R. Brown |
| 4 | | |
| 5 | | LAW OFFICES OF DAVID J. VENDLER |
| 6 | | By: _____*s/ David J. Vendler*_____<br>David J. Vendler |
| 7 | | |
| 8 | | Attorneys for Plaintiff Adriana Rovai and all others similarly situated |