# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA ROVAI, *individually, and on behalf of the class of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendant. | Case No.: 14cv1738-BAS (MSB)<br><br>**ORDER** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute, filed on January 3, 2019. (ECF NO. 129.) In the joint motion, Plaintiff Adriana Rovai ("Plaintiff" ro "Rovai") moves to compel further responses from Defendant Select Portfolio Services ("Defendant" or "SPS") to her First Set of Requests for Admission ("RFAs") and First Set of Interrogatories. (Id. at 2.) For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion to compel further responses.

/ / /

/ / /

## I. FACTUAL BACKGROUND

Plaintiff brings this case on behalf of herself and others similarly situated against Defendant, the mortgage loan servicer who administered her home mortgage beginning in 2011. (See ECF No. 86 at 1, 3.) Her mortgage was an option adjustable rate mortgage, which permitted Plaintiff to make minimum payments that did not cover her monthly interest due. (See id. at 4-5.) The unpaid interest in any given month was added to the unpaid principal balance, which in turn accrued interest—this increase in the unpaid principal balance is called negative amortization. (Id.) At the time Defendant began servicing Plaintiff's mortgage, it had increased from $524,000 to $533,013.02 by this process. (Id. at 5-6.) Plaintiff's central claim is that the amounts of negative amortization continued to be interest, to which SPS should have applied payments prior to applying payments to the original unpaid principal, and which should have been reported by SPS as mortgage interest paid by Plaintiff on the IRS form 1098 that Defendant issued to Plaintiff. (Id. at 6-7.) Plaintiff alleges that Defendant failed to properly report the previously described payments of the negative amortization amounts on Form 1098 from the time they began servicing her loan in December 2011 (see id.), and even after Plaintiff brought the issue to Defendant's attention in in April 2014, it failed to investigate the situation and correct the error (see id. at 8). As a result, Plaintiff underreported the mortgage interest she paid in her federal income taxes, claimed smaller tax deductions, and overpaid her taxes. (Id. at 7.) Based on these essential central facts, Plaintiff's Second Amended Complaint alleges causes of action for unfair competition, declaratory relief, and negligence.

Judge Gallo previously limited discovery in this case to Rovai's individual claims on November 9, 2018, pending the parties' anticipated additional litigation on the pleadings. (See ECF No. 112 at 1.) He further ordered that Plaintiff could not propound any further written discovery pending further order of the Court and could only proceed

with its Rule 30(b)(6) deposition. (Id. at 2.) These disputes appear to arise from written discovery propounded by Plaintiff on Defendant prior to Judge Gallo's Order.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any unprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial to be discoverable. Id. District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; the requesting party has had ample opportunity to obtain discovery; or the discovery sought is beyond the scope of Federal Rule of Civil Procedure 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 36 permits a party to compel another party to admit or deny the truth of any matters within Rule 26(b)(1)'s scope "relating to (A) facts, the application of law to fact, or opinions about either; and (b) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981). Each matter which a party is asked to admit must be separately set forth. Fed. R. Civ. P. 36(a)(2). "Requests for admissions may not contain compound, conjunctive, or

disjunctive (e.g., "and/or") statements." U.S. ex rel Englund v. Los Angeles County, 235 F.R.D. 675, 684 (E.D. Cal. May 12, 2006) (citation omitted). Nevertheless, parties should focus on the "full and efficient discovery" goal of the Federal Rules of Civil Procedure, and not engage in "evasion and word play." Marchand v. Mercy Med. Ctr., 22 F.3d 933, 936 (9th Cir. 1994) (citation omitted). The rule sets forth detailed rules for the party responding to an RFA:

> ***Answer***: If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36 (a)(4).

An interrogatory may relate to any matter that may be inquired of under Rule 26(b). Fed. R. Civ. P. 33(a)(2). The responding party must answer each interrogatory by stating the appropriate objection(s) with specificity or, to the extent the interrogatory is not objected to, by "answer[ing] separately and fully in writing under oath." Id. at 33(b). The responding party has the option in certain circumstances to answer an interrogatory by specifying responsive records and making those records available to the interrogating party. Id. at 33(d).

