1
2
3
4
5
6
7
8  **UNITED STATES DISTRICT COURT**
9  **SOUTHERN DISTRICT OF CALIFORNIA**
10
11  ADRIANA ROVAI,

Case No. 14-cv-01738-BAS-MSB

12  Plaintiff,

**ORDER DENYING PLAINTIFF'S MOTION TO SUPPLEMENT THE SECOND AMENDED COMPLAINT**

13  v.

14  SELECT PORTFOLIO SERVICING, INC.,

**[ECF No. 126]**

15  Defendant.
16
17
18
19    Plaintiff Adriana Rovai requests leave to file a "Supplemented Second Amended
20  Complaint" pursuant to Rule 15(d).  (ECF Nos. 126, 133.)  Rovai seeks to supplement
21  the SAC with factual allegations and related proposed supplemental claims for breach
22  of contract, breach of the implied covenant of good faith and fair dealing, fraud, and
23  a third-party beneficiary breach of contract claim.  (*Id.*)  Defendant Select Portfolio
24  Servicing, Inc. ("SPS") opposes Rovai's motion.  (ECF No. 132.)  For the reasons
25  herein, the Court denies Rovai's motion.
26
27  **RELEVANT BACKGROUND**
28  ***Factual Background.***  As the Court has previously recounted, Rovai is a

California homeowner who obtained an Option ARM mortgage loan in 2005 from First Magnus Financial Corporation. During the first five years of the loan's duration, Rovai's loan provided an option that allowed Rovai to make a monthly interest payment less than the full amount of interest due. Under this option, the monthly interest Rovai did not pay was added to the amount of her loan's unpaid principal with interest accruing on this added amount at the same rate as the original principal. Rovai's loan passed to various owners and servicers, with Bank of America, N.A. ("BANA") owning and servicing Rovai's loan immediately prior to SPS. When SPS began servicing Rovai's loan in December 2011, Rovai's loan balance was $9,013.02 above the original balance, an amount which Rovai alleges was charged as interest in the earlier years of her loan but which she did not pay, *i.e.* the amount constitutes "deferred interest." Rovai made $2,698.20 in mortgage payments to SPS in 2011. According to Rovai, SPS failed to credit any payments to retire outstanding deferred interest before applying the payments to her loan's principal amount.

Although Rovai raises various California state law claims against SPS, a federal statute is at the core of Rovai's contention that SPS was legally required to credit and report payments on deferred interest for her home mortgage. The statute, 26 U.S.C. § 6050H, requires any individual who receives interest aggregating over $600 on a home mortgage in a given year from another individual to furnish the Internal Revenue Service ("IRS") with an information return identifying the amount of interest received. 26 U.S.C. § 6050H(a); 26 U.S.C. § 6050H(b)(2)(B). The interest recipient must also furnish a statement to the individual who provided the interest, which also identifies the amount of interest received during the year. 26 U.S.C. § 6050H(d). By regulation, the interest recipient meets its statutory reporting obligations by providing the IRS and the interest provider with a Form 1098. 26 C.F.R. §§ 1.605H-2(a), (b). Rovai contends that Section 6050H reaches deferred interest and, consequently, SPS unlawfully failed to credit or properly report her payments on deferred interest in the

corresponding 2011 Form 1098 that SPS provided to the IRS and Rovai. Rovai further contends that SPS similarly failed to properly credit and report her 2012 payments on deferred interest in the 2012 Form 1098 SPS provided.

***Procedural History.*** Rovai first brought suit against SPS in July 2014, alleging claims for breach of contract, breach of the implied covenant, violation of Section 6050H, violation of California's Unfair Competition Law ("UCL"), declaratory and injunctive relief, fraud, and negligence. (ECF No. 1 (the "Original Complaint").) In May 2015, upon SPS's Rule 12(b)(6) motion to dismiss (ECF No. 11), the Court dismissed Rovai's direct claim under Section 6050H on the ground that there is no express or implied federal private right of action under the statute. (ECF No. 16.) The Court otherwise stayed the case under the primary jurisdiction doctrine to permit the IRS to interpret Section 6050H's application to deferred interest in the first instance. (*Id*.) Over two years after imposing the stay, the Court dismissed the Original Complaint when Rovai conceded that she lacked Article III standing in view of the Ninth Circuit's decision in *Smith v. Bank of America, N.A*., 679 Fed. App'x 549 (9th Cir. 2017). (ECF Nos. 36, 38.) Rovai subsequently filed the First Amended Complaint ("FAC'), which raised the same claims as the Original Complaint. (*Compare* ECF No. 1 *with* ECF No. 39 (FAC).)