### III. DISCUSSION

#### A. RFA No. 10

Plaintiff's RFA No. 10 asks Defendant to "[a]dmit that there were deferred amounts or negative amortization on ROVAI'S MORTGAGE for the period of time that

4

14cv1738-BAS (MSB)

SPS has been the servicer of the LOAN." (ECF No. 129 at 7.) Defendant objected to this Request in its initial responses as vague and unintelligible, stating that the phrase "deferred amounts or negative amortization on ROVAI'S MORTGAGE" was unclear. (Id.) Nevertheless, Defendant admitted that "at the time it began servicing Rovai's loan, her total principal balance exceeded her original principal balance." (Id.) In the instant motion, Plaintiff objects to this response, stating that it does not respond to the request, which it states is proper and simple. (Id. at 8.) Defendant elaborates on its objection, by explaining that the phrase is unintelligible because the two terms—"deferred amounts" and "negative amortization" mean different things. (Id.) It further argues that it cannot simply admit or deny the request, which asks it to admit two different things simultaneously. (Id.)

The Court finds that the term "deferred amounts" is vague. Nevertheless, in the context of this case and the parties' meet and confer and arguments, Plaintiff's intent with this interrogatory is simple and straightforward. The Court finds that without the term "deferred amounts," the RFA is relevant, and neither vague nor compound. Accordingly, Plaintiff's motion to compel is **GRANTED in part**, and Defendant is ordered to respond to Plaintiff's request as follows: admit that there was negative amortization on ROVAI'S MORTGAGE for the period of time that SPS has been the servicer of the LOAN. The answer previously provided by Defendant is not responsive to the request, and is therefore insufficient.

B. <u>RFA No. 16</u>

This request asks Defendant to "[a]dmit that at no time prior to ACQUIRING any OPTION ARM LOANS from BANA did YOU ever attempt to determine if any portion of the LOAN BALANCES that you would ACQUIRE included unpaid DEFERRED INTEREST." (Id. at 9.) Defendant initially objected that the request is "overbroad, unduly burdensome, not limited to a relevant time period, and not relevant to a party's claim or

defense in this case or proportional to the needs of this case." (Id.) It also claimed that the RFA was vague and unintelligible. (Id.) In its supplemental responses, Defendant added a new argument that the RFA assumes that Defendant had a legal duty to verify whether the loans had unpaid deferred interest. (Id.)

The Court agrees that the RFA, as written, is overbroad insofar as it asks about "any OPTION ARM LOANS from BANA" and is seemingly unlimited in time, particularly in light of the parties' stipulation and Judge Gallo's order bifurcating discovery, such that the parties may only engage in discovery regarding Rovai's claims at this time. (See ECF No. 111 at 3; ECF No. 112 at 1.) However, the Court finds it appropriate to limit this RFA to Plaintiff's mortgage loan, which would overcome this objection. When narrowed to Rovai's loan, the Court finds that RFA is relevant to Plaintiff's claims and not overbroad or unduly burdensome. It is limited in time as it refers only to what Defendant did prior to acquiring Rovai's loan, and limited to actions taken or not taken in relation thereto. Defendant's argument that the interrogatory assumes facts not in evidence is simply incorrect. Admitting whether one attempted to determine whether the loan balance included unpaid deferred interest in no way assumes or admits that the party had a duty to do so. The Court therefore **GRANTS in part** Plaintiff's motion to compel further responses to this RFA. Defendant is ORDERED to respond to the following modified request: Admit that at no time prior to ACQUIRING ROVAI'S LOAN from BANA did YOU ever attempt to determine if any portion of ROVAI'S LOAN BALANCE that you would ACQUIRE included unpaid DEFERRED INTEREST.

C.  **RFA Nos. 17, 18, 19, 20, 22 and 23**

In RFA Nos. 17, 18, 19, 20, 22, and 23, Plaintiff asks Defendant to admit various definitions or relationships between terms. RFA No. 17 asks Defendant to "[a]dmit that INTEREST, in the context of a MORTGAGE or LOAN is the money charged to and paid by BORROWERS for the use of the money," where evidently several terms have been

6

14cv1738-BAS (MSB)

defined previously by Plaintiff. (ECF No. 129 at 11.) RFA No. 18 asks Defendant to "[a]dmit that DEFERRED INTEREST is INTEREST." (Id. at 14.) Without reciting each of the RFAs verbatim, RFA Nos. 19 and 20 are substantially similar in form and nature. RFA Nos. 22 and 23 asks Defendant to admit the propriety or impropriety of different acts. For instance in RFA No, 22: "[a]dmit that it is proper under 26 U.S.C. [s]ection 6050H for a lender to report payments of previously DEFERRED INTEREST in Box 1 of a BORROWER's FORM 1098 in the tax year in which the previously DEFERRED INTEREST is actually paid." (Id. at 22.)