After denying SPS's motion to dismiss the FAC for lack of standing and declining to impose another stay, the Court ordered Rovai to show cause why her claims should not be dismissed pursuant to Rule 12(b)(6). (ECF No. 53.) Rovai filed a brief and reply brief directly responding to the Court's order, (ECF Nos. 54, 70), SPS presented its dismissal arguments, (ECF No. 66), and the Court held oral argument, (ECF No. 82). After nearly four years, the legal sufficiency of Rovai's concededly novel claims was ripe for adjudication. Following the Court's decision in *Pemberton v. Nationstar Mortgage LLC*, 331 F. Supp. 3d 1018 (S.D. Cal. 2018), a

case involving the same underlying legal issues, the Court issued an extensive order that sustained in part and dismissed in part Rovai's claims. *See Rovai v. Select Portfolio Servicing, Inc*., No. 14-cv-1738-BAS-WVG, 2018 WL 3140543 (S.D. Cal. June 27, 2018). The Court dismissed with prejudice Rovai's claims for breach of contract, breach of the implied covenant, a UCL claim under the UCL's unlawful and fraudulent prongs, the declaratory judgment request as pleaded in the FAC, and fraud. *Rovai*, 2018 WL 3140543, at *4–15, 23–24. The Court dismissed without prejudice Rovai's claim for a preliminary and permanent injunction. *Id.* at *24. The Court allowed Rovai's UCL unfair prong and negligence claims and permitted Rovai to file a Second Amended Complaint ("SAC") consistent with the order. *Id.* at *16–22.

In accordance with the Court's order, Rovai filed the SAC in July 2018, alleging claims against SPS for violation of the UCL (unfair prong), declaratory relief, and negligence based on SPS's alleged failures to report Rovai's deferred interest payments. (ECF No. 86.) SPS answered the SAC in August 2018, (ECF No. 95), and the case proceeded to discovery. Rovai filed the present Rule 15(d) motion for leave to file a "supplemented [SAC]" in December 2018.[1] (ECF No. 120 (originally filed motion; ECF No. 126 (refiled motion).) Rovai has submitted a copy of the proposed "Supplement Second Amended Complaint" ("PSSAC"), which reveals some 102 paragraphs of "supplemental" allegations for four additional claims, dwarfing the operative complaint's 60 paragraphs and three claims. (*Compare* SAC ¶¶ 1–60 *with* ECF No. 121-1 PSSAC ¶¶ 61–163.) Rovai does not offer any proposed supplemental

---

[1] As a technical matter, Rovai's Rule 15 was not timely filed. The deadline to file motions to amend the pleadings was December 24, 2018. (ECF No. 112 at 3.) This Court reaffirmed this deadline when it denied the parties' joint motion for an extension until January 20, 2019. (ECF No. 119.) Without explanation, Rovai's counsel filed the original motion to supplement on December 26, 2018. (ECF No. 120, 121.) Although counsel dated the filing as December 24, 2018, timeliness is assessed based on the actual date of filing, not the date counsel gives to the underlying document. Although the Court has considered the motion's merits, the Court will not excuse cavalier treatment of court-set deadlines in the future, especially deadlines for which the Court has denied extensions.

factual allegations to supplement the claims the Court has already allowed.

## LEGAL STANDARD

"[T]he court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." *Eid v. Alaska Airlines, Inc*., 621 F.3d 858, 874 (9th Cir. 2010). New claims, parties, and allegations regarding events that occurred after the original complaint are properly raised in a Rule 15(d) motion. *Griffin v. Cty. Sch. Bd.*, 377 U.S. 218, 226 (1964); *Lyon v. United States Immigration & Customs Enforcemen*t, 308 F.R.D. 203, 214 (N.D. Cal. 2015). Yet, "[s]ome relationship must exist between the newly alleged matters and the subject of the original action" in order for a party to rely on Rule 15(d). *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

A Rule 15(d) motion is otherwise evaluated pursuant to the same standard as a Rule 15(a) motion to amend. *See Glatt v. Chicago Park Dist*., 87 F.3d 190, 193 (7th Cir. 1996); *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013). A court may deny leave for: "(1) 'undue delay, bad faith or dilatory motive on part of the movant,' (2) 'repeated failure to cure deficiencies by amendments previously allowed,' (3) 'undue prejudice to the opposing party,' or (4) 'futility.'" *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 330 (D. Ariz. 2018) (quoting *Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 797 (9th Cir. 2012)). A district court has broad discretion over whether to allow supplemental or amended pleadings. *Volpe*, 858 F.2d at 473. A court "examine[s] each case on its facts" to determine the propriety of granting leave to supplement or amend the pleadings. *See SAES Getters S.p.A. v.*

*Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) (citation omitted).