In its original responses, Defendant objected to these requests on the grounds that they ask for a legal conclusion. (Id. at 11, 14, 17, 20, 22, and 24.) In supplemental responses, to RFA Nos. 17, 18, and 19, Defendant objected that terms in the request have different meanings in different contexts (see id. at 12, 14, and 17) , which the Court understands to be an objection for vagueness.

The Court **SUSTAINS** Defendant's objections to RFA Nos. 17, 18, 19, 20, 22, and 23. The Plaintiff's requests do not reference specific facts of this case but rather are seeking admissions of a purely legal issue. The central issue in this case is whether Defendant failed to properly report the correct amount of Plaintiff's mortgage interest on tax forms and what Defendant was required by law to do is at-issue. Plaintiff is seeking to have Defendant admit to definitions of terms that are central to the case and would be determive of legal issues without any application to the facts of this case. This is not the proper purpose for an RFA. See Hupp v. San Diego Cnty., Civil No. 12cv0492 GPC(RBB), at *31 (S.D. Cal. Apr. 9, 2014) (finding that RFA asked for legal conclusion where "requests do not reference any specific facts of his case."). That Plaintiff is looking for a legal conclusion divorced from the facts of this case is demonstrated by her arguments claiming insufficiency some of Defendant's supplemental responses. For instance, in supplemental responses to RFA Nos. 17, 18, and 19, Defendant attempts to

provide a substantive response by grounding the purely legal requests in the facts of the case (see ECF No. 129 at 12, 14, and 17), Plaintiff objects to what it characterizes as Defendant's rewriting of the question, noting for instance in response to RFA No. 17 that "[t]he request does not ask SPS anything about its contract or how its contract treats interest." (Id. at 12.) While Plaintiff claims that RFA Nos. 17 and 18 seek Defendant's <u>understanding</u> of these different issues (see id. at 48 ("The requests do not seek conclusion. They seek SPS' understanding of the terms used daily in the performance in the performance of its mortgage servicing responsibilities."); see also e.g., id. at 12, 15 ("Therefore, this request seeks to have SPS admit or deny its understanding of what is 'interest' in the context of a mortgage loan.")), that is not what the RFAs do at all. The RFAs do not ask how Defendant has interpreted the word interest for a certain purpose, but ask about the definitions of words, which the Court finds in these circumstances to be purely legal conclusion, and a vague one at that since the context for the deifinitions is not clearly identified in each RFA.

The Court therefore **DENIES** Plaintiff's motion to compel further responses to RFA Nos. 17, 18, 19, 20, 22, and 23 as each calls for a legal conclusion.

**D.     RFA Nos. 31 and 37**

Initially, the Court notes that Defendant objected to both of these RFAs because they were served in contradiction of Local Rule No. 36.1, which limits each party to serving no more than twenty-five (25) RFAs unless the party obtains leave of court. (See id. at 27, 37.) While the Court does not know when this objection was initially made, Defendant continues to argue in the instant joint motion, filed on January 3, 2019, that Plaintiff has not responded to this objection and therefore the Court must deny Plaintiff's motion to compel further responses to these requests. (Id. at 28, 38.) Defendant is correct that Plaintiff has not addressed this objection anywhere in the instant motion. That neither party has referenced Judge Gallo's October 31, 2018 Order

Following Discovery Conference, which specifically ordered that "each party shall be limited to propounding 40 RFAs," causes this Court concern. (See ECF No. 108 at 2.) Based on the information before the Court, it is not clear whether there was a good faith basis for this objection or why Plaintiff did not believe the Judge Gallo's order was pertinent to include in its response. Nevertheless, on the record before the Court, the objection is hereby **OVERRULED**. The Court will therefore address the substantive arguments raised by the parties.

### 1. RFA No. 31

This RFA asks Defendant to "[a]dmit that at the time SPS ACQUIRED the MORTGAGE portfolio from BANA, including Plaintiff's MORTGAGE, BANA did not give YOU any specific instructions as to how YOU were to allocate the monthly payments YOU would receive from BORROWERS on the BANA MORTGAGES that were transferred to YOU for SERVICING." (ECF No. 129 at 27.) In its supplemental response, Defendant objected to this RFA because it was not limited to Rovai's loan, and Defendant claimed that "it assumes that BANA had a contractual right or obligation to give SPS instructions as to how to service the Rovai loan, which is not the case because BANA was not the owner or investor of the Rovai loan." (Id. at 27.)