## DISCUSSION

**A.  Rovai's Improper Reliance on Rule 15**

Rovai improperly relies on Rule 15(d) for many of the claims with which Rovai seeks to "supplement" the SAC.  "Rule 15(d) permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (citation omitted).  The Original Complaint asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud for SPS's alleged failures to report deferred interest on Rovai's 2011 and 2012 Forms 1098.  (Original Compl. ¶¶ 46–51 (breach of contract); *id.* ¶¶ 52–57 (breach of the implied covenant); *id.* ¶¶ 73–81 (fraud).)  Any proposed supplemental claims which seek to reintroduce these original claims are not properly raised in a Rule 15(d) motion.

A review of the underlying supplemental factual allegations also reveals that the proposed supplemental claims are based on facts that existed before the filing of the Original Complaint.  For example, Rovai's breach of contract and implied covenant claims are based on conduct that occurred before the Original Complaint because the claims are grounded in Rovai's home mortgage contract.  (PSSAC ¶¶ 84–90, 121.)  Rovai's proposed supplemental fraud claim also is based in part on conduct that occurred before the Original Complaint because the claim concerns SPS's alleged misrepresentations to and concealments from Rovai when SPS investigated in 2014 Rovai's assertions about SPS's reporting of deferred interest payments.  (*Id.* ¶¶ 147–50.)  Although Rovai's third-party beneficiary breach of contract claim concerning the BANA-SPS loan transfer agreement is a newly raised claim, the claim is necessarily premised on conduct before the Original Complaint was filed in 2014

because SPS took over servicing Rovai's loan in 2011. (*Id.* ¶¶ 103–10.) As such, Rule 15(a)—not Rule 15(d)—is the proper vehicle for Rovai to alter her pleadings. *See Eid*, 621 F.3d at 87; *Fresno Unified Sch. Dist. v. K.U*., 980 F. Supp. 2d 1160, 1174 (E.D. Cal. 2013) ("An amended complaint under Rule 15(a) permits the party to add claims or to allege facts that arose before the original complaint was filed.").

Rovai's Rule 15 motion is otherwise improper because Rovai effectively relies on supplemental factual allegations to seek reconsideration of the Court's prior conclusions regarding Rovai's dismissed claims for breach of contract, breach of the implied covenant, and fraud. A motion for reconsideration would have been the proper means for Rovai to challenge the Court's prior dismissal order. *See Wright v Old Gringo, Inc*., No. 17-cv-1966-BAS-MSB, 2018 WL 6778215, at *2 (S.D. Cal. Dec. 26, 2018) ("District courts may entertain a motion for reconsideration of an interlocutory order at any time before entry of final judgment."). Rovai, however, has not timely sought reconsideration because the present motion comes six months after the Court's ruling. *See* S.D. Cal. Civ. L.R. 7.1.i.2 (requiring a motion for reconsideration to be filed within 28 days of the order for which reconsideration is sought).

Even if the Court construed Rovai's present motion as a motion for reconsideration and further excused the motion's untimeliness, Rovai has failed to show reconsideration is warranted. "A motion to reconsider must (1) show some valid reason why the court should reconsider its prior decision, and (2) set forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d 1107, 1110 (S.D. Cal. 2018). Rovai's motion identifies no valid reason for reconsideration of a strongly convincing nature because the motion is premised on legal theories the Court has already thoroughly considered and rejected. A motion for reconsideration is not an avenue for Rovai to

14cv1738

relitigate issues and arguments the Court has already addressed. *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005). And although Rovai disagrees with the Court's prior analysis in form and in spirit, Rovai's "[m]ere disagreement with a previous order is an insufficient basis for reconsideration." *Haw. Stevedores, Inc. v. HT&T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). Although the Court evaluates Rovai's proposed claims pursuant to the familiar considerations applicable to both a Rule 15(a) and 15(d) motion, the Court's conclusions largely track the reasoning of its prior dismissal order insofar as Rovai seeks to reintroduce claims dismissed with prejudice.