Plaintiff's objections are unavailing. Given the allegation in this case that Defendant was negligent in failing to identify the amount of negative amortization when it took over the servicing of Rovai's loan by BANA, and Defendant's claims that it lacked the information necessary to ascertain those amounts, the existence or absence of instructions for payment allocation conveyed from BANA to Defendant is undeniably relevant. Though discovery at this point is limited to the named Plaintiff, the Court believes that this question, because it deals with the transition of the mortgage portfolio that included Plaintiff's loan, is not overbroad. Finally, there is simply no truth in Defendant's argument that the RFA assumes a duty. It makes no statement regarding

9

a duty, and an admission leaves completely open the question of whether or not a duty exists at all. For these reasons, the Court GRANTS Plaintiff's motion to compel further response to this RFA.

### 2. RFA No. 37

This RFA asks Defendant to "[a]dmit that YOU did not seek guidance from the IRS prior to implementing YOUR policy relating to whether or not to include BORROWER payments of previously DEFERRED INTEREST on OPTION ARM LOANS in the amount of reported INTEREST to be put on YOUR BORROWERS FORMS 1098." (Id. at 29.) Defendant objects on the ground that this request is excessively burdensome, in that its practices regarding the reporting of payments of capitalized interest on option arm loans predates this case. (Id.) In this instant motion, however, Defendant has failed to support its objection as it has not put forth any facts in support of its undue burden objection. See Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. Apr. 2, 1998) (citation omitted) ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."). Instead, as best this Court can ascertain, Defendant argues that this RFA is irrelevant, because Defendant's policies are the ones advocated by the Plaintiff. (See ECF No. 129 at 30-31.) The parties in this case clearly disagree regarding what Defendant's duties are with regard to Form 1098 reporting of capitalized interest on a loan such as Rovai's. One of Plaintiff's causes of action is that Defendant has been negligent in its 1098 reporting. (See ECF No. 86 at 18.) Whether Defendant made inquiries to the IRS regarding potentially ambiguous provisions of law when implementing policies, regardless of whether they were ultimately followed, is relevant to the claims of this case as it may demonstrate that Defendant found the law ambiguous or used extraordinary care. For these reasons, Plaintiff's motion to compel further responses to this RFP is **GRANTED**.

### E. Interrogatory No. 3

In this Interrogatory, Plaintiff asks Defendant to "[s]tate all facts upon which YOU calculated the amount of INTEREST reported on ROVAI'S Form 1098 that YOU have prepared each year since YOU serviced ROVAI'S LOAN." (ECF No. 129 at 31.) Defendant objected that the interrogatory was "vague, ambiguous, and unintelligible," due to the phrase "state all facts upon which you calculated." (Id.) In spite of this objection, Defendant stated that it "will produce copies of Rovai's loan history and Form 1098s for the period SPS serviced her loan." (Id.) In supplemental responses, Defendant responded to this Interrogatory with a formula: "The amount of interest reported on Rovai's Form 1098 for any given year is equal to the payments applied to her CAPITALIZED INTEREST balance during that year." (Id.) In the instant motion, Defendant revises its answer a second time, and states "[t]he amount of mortgage interest paid reported in Box 1 on Rovai's Form 1098 for any given year was equal to the amount of monthly interest Rovai paid during the year plus any payments applied to Rovai's Capitalized interest balance, plus any other amounts that SPS's third-party Form 1098 reporting program deems reportable in that field. (e.g., late fees)." Plaintiff maintains that these responses are insufficient, as Rovai's interrogatory requires the underlying figures, in dollars, that SPS used to produce its Form 1098, Box 1 number, for Rovai each year that it serviced her loan. (Id. at 32.)

While other language may have been more precise, the Court finds that the information Plaintiff seeks is discernable from the interrogatory, and relevant to Plaintiff's claims. Defendant's response is not responsive. Plaintiff specifically asked Defendant to state "facts" upon which the interest was calculated. The Court agrees that a reasonable response will provide the specific figures from Plaintiff's mortgage payments, and how they were used to calculate the number entered in Box 1 of Form

11

1098 for each year that Defendant serviced her loan. Plaintiff's request to compel a further response is **GRANTED**.