## B. Futility Warrants Denial of Leave to Amend for Repleaded Claims

"Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (same). A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal."). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to set forth "enough facts to state a claim for relief that is plausible on its face," which allows "the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court accepts as true factual allegations and construes them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A court does not accept legal conclusions pleaded in the guise of factual allegations, nor does a court accept formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 676; *Twombly*, 550 U.S. at 555; *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

SPS contends that Rovai's Rule 15 motion should be denied as futile because (1) Rovai lacks Article III standing and (2) the proposed claims could not withstand dismissal, particularly insofar as Rovai seeks to "resuscitate" previously dismissed claims. (ECF No. 132 at 9–12.) Rovai protests denial of her motion on the basis of futility. (ECF No. 133 at 6–12.) The PSSAC and Rovai's briefing seek to dispute futility of her proposed claims by engaging directly with the Court's analysis in its prior dismissal order. (PSSAC ¶¶ 83–90, 113, 115–16, 118–19, 130–31, 134–35, 140–41; ECF No. 126 at 11–12, 14–16; ECF No. 133 at 6–12.) Although the Court rejects SPS's latest challenge to Rovai's Article III standing, the Court also rejects Rovai's attempt to reintroduce claims the Court previously dismissed with prejudice.

### 1.    Article III Standing

A plaintiff must allege the irreducible constitutional minimum of: (1) an injury in fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation, *i.e.* the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability, *i.e.* it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560−61 (1992). "Each element of standing must be supported with the manner and degree of evidence required at the successive stage of litigation." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011.) At the pleading stage, a trial court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

The Court has previously addressed whether the then-operative pleadings adequately showed whether Rovai possesses Article III standing based on SPS's Form 1098 reporting. (ECF No. 53.) After reviewing the FAC, the Court determined that Rovai possesses Article III standing based on the alleged financial harm she suffered

from relying on 2011 and 2012 Forms 1098 SPS provided to her and which failed to include deferred interest payments. (*Id.* at 8–10.) The specific financial harm was Rovai's alleged receipt of a smaller home mortgage interest tax deduction based on SPS's Form 1098 reporting, which would have affected her overall tax liability. The SAC reiterates the same factual allegations that the Court found sufficient to show that Rovai possesses Article III standing. (SAC ¶¶ 11, 13–15.)

SPS argues that Rovai no longer has standing based on the injury the Court identified. According to SPS, "[b]oth the FAC and SAC failed to disclose that Rovai has received a Form 1098 that included payments that fully repaid her capitalized interest balance and would thus allow her to claim deductions for that amount (if otherwise entitled under the tax code)." (ECF No. 132 at 10–11.) Based on receipt of this form, SPS argues that Rovai "can no longer allege that she is unable" to obtain the full home mortgage interest deduction to which she would be entitled. (*Id*. at 11.) Although SPS does not expressly identify what form it is referring to, it appears that SPS is referring to the alleged 2016 Form 1098 SPS provided to Rovai after Rovai sued SPS and to which Rovai refers in her proposed breach of the implied covenant claim. (PSSAC ¶ 132.) This Form 1098 allegedly reported that Rovai made $24,795.74 in mortgage interest payments during 2016, although Rovai alleges she made only $15,782.72 in mortgage interest payments. (*Id*.) In other words, the form allegedly included in the amount of interest payments SPS received from Rovai for 2016 all $9,013.02 in deferred interest Rovai has alleged was outstanding when SPS began servicing Rovai's home mortgage loan.

SPS's latest challenge to Rovai's Article III standing is unavailing. The Second Amended Complaint remains the operative pleading in this case. Determinations about standing are based on the pleadings as they exist. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) ("Standing is determined by the facts that exist at

the time the complaint is filed." (citing *Lujan*, 504 U.S. at 569 n.4)); *Johnson v. Tackett*, 272 F. Supp. 3d 1198, 1202 (E.D. Cal. 2017); *Jadwin v. Cty. of Kern*, 1:07-CV-00026-OWW-DLB, 2009 WL 2424565, at *6 (E.D. Cal. Aug. 6, 2009) ("Whether a plaintiff has standing is evaluated as of the time the operative complaint is filed." (citing *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991); *Thomas v. Mundell*, 572 F.3d 756 (9th Cir. 2009))). Proposed allegations contained in the PSSAC therefore cannot alter Rovai's Article III standing. This is especially true here because the Court is denying Rovai's motion to supplement and therefore any proposed allegations in the PSSAC will not form a part of the pleadings. To the extent that SPS contends that its issuance of the 2016 Form 1098—or any other conduct not alleged in the operative pleading—moots Rovai's claims in this case, SPS may pursue such a challenge through the appropriate means called for by the stage of the litigation. *See Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1295 (S.D. Cal. 2018) ("Mootness is "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). The pleadings as they exist, however, do not undermine Rovai's standing. Accordingly, the Court rejects SPS's standing-based futility challenge.