F. **Interrogatory No. 4**

Plaintiff seeks the identity of "person(s) who are primarily responsible for assuring [Defendant's] compliance with the IRS's requirements for providing informational tax returns (such as FORM 1098)." (Id. at 32.) After failing to respond initially, Defendant objected in supplementary responses on the grounds that the interrogatory is vague and ambiguous. (Id.) Further, Defendant responds that the forms are generated electronically in the normal course of business, and Plaintiff has not established that the manner in which Defendant generates these forms is at issue. (Id. at 33.) Finally, Defendant responded that there is no single person who has the primary job function to ensure compliance with IRS reporting requirements. (Id.)

Nothing about this interrogatory is vague or ambiguous. It is straightforward in that it seeks the name or names of the person or people Defendant employs with primary responsibility to assure compliance when issuing IRS forms. Plaintiff need not demonstrate that the manner of generation of the forms is at-issue to identify the person responsible for compliance, when a central issue in this case is whether compliance with the law required Defendant to report capitalized interest as mortgage interest paid on form 1098. It is not sufficient that Defendant produced a witness who testified that he oversees the business unit that is responsible for generating IRS 1098 forms (see id.), as that testimony is not directly responsive to the interrogatory and does not necessarily identify whom Defendant considers primarily responsible for such compliance. Defendant SPS must identify the person or people it considers primarily responsible for generating these forms as required by law. If Defendant does not have an individual responsible for assuring compliance with IRS requirements, Defendant is to

12

state so under penalty of perjury. If there is a person(s) in charge, that person(s) must be named. Plaintiff's request to compel a further response is **GRANTED**.

**G.**     **Interrogatory No. 6**

Interrogatory No. 6 states:

> IDENTIFY and DESCRIBE all policies, guidelines, manuals, instructional documents, directives or writings of any kind, and any additions, modifications or amendments thereto, that existed at SPS since January 1, 2010, that set forth YOUR policies and practices regarding the issuance of FORM 1098 to BORROWERS that previously deferred the payment of INTEREST on an OPTION ARM LOAN and subsequently repaid the DEFERRED INTEREST. Please include in this description and identification any documents that YOU created as well as any documents from any third parties such as the IRS, counsel, or prior SERVICERS.

(Id. at 33-34.)

Defendant objects as to the interrogatory being overbroad, unduly burdensome and not relevant. (Id. at 34.) It argues that the Plaintiff has only taken issue with the Form 1098s from 2011 and 2012, and that such policies, if they exist, are not relevant to the reporting in this case, since the reporting on Rovai's 1098s omitted the capitalized interest payments not because of policy, but because the prior servicer did not include her capitalized interest balance when it transferred her loan data. (Id.) In a supplemental response, Defendant asserts that it is not aware of any policies, etc., "*specifically* regarding the issuance of FORM 1098 to [such borrowers]." (Id. (emphasis added).) It further states that SPS's practice was to report all payments applied to capitalized interest on the Form 1098 for the year in which it was paid. (Id.) Finally, in the instant motion, Defendant explains that it has already "produced copies of all policies and procedures regarding payment application and provided Rule 30(b)(6) testimony explaining that SPS's third-party vendor develops the programs that generate

13

Form 1098s and that SPS has not changed the vendor's programs, which reside on SPS's servicing platform." (Id. at 35.) Plaintiff maintains that SPS must identify the writings that set forth the practice it alleges to employ, which is central to its negligence claim. (Id. at 34-35.)

In light of the facts that (1) Defendant has stated that it is not aware of any responsive documents specifically regarding the issuance of Form 1098 in these circumstances, (2) Defendant states it has produced all policies regarding payment application, and (3) Defendant explained that a third party vendor develops the programs that generate Form 1098s, the Court finds that this interrogatory is not proportional to the needs of the case. The proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Plaintiff's request to compel a further response is **DENIED**.