### 2. Breach of Contract

Since this case's inception, Rovai has sought to hold SPS liable for allegedly breaching Rovai's relevant mortgage contract by failing to report deferred interest payments in Rovai's 2011 and 2012 Forms 1098. The relevant contract in this case is Rovai's "Adjustable Rate Note" (the "Note"), which Rovai has presented with each of her pleadings and the PSSAC. (SAC Ex. A; ECF No. 121-2 Ex. A (PSSAC with exhibits).) The Note is properly considered in the Court's futility analysis. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (a court may consider documents attached to a complaint to resolve a motion to dismiss).

"To state a claim for breach of contract under California law, plaintiffs must plead four elements: (1) the existence of a contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiffs as a result of that breach." *Pemberton*, 331 F. Supp. 3d at 1034 (citations omitted). "[T]he interpretation of a written contract is a matter of law for the court[.]" *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1159 (E.D. Cal. 2009) (quoting *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986)). When the parties have a written contract, the parties' mutual intent at the time of the contract is determined from the writing alone if possible. *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505, 513 (Cal. Ct. App. 2003). "A breach of contract claim may be dismissed for failure to state a claim if the contract's terms are unambiguous." *Pemberton*, 331 F. Supp. 3d at 1035.

Rovai previously advanced two breach of contract theories that the Court rejected as implausible. First, Rovai asserted that her Note incorporates Section 6050H as a term, thereby rendering compliance with Section 6050H a contractual as well as a statutory obligation. (FAC ¶¶ 48–49.) The Court rejected this assertion because nowhere does her Note refer to Section 6050H. *Rovai*, 2018 WL 3140543, at *5–7. Second, Rovai asserted that the provisions of her deed of trust allocating payments toward retiring interest before principal contractually required SPS to allocate payments toward retiring deferred interest before principal. (ECF No. 54 at 8, 28.) The Court rejected this theory because, even if Rovai's position is correct as a matter of taxation principles, her Note unambiguously treats deferred interest as "unpaid Principal" for the purposes of contractual allocation of Rovai's mortgage payments. *Rovai*, 2018 WL 3140543, at *7–9.

Rovai now invokes Rule 15 to dispute the Court's analysis. (ECF Nos. 126 at 11–14; ECF No. 133 at 6–8.) The PSSAC contains eight allegations that point to Sections 1, 3(A), 3(C), 3(C) of the Note, which Rovai now claims show that her interpretation of the Note is reasonable. (PSSAC ¶¶ 84–91.) The Court will not retread its prior analysis of the Note's allocation provisions under California contract law. *See Rovai*, 2018 WL 3140543, at *7–9. The Court denies Rovai's motion because a Rule 15 motion to supplement or amend is not a proper basis to seek reconsideration of the Court's previous Rule 12(b)(6) ruling.

Recognizing the futility of relying on the Note's actual language, Rovai advances a new and third breach of contract theory. (ECF No. 126 at 11–13; ECF No. 133 at 7.) Based on discovery, Rovai alleges that SPS's own policy is to allocate payments from its borrowers toward retiring deferred interest before principal, allegedly based on SPS's interpretation of the allocation provisions in home mortgage loan contracts like the one Rovai holds. (PSSAC ¶¶ 92–99.) Rovai therefore contends that the parties' conduct related to the Note creates a contractual ambiguity sufficient to make her breach of contract claim not futile. (ECF No. 126 at 11–13; ECF No. 133 at 7.)