### H. Interrogatory No. 8

Plaintiff seeks to have Defendant "DESCRIBE ANY INTERNAL COMMUNICATIONS that YOU have relating to whether YOU have in the past or are currently reporting the amounts of mortgage INTEREST on FORMS 1098 that you provide to BORROWERS with OPTION ARM LOANS who have paid YOU previously DEFERRED INTEREST." (Id. at 35.) Defendant objects as to the interrogatory being overbroad, unduly burdensome and not relevant or proportional to Rovai's claims, versus those of the class. (Id. at 35-36.) Plaintiff maintains that internal communications regarding the 1098 reporting of capitalized interest and mortgage interest for option arm loans is relevant to Plaintiff's negligence claim because she is entitled to know if there is any different treatment between Plaintiff and other borrowers in this regard. (Id. at 36.)

This interrogatory is overly broad in so far as it includes all option arm loans, based on Judge Gallo's order previously limiting discovery in this case. Judge Gallo limited discovery to Rovai's individual claims on November 9, 2018, pending the parties'

anticipated additional litigation on the pleadings. (See ECF No. 112 at 1.) However, limiting this interrogatory to internal communications with regard to Rovai's mortgage only is not overbroad, unduly burdensome or irrelevant. Therefore, the Court **GRANTS in part** Plaintiff's motion to compel further responses to this interrogatory, modified as follows: Fully DESCRIBE ANY INTERNAL COMMUNICATIONS that YOU have relating to whether YOU have in the past or are currently reporting the amounts of mortgage INTEREST on FORMS 1098 on Rovai's mortgage.

I. **Interrogatory No. 22**

Plaintiff seeks to have Defendant answer the following: "Did YOU ever make any inquiry of BANA as to whether Plaintiffs' [sic] LOAN BALANCE included unpaid DEFERRED INTEREST?" (ECF No. 129 at 37.) Defendant objects on the grounds that this interrogatory is vague and ambiguous because the terms "Loan Balance" and "unpaid Deferred Interest" are not defined. (Id.) Further, Defendant claims that that the interrogatory is duplicative of RFP Nos. 31 and 32, and claims that communications with third parties are not relevant to Plaintiff's claims. (Id.) In its supplementary response, Defendant states that "BANA was required to deliver to [sic] accurate and complete loan data to SPS in connection with the transfer of Plaintiff's loan data to SPS." (Id.) In the instant motion, Defendant's arguments appear to address a different Interrogatory (see, e.g., id. at 38 (arguing that this interrogatory "asks about *every* Option Arm Loan that Defendant *ever* acquired from BANA," which the Court notes this interrogatory does not do).)

This interrogatory is neither vague nor ambiguous. It is straightforward and relevant to Plaintiff's claim that Defendant was negligent regarding its reporting of mortgage interest paid by Rovai on Form 1098. It is neither overly broad nor overly burdensome, as it is limited to Plaintiff's mortage loan and is a yes or no question. Defendant indicates that this interrogatory has already been answered through a Rule

15

30(b)(6) witness. (Id. at 39.) However, the described deposition testimony regarding some unsuccessful attempts to contact BANA regarding capitalized interest balances is not a substitute for a clear and complete answer to this interrogatory. Therefore, the Plaintiff's request to compel a further response is **GRANTED**.

**J.      Interrogatory No. 23**

Plaintiff seeks to have Defendant describe in detail all steps taken "to determine whether Plaintiffs' [sic] LOAN BALANCE included unpaid DEFERRED INTEREST, including but not limited to the dates of each step, the names of all persons taking the steps, the names of all persons to whom inquiry was made, the request and receipt of any documents, the content of any conversations, and the conclusions reached after inquiry." (Id. at 39.) The Defendant objects as to this interrogatory being vague and ambiguous, and overbroad. (Id. at 39-40.) In its supplemental response, Defendant responded that "its loan servicing platform checks for a Capitalized Interest balance at the time payments are applied and applies principal payments to that balance, if one exists." (Id. at 40.)

The Court finds that this inquiry is relevant to Plaintiff's negligence claim, and it is proportional insofar as it deals only with Plaintiff's mortgage loan serviced by Defendant. Plaintiff claims that Defendant was negligent in its reporting of Plaintiff's mortgage interest paid on Form 1098. Defendant claims that it reported the interest the way it did because BANA did not provide the correct information regarding capitalized interest. In these circumstances, Defendant's efforts or lack thereof to ascertain the charactieristcs of Plaintiff's loan balance are relevant and central to this case. Therefore, the Plaintiff's request to compel a further response is **GRANTED**. If Defendant has not already provided a complete answer to this interrogatory, it is to do so.