SPS's alleged conduct cannot save the latest mutation of Rovai's breach of contract claim. "Under California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties *as it existed at the time of contracting*." *United States Cellular Inv. Co. of L.A., Inc. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (citations omitted) (emphasis added). California law recognizes that a contractual ambiguity may be shown to exist "where the parties have demonstrated by their actions and performance that to them the contract meant something quite different" than what "the words standing alone might mean[.]" *Crestview Cemetery Ass'n v. Dieden*, 356 P.2d 171, 178 (Cal. 1960). SPS is not the

– 13 –

original contracting party. Rovai does not allege any facts which show that the parties mutually agreed to create new contractual obligations or alter the meaning of the Note's terms after SPS began servicing Rovai's loan. To the contrary, Rovai has specifically alleged that SPS failed to credit her payments toward retiring outstanding deferred interest in the first Form 1098 that SPS ever provided to Rovai and the IRS, as well as during the second year that SPS provided a Form 1098. (SAC ¶¶ 13–14, 16.) These allegations critically undermine Rovai's attempt to now rely on SPS's conduct to create a contractual ambiguity.

SPS's alleged policy of tracking and reporting deferred interest amounts to the IRS and borrowers cannot otherwise sustain Rovai's breach of contract claim. Assertions of ambiguity "do[] not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation." *Skilstaf, Inc. v. CVS Caremark Corp*, 669 F. 3d 1005, 1017 (9th Cir. 2012); *Hervey v. Mercury Cas. Co*., 110 Cal. Rptr. 3d 890, 895 (Cal. Ct. App. 2010) (extrinsic evidence "is not admissible if it contradicts a clear and explicit [contract] provision."). SPS's alleged policy recognizes "deferred interest" as a payment category and applies payments to retiring deferred interest amounts included in the principal amount before retiring principal for the purposes of tax reporting, specifically Section 6050H. (PSSAC ¶¶ 63–65, 92, 97–98.) As the Court has already explained, however, Section 6050H is not a term of Rovai's Note. Even if SPS's alleged policy is appropriate so that SPS can fulfill any tax reporting obligations it may have under Section 6050H, "the claim before the Court is one for breach of contract." *Rovai*, 2018 WL 3140543, at *9. The Note recognizes only two categories for allocation of Rovai's payments—interest and principal—as a contractual matter. (SAC Ex. A at 2); *Rovai*, 2018 WL 3140543, at *7. Therefore, SPS's alleged policy cannot be used to contravene the Note's terms.

Accordingly, the Court denies leave because the claim is futile.

### 3. Breach of the Implied Covenant

Accompanying Rovai's attempt to replead a breach of contract claim is Rovai's related request to reintroduce a breach of the implied covenant claim. Despite the length of the PSSAC's allegations for this claim, (PSSAC ¶¶ 112–45), the claim is futile based on the same fatal defect that warranted dismissal of the claim with prejudice: Rovai impermissibly relies on the implied covenant to fashion contractual terms that do not exist.

Under California law, every contract carries with it an implied covenant of good faith and fair dealing in the contract's performance and enforcement. *Foley v. Interactive Data Corp.*, 765 P.2d 373, 389 (Cal. 1988). As the Court has previously admonished, "[t]he implied covenant is inherently limited—it 'does not extend beyond the terms of the contract at issue.'" *Rovai*, 2018 WL 3140543, at *10 (quoting *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1160 (E.D. Cal. 2010) (emphasis in original). Therefore, a party may not rely on the implied covenant to "impose substantive duties or limits . . . beyond those incorporated in the specific terms of the[] agreement." *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000).

Although presented with new factual allegations, the Court's prior order largely controls because Rovai's proposed implied covenant claim does not break new ground. Rovai seeks to premise the claim on (1) SPS's "unilateral" issuance of a 2016 Form 1098 which reported deferred interest payments as if such payments were received in 2016, instead of issuing corrected Forms 1098 for earlier years, (PSSAC ¶¶ 124–126, 128–30, 138), (2) SPS's alleged failure to issue a corrected 2011 Form 1098 after BANA issued Rovai a corrected 2010 and 2011 Forms 1098 in 2014, (*id.* ¶ 132), and (3) SPS's alleged failure to advise Rovai about various information related

to deferred interest payment reporting, (*id.* ¶ 133). The Court, however, has already concluded that "no provision of the Note or the deed of trust requires SPS to disclose its treatment of deferred interest payments in its Form 1098 reporting" and "Rovai does not identify any express contractual provision that required SPS to investigate her contentions regarding SPS's allegedly inaccurate reporting in a Form 1098, or to issue a corrected Form 1098." *Rovai*, 2018 WL 3140543, at *10. Rovai's proposed allegations about SPS's post-complaint conduct and related assertions that SPS "abused" contractual discretion in the issuance of subsequent forms or failed to advise Rovai of its reporting conduct are therefore unavailing.