///

**K.      Interrogatory No. 25**

Plaintiff seeks to have Defendant respond to the following: "For the period January 1, 2015 through the present date, IDENTIFY all policies, procedures, manuals, guidelines and internal writings and INTERNAL COMMUNICATIONS that evidence, state, and describe how you allocate monthly payments received from BORROWERS with OPTION ARM LOANS between PRINCIPAL, current INTEREST, DEFERRED INTEREST and any other charges which may be payable through the BORROWERS [sic] monthly payment." (Id. at 41.) Defendant objects to this interrogatory as compound, overbroad, unduly burdensome, not relevant, and class discovery, rather than discovery into Rovai's individual claims. (Id. at 41-42.) In the instant motion, Defendant states that it has "produced copies of all policies and procedures regarding payment application and provided Rule 30(b)(6) testimony on this topic," and therefore, "[n]o further response is possible." (Id. at 43.)

The Court notes that Defendant's policies and internal communications regarding the allocation of mortgage payments is relevant to the claims and defenses in this case. Furthermore, the writings that identify how Defendant determines the allocation of payments on option are loans is relevant to Rovai's individual claims, not only to issues regarding the class. Considering the fact that Defendant has asserted its policy is responses to previous interrogatories, and Defendant claims it has already produced copies of the same, it should not be excessively burdensome for it to identify such policies and writings for Plaintiff as they applied during this limited period of time. For these reasons, Plaintiff's motion to compel a further response to this Interrogatory is **GRANTED**.

**L.      Interrogatory No. 26**

Interrogatory No. 26 asks Defendant, if it relied on contract language when allocating monthly payments from borrowers, to "specify the precise contractual

17

language" it was relying upon and identify the associated contract. (Id. at 43.) Defendant objects that the request is unintelligibly vague and ambiguous, overbroad and unduly burdensome, and it goes beyond Rovai's individual claim. (Id. at 43-44.) In its supplemental response, Defendant describes how it applies payments on Rovai's mortgage agreement. (Id. at 44.)

Contrary to Defendant's assertion, this Interrogatory clearly sets out what Plaintiff seeks. In light of Judge Gallo's order limiting discovery to Plaintiff's individual claims pending the resolution of litigation on the pleadings, this Interrogatory is overbroad insofar as it pertains to any mortgage other than Plaintiff's. However, the Court believes that this Interrogatory, once limited to Rovai's mortgage, is relevant and proportional. Plaintiff's motion to compel a further response to this interrogatory is therefore **GRANTED**.

**M.  Interrogatory No. 40**

This Interrogatory asks Defendant to "[d]escribe in detail how YOU process YOUR receipt of monthly MORTGAGE payments from BORROWERS, including receipt of the money, and any process by which the aggregate payment is broken down, separated, or allocated to different components of LOAN BALANCE." (Id. at 45.) It further asks Defendant to identify and describe the documents that set forth this process. (Id.) Defendant objects that the Interrogatory is vague, ambiguous, and unintelligible; overbroad and unduly burdensome; and irrelevant to Rovai's individual claims. (Id. at 45-46.) Plaintiff offers to narrow this interrogatory by limiting it to Rovai's monthly billing statements from 2010 to the present. (Id. at 46.)

The Court agrees with Defendant that this Interrogatory is vague and ambiguous. It is unclear what would be included within "processing the receipt of monthly mortgage payments." The Court would not know if this includes opening an envelope or receiving an electronic funds transfer? Does the process include only the steps or the rules

applied at each step?  Furthermore, though the interrogatory is phrased in the present tense and only applies to the process presently in place, Plaintiff seeks to change the scope fo the interrogatory to apply from 2010 to present, and asks Defendant to explain how the mortgage statements issued to Rovai during SPS serving of her loan were calculated (see id. at 46).  The information now requested by Plaintiff bears little resemblance to the interrogatory originally served.  Because answering this interrogatory would require Defendant to guess at the information requested, and the Court is doubtful that an answer which described a "process" would have any relevance to the claims and defenses in this case, Plaintiff's motion to compel further response to this interrogatory is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel as presented in the parties' joint motion for determination of discovery dispute is Granted in part and DENIED in part.  Defendant is ORDERED to provide the further responses ordered no later than **April 5, 2019**.

**IT IS SO ORDERED.**

Dated:  March 22, 2019

Honorable Michael S. Berg
United States Magistrate Judge