Rovai also seeks to ground her implied covenant claim in the Note's allocation provisions. (PSSAC ¶¶ 116–18.) The Court has already rejected Rovai's claim based on these provisions as implausible because "SPS . . . had the contractual right to treat deferred interest as principal *for the purposes of the Note*." *Rovai*, 2018 WL 3140543, at *10 (emphasis added); *Song Fi Inc. v. Google, Inc.*, 108 F.Supp.3d 876, 885 (N.D. Cal. 2015) (a party "cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'"). Even accepting as true Rovai's new allegations that SPS had an internal tracking and reporting policy for deferred interest (PSSAC ¶¶ 120–21), this policy is not tethered to the actual text of the allocation provisions in Rovai's Note. Therefore, the policy cannot give rise to a breach of the implied covenant claim.

Ultimately, Rovai invokes Rule 15 to reintroduce an implied covenant claim that would "impose substantive duties or limits on the contracting parties beyond those incorporated in the[se] specific terms." *Plastino v. Wells Fargo Bank*, 873 F.Supp.2d 1179, 1191 (N.D. Cal. 2012). And Rovai takes issue with SPS's conduct following the commencement of this suit on the ground that "tax law is plainly not supposed to

work" in the way SPS's issuance of corrected Forms 1098 might suggest.  (PSSAC ¶ 78.)  But whatever obligations SPS might have under Section 6050H and tax law (PSSAC ¶¶ 62, 64, 66, 138), these are not obligations that Rovai can wield against SPS through the guise of the implied covenant.  Accordingly, the Court denies leave for this claim.

### 4.    Fraud

The third claim Rovai seeks to reintroduce is a common law fraud claim against SPS.  (PSSAC ¶¶ 146–63.)  The elements of fraud under California law are "(1) misrepresentations (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Alliance Mortgage Co. v. Rothwell*, 900 P.2d 601, 608 (Cal. 1995).  Although Rovai's latest fraud claim contains new factual allegations for post-complaint conduct, the claim falters for the same reasons the Court previously dismissed Rovai's original fraud claim with prejudice.

Rovai's fraud allegations concerning SPS's alleged post-complaint conduct and Rovai's related arguments in her Rule 15 motion ignore the Court's determination that Rovai cannot establish falsity insofar as Rovai alleges that SPS acted fraudulently with respect to any reporting obligations for deferred interest that might be deemed to arise under Section 6050H.  (PSSAC ¶¶ 151–62; ECF No. 126 at 17; ECF No. 133 at 8–10.)  The Court specifically concluded that "[f]atal to Rovai's statutory construction-based assertion of falsity is Section 6050H's ambiguity and the lack of regulatory guidance at the time SPS issued its Form 1098." *Rovai*, 2018 WL 3140543, at *12.  "[N]either § 6050H nor its implementing regulations provide explicit direction to recipients on how, whether and *when* to report capitalized interest." *Id* (quoting *Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-05927-EJD, 2015 WL 5186493, at *3 (N.D. Cal. Sept. 4, 2015)) (emphasis added); *Rovai v. Select Portfolio Servicing, Inc.*,

No. 14-cv-1738-BAS-WVG, 2015 WL 3613748, at *3 (S.D. Cal. May 11, 2015)).

Rovai identifies no statutory and regulatory changes that would render false SPS's corrective Forms 1098, all of which were allegedly issued before the Court's dismissal order. Rovai's continued reliance on federal tax law and Section 6050H simply cannot establish that SPS made false representations to Rovai in its Forms 1098, whether in the original 2011 and 2012 Forms 1098 that underlie this suit or SPS's subsequent corrective 2016 Form 1098.

Rovai also seeks to premise her fraud claim on SPS's alleged policy of tracking and reporting interest, a policy which SPS allegedly had before servicing Rovai's loan. (PSSAC ¶¶ 147–150.) While the PSSAC contains allegations about SPS's alleged misrepresentations to and concealments from Rovai in relation to this policy, conspicuously absent from the PSSAC are factual allegations that would plausibly show an intent to defraud. *See Sukonik v. Wright Med. Tech.*, *Inc*., No. CV 14-08278 BRO (MRWx), 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) ("[A]llegations of intent must still meet Rule 8(a)'s plausibility standard under *Twombly* and *Iqbal*."). The Court's previous conclusion regarding Rovai's inability to plausibly plead intent to defraud controls here: "Rovai's Note, which SPS did not create, treats deferred interest as principal and did so before SPS ever began to service Rovai's loan" and thus "Rovai cannot plausibly allege that SPS intended to defraud her." *Rovai*, 2018 WL 3140543, at *13. Accordingly, the Court denies leave for this claim.

## C. Third-Party Beneficiary Breach of Contract Claim

In line with Rovai's interposition of novel state law claims based on Section 6050H, Rovai seeks to raise a third-party beneficiary breach of contract claim against SPS for the first time. (PSSAC ¶¶ 102–10.) According to Rovai, BANA and SPS entered into a contract pursuant to which SPS "assume[d]" BANA's duties, including that of "prepar[ing] and fil[ing] federal and state informational returns as required by

– 18 –

statute, including IRS Form 1098." (*Id.* ¶ 103–04.) Rovai alleges, as a third-party beneficiary, that SPS breached the agreement by "fail[ing] to provide the benefit of properly servicing their loans by not properly reporting their mortgage interest as required" by the agreement. (*Id.* ¶ 109.)

Under California law, a third party may enforce a contract if the contract is "made expressly for the benefit of a third person. . ." Cal. Civ. Code § 1559. "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985) (citing *Strauss v. Summerhays*, 204 Cal. Rptr. 227, 233 (Cal. Ct. App. 1984)); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1228 (E.D. Cal. 2018) ("[T]he 'test for determining whether a contract was made for the benefit of a third party is whether an intent to benefit a third person appears from the terms of the contract.'" (citation omitted)). "[A]n intent to make the obligation inure to the benefit of the third party must have been clearly manifested by the contracting parties." *R. J. Cardinal Co. v. Ritchie*, 32 Cal. Rptr. 545, 552 (Cal. Ct. App. 1963). Even assuming that Rovai may enforce the reporting term in the BANA-SPS agreement as a third-party beneficiary, a third-party beneficiary must still satisfy the requirements for a breach of contract claim. Rovai's proposed supplemental claim falters at this juncture.

Although Rovai's pleadings in support of this claim are sparse and Rovai omits a copy of the BANA-SPS agreement with the PSSAC although it is apparently in her possession, allegations in Rovai's operative pleadings make her proposed third-party beneficiary breach of contract claim futile. Accepting as true that BANA and SPS entered into a loan transfer agreement with the term Rovai identifies, Rovai has alleged since this case's inception that BANA only "now properly includes payments of deferred interest on the Forms 1098 it issues." (Original Compl. ¶ 15; FAC ¶ 15;

SAC ¶ 15.) The only reasonable inference that can be drawn from this allegation is that BANA did not credit and report deferred interest payments in the manner Rovai alleges Section 6050H requires during the time that BANA serviced her home mortgage loan. Indeed, the PSSAC indicates that BANA provided "corrected forms" for Rovai's mortgage payments during the 2010 and 2011 tax years. (PSSAC ¶ 132.) The allegation in the operative pleading renders implausible a contract claim premised on the notion that BANA and SPS intended for this term to create any obligation regarding deferred interest payments that could be contractually enforced against SPS. Rovai's attempt to state a breach of contract claim based on the reporting term of the BANA-SPS transfer agreement would therefore appear to be futile.

Assuming *arguendo* that the claim would not be futile, additional reasons warrant denial of Rovai's motion for this claim. "Where—as here—an amended complaint asserts new legal theories, leave to amend does not advance Rule 15(a)'s purpose." *Affiliates, Inc. v. Armstrong*, No. 1:09-CV-00149-BLW, 2011 WL 3678938, at *3 (D. Idaho Aug. 23, 2011). This case has been pending for nearly five years, during which Rovai has not once raised even a whiff of a third-party beneficiary breach of contract claim despite alleging that BANA transferred her loan to SPS. A "radical shift in direction posed by these [proposed] claims, their tenuous nature, and the inordinate delay" weigh against granting leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Rovai's assertion of this claim now—only after the Court has rejected Rovai's contract theories based on the contract to which she is actually a party—raises the additional concern that Rovai seeks to evade the Court's previous rulings by seeking to find a new contract for which she can argue Section 6050H is a term. *See Fresno Unified Sch. Dist.*, 980 F. Supp. 2d at 1177–78 ("Courts have been particularly critical of proposed amendments that appear to 'game' the system."). Under these circumstances, the Court declines to exercise its broad discretion to permit amendment for this claim.

# CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Rovai's motion to supplement. (ECF No. 126.)

    **IT IS SO ORDERED.**

**DATED:  April 23, 2019**

Hon. Cynthia Bashant
United States District Judge